Jonathan Shub (SBN 237708)
jshub@seegerweiss.com
**SEEGER WEISS LLP**
1515 Market Street, Suite 1380
Philadelphia, PA 19102
Phone: (215) 564-2300
Fax (215) 851-8029

(Additional Counsel Appear on Signature Page)

*Attorneys for Plaintiff and all others Similarly Situated*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

C09 03043 HRL

| | |
|---|---|
| RootZoo, Inc., individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC., and DOES 1 through 10 inclusive,<br><br>Defendants. | CLASS ACTION COMPLAINT for:<br><br>(1)   Breach of Contract; and<br><br>(2)   Violation of Bus. & Prof. Code §17200, *et seq.* – "Unlawful," "Unfair" and "Fraudulent" Business Practices.<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiff, RootZoo, Inc., ("Plaintiff"), individually and on behalf of the Class described below, by its attorneys, makes the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiff and its counsel, which are based on personal knowledge. Plaintiff brings this action for damages and injunctive relief against defendant Facebook, Inc. ("Facebook" or "defendant"), demanding a trial by jury.

## NATURE OF THE ACTION

1. Plaintiff brings this class action against Facebook to recover damages and other relief available at law and in equity on behalf of itself as well as on behalf of the members of the following Class:

*All persons or entities in the United States who paid Facebook for PPC (pay-per-click) advertising through Facebook's Performance Advertising Platform.*

2. This action arises from the Facebook's two distinct deceptive business practices: charging Plaintiff and members of the Class for clicks that never occurred; and for failing to properly guard against clicks that result from abusive practices by third parties referred to as "click fraud."

## THE PARTIES

3. Plaintiff, RootZoo, Inc, is a corporation organized under the laws of the state of Delaware with its principal place of business in Manhattan, New York. RootZoo, Inc., owns and operates RootZoo.com, a social networking website designed to facilitate the discussion of sports. Plaintiff contracted with Facebook and paid for advertising on Facebook.com on a "pay-per-click" basis.

4. Plaintiff is informed and believes and thereon alleges that defendant Facebook is a corporation organized under the laws of the state of California with its principal place of business in Palo Alto, California. Facebook is, and at all times relevant hereto was, authorized to do business in California.

5. Plaintiff does not know the true names or capacities of the persons or entities sued herein as DOES 1 to 10, inclusive, and therefore sues such defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the DOE defendants is in some manner legally responsible for the damages suffered by Plaintiff and the members of the Class as alleged herein. Plaintiff will amend this Complaint to set forth the true names and capacities of these defendants when they have been ascertained, along with appropriate charging allegations, as may be necessary.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d) in that this is a civil action filed under Rule 23 of the Federal Rules of Civil Procedure and members of the class are citizens of States different from defendant, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2), (6).

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) and (c) in that Facebook resides in this district and a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of California.

///

## FACTUAL BACKGROUND

8. Facebook is a social networking website with the URL, www.facebook.com . Registration is free and registered users can create profiles on Facebook.com, which entitle users, among other things, to post photos, to list personal interests, to exchange private or public messages, and to join networks of groups of friends organized by location, workplace, school, and region. Users can also freely add individuals to their network of "Facebook friends" and send them messages, and "update" their personal Facebook page to notify friends about themselves.

9. According to industry statistics, Facebook is the leading social networking site in the World based on monthly unique visitors, having attracted 132 million unique visitors in June 2008. Facebook also claims to have more than 200 million active users. In the United States, there are more than 70 million active users.

10. Facebook boasts that it is a social utility "that helps people communicate more efficiently with their friends, family and coworkers. The company develops technologies that facilitate the sharing of information through the social graph, the digital mapping of people's real-world social connections." For most, Facebook is just that: a digital platform for socialization. For Facebook, however, providing that socialization allows it to garner revenue for advertising on a variety of advertising platforms.

11. Facebook's revenues are generated in part from its sale of advertising through its "Performance Ad System" advertising platform.

12. Facebook permits advertisers to select demographic and other data provided by the Facebook user on his/her respective Facebook page, such as city, gender, age, relationship status, employer, educational level, political views, interests, languages and "keywords."

13. Facebook then uses this information to deliver advertisements on the user's Facebook page that match the criteria selected by advertisers to target Facebook users.

