**E-Filed  4/22/2010**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE FACEBOOK PPC ADVERTISING LITIGATION | Case Numbers 5:09-cv-03043-JF, 5:09-cv-03519-JF, 5:09-cv-03430-JF |
| | ORDER[1] GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND DENYING MOTION TO STRIKE |
| | [re:  document no. 46] |

Defendant moves to dismiss Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted and to strike portions of the complaint pursuant to Fed. R. Civ. P. 12(f).  The Court has considered the moving and responding papers and the oral argument of counsel presented at the hearing on March 5, 2010.  For the reasons discussed below, the motion to dismiss will be granted in part and denied in part, with leave to amend. The motion to strike will be denied.

### I. BACKGROUND

This putative class action arises out of individual contracts between Defendant Facebook

---

[1] This disposition is not designated for publication in the official reports.

1    PPC ("Defendant") and Plaintiffs RootZoo, Inc., Matthew Smith, and Steven Price (collectively,

2    "Plaintiffs").  Defendant operates a popular social networking website: www.facebook.com.

3    Complaint ¶ 20.  Plaintiffs individually entered into contracts with Defendant for advertising on

4    the website.  Complaint ¶¶ 50, 60, and 69.  Plaintiffs' advertisements appeared alongside

5    Defendant's social networking content.  Complaint ¶ 24.

6           To place an advertisement on Defendant's website, a potential advertiser must select the

7    budget for its advertising campaign and the pricing mechanism that will be used.  Complaint ¶

8    31.  Defendant provides two options for paying for an advertising campaign: cost per click

9    ("CPC") or cost per thousand impressions ("CPM").  Complaint ¶ 29.  Plaintiffs each entered

10   into CPC contracts.  Complaint ¶¶ 50, 61, and 69.   From the web page that directs the potential

11   advertiser to choose the budget and pricing options, Defendant provides links to other web pages

12   on which Defendant makes representations that it will charge only for "legitimate clicks".

13   Complaint Ex. A.  Such representations are found in Defendant's "Help Center", which contains

14   links to web pages entitled "Ads:  Glossary of Ad Terms", "Ads: Campaign Costs and

15   Budgeting", and "Ads: Advertising Credits and Coupons" (collectively, "the Extrinsic

16   Evidence").  Complaint Exhs. B-E.

17          The "Ads: Glossary of Ad Terms" web page contains the following statement with

18   respect to "clicks":

19          We have a variety of measures in place to ensure that we only report and charge
            advertisers for *legitimate clicks*, and not clicks that come from automated programs, or
20          clicks that may be repetitive, abusive, or otherwise inauthentic. Due to the proprietary
            nature of our technology, we're not able to give you more specific information about
21          these systems.

22   Complaint Ex. B (emphasis added).  The "Ads: Glossary of Ad Terms" page also contains a

23   statement that "CPC stands for Cost Per Click.  If your ads are bid on a CPC basis, you will be

24   charged when *users* click on your ads and visit your website."  Complaint Ex. C (emphasis

25   added).  Finally, the complaint alleges that Defendant made additional public statements

26   indicating that it had taken measures to identify "suspicious" clicks.  Complaint ¶ 46.

27          An advertiser also must agree to Defendant's Advertising Terms and Conditions ("the

28   Written Agreement").  Complaint ¶ 88.  The Written Agreement includes the following

Case No. C 09-3043 JF (HRL)
ORDER GRANTING IN PART, DENYING IN PART MOTION TO DISMISS, ETC.
(JFEX1)

1   disclaimer:

2         I [PLAINTIFF] UNDERSTAND THAT THIRD PARTIES MAY GENERATE
        IMPRESSIONS, CLICKS OR OTHER ACTIONS AFFECTING THE COST OF THE
3       ADVERTISING FOR FRAUDULENT OR IMPROPER PURPOSES, AND I ACCEPT
        THE RISK OF ANY SUCH IMPRESSIONS, CLICKS, OR OTHER ACTIONS.
4       FACEBOOK SHALL HAVE NO RESPONSIBILITY OR LIABILITY TO ME IN
        CONNECTION WITH ANY THIRD PARTY CLICK FRAUD OR OTHER IMPROPER
5       ACTIONS THAT MAY OCCUR

6   Howitson Decl. Exhs. 1-2 at "Indemnification" section ("the Disclaimer").[2]

7         Plaintiffs allege they have been charged for "invalid clicks" and "fraudulent clicks".

8   Complaint ¶¶ 51, 63, and 71.  The complaint attributes these clicks to "(a) technical problems;

9   (b) system implementation errors; (c) various types of unintentional clicks; (d) incomplete clicks

10  that fail to open the advertiser's web page; and (e) improperly recorded or unreadable clicks

11  originating in some cases from an invalid proxy server or unknown browser types."  Complaint ¶

12  4.  The complaint describes "click fraud" as the "result of a competitor clicking on an

13  advertiser's ad in order to drive up the cost of an ad or deplete the competitor's budget for

14  placing ads."  Complaint ¶ 36.