14. Facebook's Performance Ad System permits advertisers to contract with Facebook based on either on a "Pay-per-click" ("PPC") model or a "Pay-per-impression" ("CPM") model.

15. Under Facebook's PPC model, advertisers are charged a fixed amount each time a user clicks on an advertiser's website or Facebook page which results in the user being directed from Facebook to the advertiser's independent web site.

16. Under Facebook's CPM model, advertisers are charged based on how many times the advertiser's advertisement is made available for viewing by the Facebook user.

17. As part of the advertising contractual process with Facebook, Facebook requires the advertiser to provide a maximum PPC bid (how much they are willing to pay per click – the minimum being $0.01). Advertisers bid based on how much an advertiser is willing to pay for each click on the advertisement.

18. Facebook sets the amount that it will charge per click based on a bid algorithm that it does not disclose to its customers.

19. An advertiser is required to set a "Daily Budget" in which the advertisers will not pay more than the budgeted amount for the clicks in a twenty-four hour period.

20. Customers who wish to advertiser with Facebook are presented with a "Terms and Conditions" agreement (the "Agreement") to which they must indicate their consent. The Agreement obligates the advertiser to pay Facebook for clicks as determined solely by Facebook and irrespective of whether these clicks are legitimate clicks or the result of a person or "bot" (a software application that performs an automated task) clicking on the advertiser's ad for other reasons.

### A. Facebook Charges Plaintiff and the Class for Clicks That Never Occurred.

21. There are two main technological approaches advertisers employ for tracking clicks to their websites. The primary method, logfile analysis, uses software, such as Goggle Analytics or Stat Counter, to read the logfiles in which the web server for a website records all of its transactions. The second method, page tagging, uses JavaScript on each page to notify a third-party server when a page is rendered by a web browser. Both collect data that can be processed to produce web traffic reports.

22. Facebook advertisers have repeatedly complained directly to Facebook, and in group discussions on the Internet that Facebook monitors, that based on the advertisers' web site traffic tracking data, Facebook is charging advertisers for clicks that never occurred.

23. Facebook has refused to take any action in response to these complaints nor has Facebook made available any of its internal data that would allow advertisers to understand the basis for the clicks on the advertisers' advertisements which Facebook claims to have occurred.

24. Unlike other websites that sell advertising on a PPC model, such as Yahoo! or Google, nowhere on Facebook's website does it provide any information on the methods or practices it employs to track clicks on advertisements that appear on its web site.

25. The below are examples of complaints from Facebook advertisers found on the website, www.Wickedfire.com, regarding Facebook's charging advertisers for clicks that never occurred:

> Tracking 202 [a tracking device] is telling me 11 clicks….Facebook is telling me 145. That's way off the 15-20%, is there a different margin for tracking 202 than there is prosper 202 or did I suffer from one of those click bots?

> Sucks how high the numbers are today. Its clear the problem is getting worse daily. I've moved most of my [ads] off facebook for the time being and magically my [data] is all positive again. Crazy how that works. There are lots of places to buy traffic, some that will even actually give you the traffic you are paying for. Facebook is never going to admit to whats going on. I can almost guarantee you that.

> Facebook is still reporting 20% more clicks than I actually get. This is [bs]. If I were at least getting bot traffic or something that would be one thing, but right now Facebook is simply stealing 20% of clicks that I paid for, which adds up to thousands of dollars. Someone should threaten legal action, this is straight up fraud on Facebook's part.

> FB click fraud update: ratio is now EXACTLY 10:1. 10 clicks reported on FB, 1 click on prosper. No, this wasnt on a small scale either. Were talking 1000's of clicks. Have fun facebook. Im checking out till you can fix this [problem].

> I'm targeting small, specific demos, Facebook reports exactly twice as many clicks as hit my [destination page]. Facebook is stealing our money…..

CLASS ACTION COMPLAINT

7

> This is experienced by not just those that use 202. When in doubt, look at your raw apache logs - which I did. The result: 15% - 20% clicks never make it to my [Destination Page]. Clearly a case of click-fraud going on. Tested on 3 different servers at 3 different DCs (not a network issue).