15        Plaintiffs filed the instant action on July 7, 2009, seeking relief under California's Unfair

16  Competition Law ("UCL"), Cal. Bus. Prof. Code § 17200 *et seq*.; remedies for breach of contract

17  and the implied covenant of good faith and fair dealing; a judicial declaration of the rights and

18  obligations of the parties under the subject contracts; and remedies for unjust enrichment.

19                              **I. MOTION TO DISMISS**

20  **A.      Legal standard**

21         "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a

22  cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v.*

23  *Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  For purposes of a motion to

24

25

26         [2]  Plaintiffs dispute that the Disclaimer is present in their contracts.  Complaint ¶ 3.  In its
    moving papers, Defendant provides copies of the Advertising Terms and Conditions in effect at
27  the times Plaintiffs agreed to advertise on Defendant's website.  The Advertising Terms and
    Conditions contain the Disclaimer.  Plaintiffs have not disputed the authenticity of these
28  documents, and their opposition papers respond to the Disclaimer as if it were included in their
    contracts.

                                          3

1   dismiss, the plaintiff's allegations are taken as true, and the court must construe the complaint in

2   the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  "To

3   survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

4   to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the

5   plaintiff pleads factual content that allows the court to draw the reasonable inference that the

6   defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)

7   (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).  Thus, a court need not

8   accept as true conclusory allegations, unreasonable inferences, legal characterizations, or

9   unwarranted deductions of fact contained in the complaint. *Clegg v. Cult Awareness Network*,

10  18 F.3d 752, 754-755 (9th Cir. 1994).

11          Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot

12  be cured by amendment. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).  When

13  amendment would be futile, however, dismissal may be ordered with prejudice.  *Dumas v. Kipp*,

14  90 F.3d 386, 393 (9th Cir. 1996).

15  **B.       Documents considered**

16          Plaintiffs attach several documents to their complaint.  Such documents may be

17  considered on a motion to dismiss.  Fed. R. Civ. P. 10(b).  Defendant provides copies of the

18  Advertising Terms and Conditions in effect at the times that Plaintiffs placed their first

19  advertisements on Defendant's website.  Howitson Decl. Exhs. 1 and 2.  The complaint alleges

20  the contents of at least a portion of these exhibits.  Complaint ¶ 3.  Plaintiffs dispute that all of

21  the terms set forth in the documents actually are present in the Written Agreement between the

22  parties, but they do not question the authenticity of Defendant's exhibits and respond to the

23  instant motion as if the terms were included in the Written Agreement.  Accordingly, the Court

24  also may consider these documents. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.  1994),

25  *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th

26  Cir.  2002) (holding that "documents whose contents are alleged in a complaint and whose

27  authenticity no party questions, but which are not physically attached to the pleading, may be

28  considered in ruling on a Rule 12(b)(6) motion to dismiss"); and *In re Stac Elcs. Sec. Litig.*, 89 F.

4

Case No. C 09-3043 JF (HRL)
ORDER GRANTING IN PART, DENYING IN PART MOTION TO DISMISS, ETC.
(JFEX1)

1   3d 1399, 1405 n.4 (9th Cir. 1996) (noting that complete copies of documents whose contents are

2   alleged in the complaint may be considered in connection with a motion to dismiss pursuant to

3   Fed. R. Civ. P. 12(b)(6)).

4   **C.       Breach of Contract Claims**

5          Defendant argues that Plaintiffs have failed to state a claim for breach of contract because

6   the contract expressly waives Defendant's liability for third-party click fraud.  Plaintiffs argue

7   that the Written Agreement is ambiguous.  Under California law, interpretation of a contract is a

8   two-step process:

9       "First the court provisionally receives (without actually admitting) all credible evidence
        concerning the parties' intentions to determine 'ambiguity,' i.e., whether the language is
10      'reasonably susceptible' to the interpretation urged by a party. If in light of the extrinsic
        evidence the court decides the language is 'reasonably susceptible' to the interpretation
11      urged, the extrinsic evidence is then admitted to aid in the second step—interpreting the
        contract."
12
    *Wolf v. Superior Court*, 114 Cal. App. 4th 1343, 1351 (Cal. App. 2d Dist. 2004).  However,
13
    while the California rule governing consideration of extrinsic evidence is rather relaxed, "[t]his
14
    rule must be restricted to its stated bounds; it does no more than allow extrinsic evidence of the
15
    parties' understanding and intended meaning of the *words used in their written agreement.*"
16
    *Brawthen v. H & R Block, Inc.*, 28 Cal. App. 3d 131, 136 (Cal. App. 1st Dist. 1972) (emphasis in
17
    the original).  Plaintiffs thus must do more than claim that the Written Agreement is ambiguous;
18
    they must point to specific words in the Written Agreement and allege the existence of credible
19
    evidence of the parties' intended meaning of those words.
20
            **1.       Ambiguous terms in the Written Agreement**
21
            As an initial matter, Plaintiffs argue that the Written Agreement's integration clause
22
    itself is ambiguous.  The clause reads:
23
        "[T]hese terms and conditions, the Advertising Guidelines and *other applicable
24      Facebook policies*, and the terms of any applicable advertising order submitted through
        the site constitute the entire and exclusive agreement between the parties with respect to
25      any advertising order I place[.]"

26  Howitson Decl. Exhs. 1-2 at "Miscellaneous" section (emphasis added).  Plaintiffs contend that

27  the phrase "other applicable Facebook policies" refers to the Extrinsic Evidence on Defendant's

28  website.  Plaintiffs also argue that the terms "risk" and "click fraud" in the Disclaimer are

1    ambiguous.  The Disclaimer is included in a section of the Written Agreement in which

2    Defendant also disclaims warranties for non-infringement, merchantability, and fitness for any

3    purpose.  Conceivably, the term "risk" could refer to some danger other than being charged for

4    non-"legitimate" clicks, such as infringement, lack of merchantability, or lack of fitness.  The

5    term "click fraud" is not defined explicitly anywhere in the Written Agreement.

6           **2.      Credible evidence concerning the parties' intentions**

7           Plaintiffs do not allege that the Extrinsic Evidence existed at the time the parties entered

8    into the Written Agreement or that Plaintiffs were aware of the existence of the Extrinsic

9    Evidence at that time.  Under these circumstances, the Extrinsic Evidence is immaterial with

10   respect to the intentions of the parties at the time they entered into the Written Agreement.

11          **3.      Whether the contract language is reasonably susceptible to Plaintiffs'
                    interpretation**

12
13          The Court concludes that most of the terms in question are not reasonably susceptible to

14   Plaintiffs' proposed interpretations.  Because the Extrinsic Evidence is immaterial under the

     circumstances, the term "other applicable Facebook policies" is not reasonably susceptible to an
15
     interpretation as a reference to the Extrinsic Evidence.  Nor do Plaintiffs propound constructions
16
     of the terms "risk" and "click fraud" that are reasonable under the circumstances. The
17
     Disclaimer provides that "Facebook shall have no responsibility or liability to me in
18
     connection with any third party click fraud or other improper action that may occur."   The term
19
     "click fraud" directly follows the Disclaimer's reference to "clicks or other actions affecting the
20
     cost of the advertising" that are generated by third parties for "fraudulent or improper purposes".
21
     Though the terms "risk" and "click fraud" may be ambiguous in the abstract, the words of the
22
     Written Agreement are not reasonably susceptible to an interpretation that would render
23
     *Defendant* liable for third-party click fraud, even under the definition of "click fraud" provided
24
     by Plaintiffs.
25
            However, the Disclaimer may be ambiguous with respect to whether it covers only
26
     "click fraud and other improper actions" by "*third parties*".  Plaintiffs claim that they
27
     have been charged for "invalid clicks" that are the result of Defendant's own conduct.  As
28

                                                    6
     Case No. C 09-3043 JF (HRL)
     ORDER GRANTING IN PART, DENYING IN PART MOTION TO DISMISS, ETC.
     (JFEX1)

1    discussed previously, they allege that "invalid clicks" can result from deficiencies in Defendant's

2    system as a result of "(a) technical problems; (b) system implementation errors; (c) various types

3    of unintentional clicks; (d) incomplete clicks that fail to open the advertiser's web page; and (e)

4    improperly recorded or unreadable clicks originating in some cases from an invalid proxy server

5    or unknown browser types."  Complaint ¶ 4.  Such "invalid clicks" arguably need not be

6    fraudulent, improper, or the result of the actions of third parties.  The language of the contract is

7    reasonably susceptible to this interpretation even without reference to the Extrinsic Evidence.