**B.  Facebook Does Not Adequately Guard Against Click Fraud Despite Knowledge of its Existence.**

26.  "Click fraud" is a term in the Internet advertising industry used to describe clicks on an advertisement with no intention of doing business with the advertiser and for some purpose other than that contemplated by the advertisement. The use of the word "fraud" can be a bit misleading, since the word is not used as is understood at common law. Instead the industry uses the term "click fraud" colloquially to simply describe purposeful clicks on advertisements by persons or software other than a potential customer.

27.  The perpetrators of fraudulent (or invalid) clicks in connection with Facebook's Performance Advertising Platform often consist of actual competitors of the advertiser who simply wish to exploit the defects in Facebook's PPC advertising model in order to increase the fees that their competitor is paying for advertising and/or to boost the effectiveness of their own ads (given that Facebook employs a daily budgeting system, ""using-up" a competitor's budget in the beginning of a twenty-four hour period means that the competitor's ads will not be competing with other competitors).

28.  Facebook garners revenue from click fraud since it charges advertisers for each click without employing any means to determine whether any click is the result of a valid or improper purpose.

29. Click fraud can be prevented and/or greatly minimized by tracking the use of a pay-per-click advertisement, including the identity and/or source of those clicking on the advertisement/link and the frequency of such activity. Such tracking can be accomplished by, among other things, computer programs that count the number and timing of clicks originating from a single source.

30. Many of the websites that compete with Facebook for the sale of PPC advertising, such as Yahoo! and Google, provide extensive information on their websites regarding their efforts to detect and minimize click fraud. In contrast, nowhere on Facebook's website is there any information on its efforts to detect and minimize click fraud. Nor does Facebook warn its existing and potential customers about the existence, and prevalence, of click fraud on its website despite its keen awareness of the issue.

31. Furthermore, when its advertising customers suspect that they have become the victims of click fraud, Facebook fails to (a) advise them that they have been victimized, and (b) to refund them the excess charges that they have incurred as a result of the improper click activity. Facebook derives the same amount of income from an improper click as it does from a legitimate click.

32. While Facebook does provide advertisers with statistics regarding the numbers of users who allegedly clicked on an advertisement, it will not disclose information to advertisers that would allow advertisers to ascertain whether the clicks were legitimate. Advertisers are forced to accept Facebook's representation without any ability to verify the information that Facebook provides.

33. Facebook's unwillingness to police and to prevent click fraud is especially egregious given that it is uniquely in a position to exercise that function. More egregious still, is the fact that Facebook's complicity in click fraud is not limited to inaction. Facebook has actually created an environment that fosters click fraud as it makes access to its community, and therefore the ability to commit click fraud on its web site, extraordinarily easy such that fraudsters are able to create thousands of fake profiles in order to gain access to Facebook advertisements.

## C. Plaintiff, Just Like Thousands of Others, Has Been Charged Both for Non-Existent Clicks and for Clicks Resulting from Facebook's Failure To Police Click Fraud

34. RootZoo.com, is a social networking website for sports fans. In approximately November 2007, Plaintiff, as the owner and operator of RootZoo.com, entered into a contract with Facebook for the placement of PPC advertisements on Facebook.com.

35. During the period November 2007 to early June 2008, Plaintiff contracted with Facebook for PPC advertisements. During that period, Plaintiff accepted Facebook's accounting for clicks from Facebook.com to RootZoo.com without cross-checking against RootZoo.com's click- tracking software.

36. On or about June 3, 2008, Plaintiff received a statement from Facebook that showed that Facebook had charged Plaintiff for 804 clicks on June

CLASS ACTION COMPLAINT

2, 2008. Plaintiff utilizes two industry leading software programs that track the number of clicks to its website and, just as importantly, from where the clicks to RootZoo.com originated. Plaintiff's tracking software programs showed that approximately 300 clicks were generated from its advertisement on Facebook.com to RootZoo.com.

37. On June 3, 2008, Plaintiff contacted Facebook to report this material discrepancy and to request a refund for clicks that never occurred. On June 6, 2008, pursuant to Facebook's request, Plaintiff provided Facebook with data from its two software programs that showed the discrepancy between what were the actual number of clicks and the number of clicks for which Facebook was charging.

38. On June 9, 2008, Facebook emailed Plaintiff and reported, "[a]ccording to our engineers, the clicks being reported within your Facebook account are accurate."

39. Plaintiff requested that Facebook provide it with a copy of the logs demonstrating that clicks for which Plaintiff was being charged were indeed actual clicks. On June 10, 2008, Facebook refused to provide any back up supporting documentation that would substantiate its position.