8    **D.      Breach of the Implied Covenant of Good Faith and Fair Dealing**

9             "There is implied in every contract a covenant by each party not to do anything which

10   will deprive the other parties thereto of the benefits of the contract."  *Harm v. Frasher*, 181 Cal.

11   App.2d 405, 417 (Cal. Ct. App. 1960).  A "breach of a specific provision of the contract is not a

12   necessary prerequisite" to establishing a breach of the implied covenant of good faith and fair

13   dealing.  *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.,* 2 Cal. 4th 342, 373 (1992).

14   However, "[t]he implied covenant will not apply where no express term exists on which to hinge

15   an implied duty, and where there has been compliance with the contract's express terms." *Berger*

16   *v. Home Depot U.S.A., Inc.*, 476 F. Supp. 2d 1174, 1177 (C.D. Cal. 2007).  With respect to "click

17   fraud", the Disclaimer expressly precludes the duty that Plaintiffs seek to imply.

18            While Plaintiffs have stated a claim for breach of contract at least as to "invalid clicks",

19   "[i]f the allegations in a breach of implied covenant claim 'do not go beyond the statement of a

20   mere contract breach and, relying on the same alleged acts, simply seek the same damages or

21   other relief already claimed in a companion contract cause of action, they may be disregarded as

22   superfluous as no additional claim is actually stated.'" *Schulken v. Wash. Mut. Bank*, No. C.

23   09-02708 JW, 2009 WL 4173525 (N.D. Cal. Nov.19, 2009) (citing *Careau & Co. v. Sec. Pac.*

24   *Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (Cal. Ct. App. 1990)).  Plaintiff's claim of breach

25   of the implied covenant of good faith and fair dealing relies upon essentially the same allegations

26   as their breach of contract claim.

27   **E.      Unjust Enrichment**

28            An unjust enrichment claim requires the allegation of the "receipt of benefit and [the]

7

1   unjust retention of the benefit at the expense of others." *Lectrodryer v. SeoulBank*, 77 Cal. App.

2   4th 723, 726 (Cal. Ct. App. 2000).  However, the remedy for unjust enrichment applies only in

3   the absence of an adequate remedy at law.  *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96

4   F.3d 1151, 1167 (9th Cir. 1996) (finding that unjust enrichment does not lie where there is a

5   contract defining the parties' rights).  Because Plaintiffs have stated a claim for breach of

6   contract as to their allegations regarding "invalid clicks", a separate remedy for unjust

7   enrichment is unnecessary.  Because Plaintiffs have not to this point alleged any basis upon

8   which Defendant would be liable for "click fraud", their claim that Defendant has unjustly

9   retained benefits resulting from "click fraud" is insufficient as well.

10  **F.      Unfair Competition Claims**

11          The UCL prohibits any "unlawful, unfair or fraudulent business practices."  Cal. Bus. &

12  Prof. Code § 17200, *see also Cel-Tech Commc'ns, Inc. v Los Angeles Cellular Tel. Co.*, 20 Cal.

13  4th 163, 180 (1999).  Because the statute is written in the disjunctive, it applies separately to

14  business practices that are (1) unlawful, (2) unfair, or (3) fraudulent.  *See Pastoria v. Nationwide*

15  *Ins.*, 112 Cal. App. 4th 1490, 1496 (2003).  Plaintiffs contend that Defendant's conduct has

16  violated all three prongs.   Defendant argues that Plaintiffs have failed to state a claim under the

17  UCL because Plaintiffs lack standing and have not alleged sufficient facts to demonstrate an

18  unlawful, unfair, or fraudulent practice.

19          **1.      Standing**

20          Private individuals have standing under the UCL if they "suffered injury in fact and

21  [have] lost money or property as a result of the unfair competition."  Cal. Bus. Prof. Code §

22  17204.  Defendant contends that Plaintiffs' UCL claim is insufficient because any losses suffered

23  by Plaintiffs were a result of third-party click fraud, rather than Defendant's own conduct.

24  However, Plaintiffs allege that they have been injured by Defendant's *direct* conduct in the form

25  of charges for "invalid clicks" and "click fraud".

26          Defendant is correct that, at least as to claims under the fraudulent prong of the UCL, a

27  plaintiff also must plead reliance.  *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009).

28  "[R]eliance is proved by showing that the defendant's misrepresentation or nondisclosure was

8

1   'an immediate cause' of the plaintiff's injury-producing conduct. [Citation.] A plaintiff may

2   establish that the defendant's misrepresentation is an 'immediate cause' of the plaintiff's conduct

3   by showing that in its absence the plaintiff 'in all reasonable probability' would not have engaged

4   in the injury-producing conduct." *Id.* (internal quotation marks and citations omitted).  Reliance

5   can be presumed if the misrepresentation was material, that is, "if a reasonable man would attach

6   importance to its existence or nonexistence in determining his choice of action in the transaction

7   in question." *Id.*  As discussed earlier, Plaintiffs do not allege that the Extrinsic Evidence existed

8   at the time the parties entered into the Written Agreement or that they knew of the existence of

9   the Extrinsic Evidence at that time.  Accordingly, Plaintiffs have failed to allege reliance

10   sufficiently.

11        **2.**      **Facts sufficient to state a claim**

12           **i.**      **Unlawful practices**

13      "By proscribing 'any unlawful' business practice, [the UCL] 'borrows' violations of other

14   laws and treats them as unlawful practices that the unfair competition law makes independently

15   actionable." *Cel-Tech*, 20 Cal. 4th at 180. "California courts have not foreclosed common law

16   theories as a basis for actions pursuant to [the UCL]", *Mercado v. Allstate Ins. Co.*, 340 F.3d

17   824, 828 n.3 (9th Cir. 2003).  Plaintiffs' allegation of a systematic breach of contract is a

18   sufficient predicate for unlawful business practices.

19           **ii.**      **Unfair practices**

20      What constitutes unfair conduct in consumer actions under the UCL is unclear. *Camacho*

21   *v. Automobile Club of Southern California*,  142 Cal. App. 4th 1394, 1400 (Cal. Ct. App. 2006).

22   *Camacho* held that "unfairness" under the UCL should be judged by the same standard used by

23   the Federal Trade Commission under 15 U.S.C. § 45(n). *Id.* at 1403.  15 U.S.C. § 45(n) provides

24   three elements for what constitutes "unfair": 1) substantial injury, 2) the complained-of practice

25   is not outweighed by any countervailing benefits to consumers or competition, and 3) the injury

26   must be one that consumers themselves could not reasonably have avoided. *See also Davis v.*

27   *Ford Motor Credit Co.*, 179 Cal. App. 4th 581, 584  (Cal. App. 2d Dist. 2009) (applying the

28   unfairness test from *Camacho*).

Case No. C 09-3043 JF (HRL)
ORDER GRANTING IN PART, DENYING IN PART MOTION TO DISMISS, ETC.
(JFEX1)

1    "An injury may be sufficiently substantial . . . if it does a small harm to a large number of

2    people." *American Financial Services Asso. v. FTC*, 767 F.2d 957, 972 (D.C. Cir. 1985)

3    (discussing substantial injury under 15 U.S.C. § 45(n)).  Plaintiffs allege that the harm to the

4    putative class is substantial for purposes of the UCL.  They claim that Defendant easily could

5    provide safeguards to prevent billing for invalid and fraudulent clicks, Complaint ¶ 38, and that

6    the detriments of the complained of practice are not outweighed by the countervailing benefits.

7    Defendant points out that a practice cannot be "unfair" under the UCL if the practice

8    expressly has been held to be lawful, citing to *Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1506

9    (1999).  *Lazar* found that "[t]he UCL does not apply if the Legislature has expressly declared the

10   challenged business practice to be lawful in other statutes."  *Id.*  However, this does not mean

11   that the UCL does not apply to a practice simply because a private agreement between the parties

12   allows for it, particularly if the alleged injury is one that Plaintiffs reasonably could not have

13   avoided.  "[C]onsumers cannot have reasonably avoided the injury if they could not have

14   reasonably anticipated the injury, if they did not have the means to avoid the injury, or if their

15   free market decisions were unjustifiably hampered by the conduct of the seller."  *Camacho*,  142

16   Cal. App. 4th at 1405.  At least with respect to "invalid clicks", the Court concludes that

17   Plaintiffs have stated a claim that they reasonably could not have avoided the injury because of

18   the ambiguities in the Disclaimer.   At the same time, because they have not shown how the

19   Disclaimer is ambiguous as to click fraud, that aspect of their UCL claim is insufficient.

20   **G.      Declaratory Relief**

21   Plaintiffs seek a judicial declaration of their rights under the Written Agreement.

22   Defendant argues that this claim should be dismissed because a determination of Plaintiffs'

23   breach of contract claims will settle Plaintiffs' legal rights, rendering a declaratory judgment

24   duplicative.  In deciding whether declaratory relief is appropriate, the court first determines

25   whether there is an actual case or controversy within its jurisdiction.  *Principal Life Ins. Co. v.*

26   *Robinson*, 394 F.3d 665, 669 (9th Cir. 2005).  If an actual case or controversy does exist, the

27   court must decide whether to exercise its jurisdiction over the controversy by examining the

28   factors announced in *Brillhart v. Excess Ins. Co.*, 316 U.S .491 (1942).  *Id.*  The factors state that

Case No. C 09-3043 JF (HRL)
ORDER GRANTING IN PART, DENYING IN PART MOTION TO DISMISS, ETC.
(JFEX1)

1   "1) the district court should avoid needless determination of state law issues; 2) it should

2   discourage litigants from filing declaratory actions as a means of forum shopping; and 3) it

3   should avoid duplicative litigation." *Principal Life*, 394 F.3d at 672.  If the court does not

4   exercise jurisdiction, it must explain the basis of its decision on the record.  *Id.*  In the instant

5   case, there is an actual controversy regarding the rights of the parties under the Written

6   Agreement.  While resolution of the declaratory judgment claim does involve state law issues of

7   contractual interpretation, the determination is not superfluous because the Written Agreement

8   must be interpreted in order to resolve the breach of contract claim.

9   ### III.  MOTION TO STRIKE

10        Pursuant to Federal Rule of Procedure Rule 12(f), the Court may strike "from any

11  pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous

12  matter."  Fed. R. Civ. P. 12(f).  Motions to strike generally will not be granted unless it is clear

13  that the matter to be stricken could not have any possible bearing on the subject matter of the

14  litigation.  *See LeDuc v. Kentucky Central Life Insurance Co.*, 814 F. Supp. 820 (N.D. Cal.

15  1992).  Allegations "supplying background or historical material or other matter of an evidentiary

16  nature will not be stricken unless unduly prejudicial to defendant."  *Id*.  Moreover, allegations

17  which contribute to a full understanding of the complaint as a whole need not be stricken.  *See id.*

18        Defendant moves to strike paragraph 42 of the complaint, arguing that it is unduly

19  prejudicial.  Paragraph 42 purports to provide "a sample of complaints from Facebook

20  advertisers found on an advertising industry website, WickedFire.com, regarding Defendant's

21  practice of charging advertisers for invalid, non-existent and fraudulent clicks".  Complaint ¶ 42.

22  The six  statements provided are not attributed to any particular author.  Plaintiffs allege that the

23  statements relate to the complaints of "absent Class members" and that Defendant is not

24  prejudiced by allegations that are found on a public website.  Plaintiffs' Opp'n at 23.  Defendant

25  does not allege that it will suffer any specific undue prejudice, arguing only that the statements

26  are hearsay and minimally probative.  This is insufficient to demonstrate undue prejudice.

27

28

Case No. C 09-3043 JF (HRL)
ORDER GRANTING IN PART, DENYING IN PART MOTION TO DISMISS, ETC.
(JFEX1)

1

## IV. ORDER

2     (1)   Defendant's motion to dismiss is GRANTED with respect to Counts Two, Four,

3             and Six in their entirety, with respect to Count One insofar as it alleges fraudulent

4             conduct, and with respect to Count Three insofar as it alleges a breach of the

5             implied covenant of good faith and fair dealing.  The motion otherwise is

6             DENIED;

7     (2)   The motion to strike is DENIED; and

8     (3)   Plaintiffs shall have leave to amend consistent with the foregoing discussion.  Any

9             amended pleading shall be filed and served within thirty (30) days of the date this

10             order is filed.

11

12

DATED:  4/22/10

13                                         _____
JEREMY FOGEL
United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 09-3043 JF (HRL)
ORDER GRANTING IN PART, DENYING IN PART MOTION TO DISMISS, ETC.
(JFEX1)