40. Plaintiff also requested that Facebook refund back charges for clicks that never occurred. Facebook refused to refund any charges or provide any credits.

41. In the course of investigating the situation involving charges for nonexistent clicks, Plaintiff also discovered that it was receiving hundreds of clicks

1 from small towns on a daily basis during period April-May 2008 that that would almost be statistically impossible given the distribution of the American population and Plaintiff's prior history with Facebook advertisements.

42. Again, Plaintiff reported the discrepancy to Facebook and provided tracking data to support its claim that it was being charged for fraudulent or improper clicks.

43. On June 18, 2009, Facebook wrote to Plaintiff, "[w]e've been continuing to look into this on our side, and so far have found that you've only been billed for valid clicks on your ads, which match the stats reported to you in your ads account. We're currently not able to offer you a refund for any of these charges."

44. Facebook has never refunded any monies to Plaintiff.

## CLASS ACTION ALLEGATIONS

45. Plaintiff bring this nationwide class action on behalf of itself and a Class defined as follows:

> *All persons or entities in the United States who paid Facebook for PPC (pay-per-click) advertising through Facebook's Performance Advertising Platform.*

46. Excluded from the Class are governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, legal representatives, successors, subsidiaries, and assigns. Also

excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

47.  Plaintiff reserves the right to modify the Class description and the Class period based on the results of discovery.

48.  Plaintiff and the Class bring this action for equitable, injunctive and declaratory relief pursuant to subdivisions (b)(1), (b)(2) and (b)(3) of Rule 23 of the Federal Rules of Civil Procedure.

49.  <u>Numerosity</u>: The proposed Class is so numerous that individual joinder of all its members is impracticable. Plaintiff does not presently know the exact number of class members. Due to the nature of the trade and commerce involved, however, Plaintiff believes that the total number of Class members is at least in the thousands.

50.  <u>Common Questions of Law and Fact Predominate</u>: Facebook has acted, with respect to the Class, in a manner generally applicable to each Class member. There is a well-defined community of interest in the questions of law and fact involved in the action, which affect all Class members. There are many questions of law and fact common to the Representative Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members. The questions of law and fact common to the Class and which predominate over any questions affecting only individual members include, but are not limited to, the following:

    a.  the construction of the form Agreement between Facebook and the Class;

     b.    whether Facebook breached its Agreement with the Class;

     c.    whether Facebook breached the covenant of good faith and fair dealing;

     d.    whether Facebook has taken adequate measures to prevent improper clicks on advertisements on its website;

     e.    whether Facebook has taken adequate measures to properly track actual clicks;

     e.    whether Facebook has properly accounted and for and refunded fees it has wrongfully collected from Class members;

     f.    whether Facebook engaged in unfair business practices likely to deceive Plaintiff and the Class members before and during the contractual period; and

     g.    whether Plaintiff and the members of the Class have been damaged by the wrongs complained of herein, and if so, the measure of those damages and the nature and extent of other relief that should be afforded.

51.    Typicality: Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by Defendant's common course of conduct since they were all forced to pay for either non-existent and/or fraudulent clicks and thus all were harmed in substantially the same way by Defendant's actions.

52. <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff is committed to prosecuting this action and has retained competent counsel with substantial experience in prosecuting complex and class action litigation. Plaintiff and its counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so. Neither Plaintiff nor its counsel has any interests adverse to those of the Class.

53. <u>Superiority of a Class Action</u>: Plaintiff and the members of the Class suffered, and will continue to suffer, harm as a result of Facebook's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the class is impractical. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all Class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system, and protects the rights of the Class members. Furthermore, for many, if not most, Class members, a class action is the only feasible mechanism that allows them an opportunity for legal redress and justice.

54. Adjudication of individual Class members' claims with respect to the Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other Class members to protect their interests.

## FIRST CAUSE OF ACTION

## BREACH OF CONTRACT

55. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alterative.

56. Facebook entered into identical contracts with Plaintiff and the members of the Class.

57. The Agreements contain and contained an implied covenant of good faith and fair dealing that Facebook would not do anything that would have the effect of injuring the rights of Plaintiff and the Class to receive the benefits of the contract.

58. Facebook breached its contracts with Plaintiff and the Class, and the covenant of good faith and fair dealing, by collecting fees from Plaintiff and members of the Class for non-existent clicks and for improper clicks even though Facebook knew, or should have reasonably known, that the clicks were not "actual clicks" but rather purposeful clicks made for an improper purpose. Facebook further breached its contract with Plaintiff and the Class by failing to implement effective oversight, investigating oversight and prevention of click fraud.

59. As a direct and proximate result of Facebook's breach of contract, Plaintiff and the Class have been damaged in an amount to be determined at trial.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below.

## SECOND CAUSE OF ACTION

## VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE §§17200 et seq.

60.  Plaintiff realleges the preceding paragraphs as if fully set forth herein, and, to the extent necessary, pleads this cause of action in the alterative.

61.  Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Facebook's actions as delineated herein.

62.  Facebook's actions, as alleged in this Complaint, constitute an unfair or deceptive practice within the meaning of California Business and Professions Code section 17200 in that Facebook's actions are unfair, unlawful and/or fraudulent.

63.  Facebook's business practices, as alleged herein, are unfair because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers in that Facebook: (a) fails to employ any reasonable method to track fraudulent clicks; (b) fails to inform its customers that it does not employ any reasonable method to track fraudulent clicks; (c) charges customers for non-existent clicks; and (d) charges customers for invalid clicks.

64.  Facebook's business practices, as alleged herein, are unlawful because the conduct constitutes a breach of the Agreement.

65. Facebook's business practices are fraudulent because they charge advertisers for clicks that are non-existent and because the business practices are likely to deceive its customers into believing that they will not be charged for "invalid" clicks, when in fact, Facebook routinely charges its customers for clicks that it knows, or by the exercise of reasonable care, should know are not clicks that originate from potential customers who actively and legitimately chose the advertiser's link.

66. Facebook's alleged wrongful business acts constituted, and constitute, a continuing course of conduct of unfair competition.

67. Facebook's business acts and practices, as alleged herein, have caused injury to Plaintiff and the Class.

68. Pursuant to section 17203 of the California Business and Professions Code, Plaintiff and the Class seek an order of this Court enjoining Facebook from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, including those acts set forth in this Complaint.

69. Plaintiff and the Class also seek an order requiring Facebook to disgorge all ill-gotten gains and full restitution of all moneys it wrongfully obtained from Plaintiff and the Class.

WHEREFORE, Plaintiff and the Class pray for relief as set forth below

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and members of the Class request that the Court enter an order or judgment against the Defendants as follows:

1. Certifying the proposed Class and ordering notice thereto to be paid by Defendants;

2. Adjudging and decreeing that Defendants have engaged in the conduct alleged herein;

3. Ordering restitution and disgorgement on certain causes of action;

4. Issuing an injunction ordering Defendants to cease and desist from engaging in the unfair, unlawful, and/or fraudulent practices alleged in this Complaint;

5. Awarding compensatory and general damages according to proof on certain causes of action;

6. Awarding special damages according to proof on certain causes of action;

7. Awarding both pre and post-judgment interest at the maximum allowable rate on any amounts awarded;

8. Awarding costs of the proceedings herein;

9. Awarding reasonable attorneys fees as allowed by statute; and

10. Any and all such other and further relief that this Court may deem just and proper.

DATED: July 7, 2009

SEEGER WEISS LLP

BY: _____
Jonathan Shub

CLASS ACTION COMPLAINT

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

DATED: July 7, 2009

SEEGER WEISS LLP

By: _____
Jonathan Shub, Esq.

Brian Kabateck (SBN 152054)
bsk@kbklawyers.com
Richard Kellner (SBN 171416)
rlk@kbklawyers.com
**KABATEK BROWN KELLNER, LLP**
Engine Company No. 28 Building
644 South Figueroa Street
Los Angeles, CA 90017
Tel: 213.217.5000 Fax: 213.217.5010

Eric D. Freed (SBN 164526)
eric@freedweiss.com
Jeffrey Leon
jeff@freedweiss.com
**FREED & WEISS LLC**
111 W. Washington St., Suite 1331
Chicago, Illinois 60602
(312) 220-0000

Steven N. Berk
steven@berklawdc.com
**BERK LAW PLLC**
1225 15th Street NW
Washington, D.C. 20005

*Counsel for the Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT