**E-Filed 8/25/2010**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| IN RE FACEBOOK PPC ADVERTISING LITIGATION | Case Numbers 5:09-cv-03043-JF, 5:09-cv-03519-JF, 5:09-cv-03430-JF<br><br>ORDER[1] GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT<br><br>[Document No. 79] |
|---|---|

Defendant moves to dismiss Plaintiffs' first amended complaint ("FAC") pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. The Court has considered the moving and responding papers and the oral argument of counsel presented at the hearing on August 6, 2010. For the reasons discussed below, the motion will be granted in part and denied in part, with leave to amend.

## I. BACKGROUND

Plaintiffs RootZoo, Inc. ("RootZoo"), Steven Price ("Price"), and Matthew Smith ("Smith") (collectively, "Plaintiffs") filed the instant putative class action on July 7, 2009. The

[1] This disposition is not designated for publication in the official reports.

dispute arises out of individual contracts between Plaintiffs and Facebook PPC ("Defendant"). Defendant operates a popular social networking website, www.facebook.com. (FAC ¶ 1.) RootZoo, Price, and Smith individually entered into contracts with Defendant for advertising on its website. (FAC ¶¶ 54, 65, and 76.) Defendant offers to display advertisements on portions of its website that are viewed by Facebook users. (FAC ¶ 8.) Each advertisement contains a link either to another portion of Defendant's website or to an external website. (*Id.*) If a user clicks on the advertisement, the user's web browser is directed to the other location. (*Id.*)

To place an advertisement on Defendant's website, a potential advertiser must perform four steps. (FAC ¶ 28.) First, the advertiser designs an advertisement and selects the destination of the link embedded within the advertisement. (*Id.*) Second, the advertiser selects the target demographic for the advertising campaign. (FAC ¶ 29.) Third, the advertiser selects the payment structure for the advertising campaign. Defendant provides two payment options: cost per click ("CPC") or cost per thousand impressions ("CPM"). (FAC ¶ 31.) Plaintiffs each entered into CPC contracts. (FAC ¶¶ 54, 67, 76.) Under the CPC option, the advertiser pays a fee to Defendant each time a user clicks on the advertisement. (*Id.*) To select the CPC option, the advertiser must specify its "Max Bid" (the maximum amount the advertiser is willing to pay to Defendant for each click) and its "Daily Budget" (the maximum amount the advertiser is willing to pay to Defendant each day). (FAC ¶ 30.) Defendant selects which advertisements to display on its website based on a number of factors, including the historical performance of the advertisement and its Max Bid.

Finally, the advertiser must submit its advertising design to Defendant for approval and agree to certain terms and conditions. (FAC ¶ 28.) Agreements of this type commonly are referred to as "click-through" agreements. Advertisers are presented with a copy of the terms and conditions, and they communicate their assent to those terms and conditions by placing their advertising order. (*See* Howitson Decl. ISO Def.'s Previous Mot. to Dismiss ("Howitson Decl."), Ex. 4.[2]) RootZoo initially contracted with Defendant in November 2007. (FAC ¶ 54).

[2] In connection with its previous motion to dismiss, Defendant submitted an exemplary screen-shot of a web page through which an advertiser agrees to place an ad. The FAC

Smith first contracted with Defendant in April 2009, (FAC ¶ 76), and Price first contracted with Defendant in May 2009, (FAC ¶ 65). Price's contract differs in certain respects from those entered into by RootZoo and Smith.

RootZoo and Smith both agreed to Defendant's Advertising Terms and Conditions (the "AT&Cs"). (*See* Howitson Decl., Exhs. 1 and 2.[3]) At least with respect to the provisions currently at issue, the agreements appear to be identical. The AT&Cs state that "I understand that Facebook will determine, in its sole discretion, how to measure the number of impressions, inquiries, conversions, clicks, or other actions taken by third parties in connection with my advertisements, and all charges will be based on such measurements." (*Id.*) The AT&Cs also contain the following disclaimer:

> I UNDERSTAND THAT THIRD PARTIES MAY GENERATE IMPRESSIONS, CLICKS OR OTHER ACTIONS AFFECTING THE COST OF THE ADVERTISING FOR FRAUDULENT OR IMPROPER PURPOSES, AND I ACCEPT THE RISK OF ANY SUCH IMPRESSIONS, CLICKS, OR OTHER ACTIONS. FACEBOOK SHALL HAVE NO RESPONSIBILITY OR LIABILITY TO ME IN CONNECTION WITH ANY THIRD PARTY CLICK FRAUD OR OTHER IMPROPER ACTIONS THAT MAY OCCUR.

(*Id.*) Price's contract did not contain the AT&Cs; instead, Price appears to have assented to a later agreement called a Statement of Rights and Responsibilities (the "SR&Rs"). (*See* Clark Decl. ISO Mot. to Dismiss, Ex. A.) The SR&Rs provide that "You will pay for your Orders in accordance with our Payment Terms. The amount you owe will be calculated based on our tracking mechanisms." (*Id.*) The SR&Rs also include a disclaimer: "We [Defendant] cannot

---

references this document, and Plaintiffs do not dispute its authenticity. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002) (holding that "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss"); and *In re Stac Elcs. Sec. Litig.*, 89 F. 3d 1399, 1405 n.4 (9th Cir. 1996) (noting that complete copies of documents whose contents are alleged in the complaint may be considered in connection with a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)).

[3] Defendant also submitted these exhibits in connection with its previous motion to dismiss. While Plaintiffs dispute that all of the terms set forth in the exhibits actually are present in their contracts, they do not question the authenticity of Defendant's exhibits and respond to the instant motion as if the terms were included in their contracts. The Court may consider these documents. *See Branch*, 14 F.3d at 454.

control how people interact with your ads, and are not responsible for click fraud or other improper actions that affect the cost of running ads." (*Id.*)

Notwithstanding these disclaimers, Plaintiffs allege that Defendant made representations that it would charge only for certain types of clicks. Defendant's website includes a "Help Center," which offers definitions of several terms. (FAC Exhs. B-C.) The Help Center states that "clicks are counted each time a user clicks through your ad to your landing page," (FAC Ex. B), and that "[i]f your ads are bid on a CPC basis, you will be charged when users click on your ads and visit your website," (FAC Ex. C.) The Help Center also represents that "[Defendant] ha[s] a variety of measures in place to ensure that [it] only report[s] and charge[s] advertisers for legitimate clicks, and not clicks that come from automated programs, or clicks that may be repetitive, abusive, or otherwise inauthentic." (FAC Ex. B.) Notwithstanding these representations, Plaintiffs allege that they have been charged for:

> (a) failed attempts by Facebook users to reach an advertisement because of a glitch in Facebook's website that are improperly counted by Facebook as a billable click; (b) Facebook's counting of clicks as billable clicks when in fact there was no click at all from a Facebook user; (c) clicks by Facebook users that fail to open the advertiser's web page but still result in Facebook regarding the click as a billable click; (d) improperly recorded, or unreadable, clicks by Facebook users caused by an invalid proxy server or unknown browser type (indicating that the visitor may be a computer "bot" and not a human); (e) unintentional, multiple clicks from a Facebook user in rapid succession . . .; and (f) . . . clicks that were made in a deliberate effort to drive up the cost of an ad or deplete an advertiser's budget (this type of invalid click is referred to in the industry as "click fraud.").

(FAC ¶ 3.) Plaintiffs seek relief under California's Unfair Competition Law ("UCL"), Cal. Bus. Prof. Code § 17200 *et seq*.; remedies for breach of contract and the implied covenant of good faith and fair dealing; and a judicial declaration of the rights and obligations of the parties under the subject contracts.

## II. DISCUSSION

### A. Legal standard

A complaint may be dismissed for failure to state a claim upon which relief may be granted if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Allegations of material fact must be taken as true and construed in the light most favorable to the nonmoving party. *Cahill v.*

Case5:09-cv-03043-JF Document97 Filed08/25/10 Page5 of 17

*Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1997). However, the Court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001). *See also Twombly*, 550 U.S. at 561 ("a wholly conclusory statement of [a] claim" will not survive a motion to dismiss).

On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)*; N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). However, under the "incorporation by reference" doctrine, the Court also may consider documents which are referenced extensively in the complaint and which are accepted by all parties as authentic. *In re Silicon Graphics, Inc. Sec. Litig*., 183 F.3d 970, 986 (9th Cir. 1999). Leave to amend should be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corr*., 66 F. 3d 245, 248 (9th Cir. 1995).

In assessing whether to grant Plaintiffs another opportunity to amend, the Court considers "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party[,] and futility of the proposed amendment." *Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001) (quoting *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989)). When amendment would be futile, dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

Finally, although their claims arise under state law, Plaintiffs' allegations are subject to the Federal Rules of Civil Procedure. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003)) ("[T]he Federal Rules of Civil Procedure apply in federal court, 'irrespective of the source of the subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal.'"). Specifically, allegations sounding in fraud are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). *See Ciba-Geigy*, 317 F.3d at 1103-04 (if "the claim is said to be 'grounded in fraud' or to 'sound in fraud,' [then] the pleading of that claim as a whole must satisfy the

5

Case No. C 09-3043 JF (HRL)
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT (JFEX1)

particularity requirement of Rule 9(b).”); *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir.1994) (claims based in fraud “must state precisely the time, place, and nature of the misleading statements, misrepresentations, and specific acts of fraud.”).

**B. Breach of contract claims**

Under California law, a *prima facie* claim for breach of contract has four elements: (1) the existence of a contract, (2) the plaintiff's performance or excuse for non-performance, (3) defendant's breach, and (4) damages to the plaintiff from defendant's breach. *Walsh v. West Valley Mission Community College Dist.*, 66 Cal. App. 4th 1532, 1545 (Cal. App. 6th Dist. 1998). Defendant does not dispute the existence or Plaintiffs' performance of the subject contracts. Instead, it contends that Plaintiffs cannot demonstrate that it has breached the contract because the disclaimers shield it from liability for invalid third-party clicks.

**1. Third-party clicks**

Plaintiffs allege that they have been charged improperly for “failed attempts by Facebook users to reach an advertisement because of a glitch in Facebook's website that are improperly counted by Facebook as a billable click; . . . billable clicks when in fact there was no click at all from a Facebook user; . . . clicks by Facebook users that fail to open the advertiser's web page but still result in Facebook regarding the click as a billable click; . . . [and] unintentional, multiple clicks from a Facebook user in rapid succession that Facebook regards as separate, billable clicks but that should be filtered out . . . .” (FAC ¶ 3.) They also claim that they have been charged inappropriately for “improperly recorded, or unreadable, clicks by Facebook users caused by an invalid proxy server or unknown browser type (indicating that the visitor may be a computer “bot” and not a human); . . . and . . . clicks that were made in a deliberate effort to drive up the cost of an ad or deplete an advertiser's budget (this type of invalid click is referred to in the industry as ‘click fraud.’).” (*Id.*)

Consistent with this Court's order dated April 22, 2010, Defendant does not challenge Plaintiffs' allegations with respect to “first-party” clicks, such as the claim that Defendant is charging for clicks “when in fact there was no click at all from a Facebook user.” (FAC ¶ 3; Def.'s Mot. at 8:1-4.) However, citing selectively from the order and the Court's statements at a

case management conference on May 7, 2010, Defendant claims that the Court already has dismissed *any* claims related to clicks that originate from third parties. While the Court in fact has concluded previously that first-party clicks are not subject to the disclaimers because they "arguably need not be fraudulent, improper, or the result of the actions of third parties." (April 22, 2010 order at 7:5-6), this is not the same as saying that all third-party actions are covered by the disclaimers.

At the case management conference on May 7, 2010, the Court observed that "there's a distinction between first-party and third-party invalid clicks that I try to make clear in the order. . . . [W]e are not at a point *yet* where third-party clicks are in play." (Tr. 6:14-17 (emphasis added).) At the same time, the Court noted that the papers in connection with the previous motion to dismiss addressed directly only deficiencies in Defendant's system and third-party *fraud*, and that "[i]f there are other types of third-party actions that aren't fraud and thus not covered by the disclaimer, that is a theory [that] has not been presented." (Tr. 10:23-11:1.) That theory now is presented in the FAC and is addressed by the instant motion.

**2. Contract interpretation**

Under California law, "rational interpretation [of a contract] requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties." *Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.*, 69 Cal. 2d 33, 39-40 (1968). "If the court decides, after considering this evidence, that the language of a contract, in the light of all the circumstances, 'is fairly susceptible of either one of the two interpretations contended for . . .' [citations], extrinsic evidence relevant to prove either of such meanings is admissible." *Id.* Nonetheless, "[t]his rule must be restricted to its stated bounds; it does no more than allow extrinsic evidence of the parties' understanding and intended meaning of the *words used in their written agreement.*" *Brawthen v. H & R Block, Inc.*, 28 Cal. App. 3d 131, 136 (Cal. App. 1st Dist. 1972) (citing *Pacific Gas & E.*, 69 Cal. 2d 33) (emphasis in the original).

**a. The disclaimers are ambiguous**

The AT&Cs contain the following disclaimer:

I [PLAINTIFF] UNDERSTAND THAT THIRD PARTIES MAY GENERATE

> IMPRESSIONS, CLICKS OR OTHER ACTIONS AFFECTING THE COST OF THE ADVERTISING FOR FRAUDULENT OR IMPROPER PURPOSES, AND I ACCEPT THE RISK OF ANY SUCH IMPRESSIONS, CLICKS, OR OTHER ACTIONS. FACEBOOK SHALL HAVE NO RESPONSIBILITY OR LIABILITY TO ME IN CONNECTION WITH ANY THIRD PARTY CLICK FRAUD OR OTHER IMPROPER ACTIONS THAT MAY OCCUR.

(Howitson Decl., Exhs. 1-2.) Defendant disclaims responsibility for (1) "impressions, clicks, or other actions" that are (2) generated by third parties (3) affecting the cost of advertising for fraudulent or improper purposes. The disclaimer does not cover Defendant's own actions, irrespective of their purpose; nor does it cover the actions of third parties if the action is not for fraudulent or improper purposes. Likewise, the disclaimer in the SR&Rs covers only "click fraud or other improper actions that affect the cost of running ads." (Clark Decl. Ex. A.)

Neither the AT&Cs nor the SR&Rs define the terms "fraud" or "improper purpose." The term "fraud" generally is understood to suggest some type of knowing or reckless misrepresentation or concealment of the truth. *See* BLACK'S LAW DICTIONARY (8th ed. 2004) (defining fraud as, among other things, "[a] knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment."). However, as discussed below, neither the AT&Cs nor the SR&Rs define the term "click fraud." Moreover, the parties dispute the meaning of "improper" as used in the disclaimers. Defendant points out that the disclaimers refer to both fraud *and* improper actions. To construe the two terms as equivalent would render the additional words superfluous, a result that generally is disfavored in contract interpretation. Accordingly, Defendant proposes that "improper" clicks should be construed to cover *all* invalid third-party clicks that are not fraudulent, irrespective of the intent of the third-party.

Plaintiffs contend that "improper" implies some type of nefarious intent on the part of the third party. For example, clicks that do not result in the user being directed to the destination link or unintentional, multiple clicks from impatient users are not "fraudulent" in that they do not involve knowing misrepresentations. At the same time, such clicks arguably are not "improper" because they may be the result of a simple mistake. If Plaintiffs's construction is correct, then such third-party clicks may be invalid but nonetheless not covered by the disclaimer. For

Case5:09-cv-03043-JF Document97 Filed08/25/10 Page9 of 17

purposes of a motion pursuant to Fed. R. Civ. P. 12(b)(6), the disclaimer is ambiguous with respect to this issue.

The AT&Cs also state that "I understand that Facebook will determine, in its sole discretion, how to measure the number of impressions, inquiries, conversions, clicks, or other actions taken by third parties in connection with my advertisements, and all charges will be based on such measurements." Nonetheless, because the disclaimer in the AT&Cs focuses specifically on "fraudulent" or "improper" third-party clicks, it is conceivable that the contract as a whole could be read to mean that Defendant's discretion does not extend at least to some types of invalid clicks. Similarly, the SR&Rs provide that "[advertisers] will pay for [their] Orders in accordance with [Defendant's] Payment Terms. The amount you owe will be calculated based on our tracking mechanisms." However, the SR&Rs do not identify such "tracking mechanisms." For purposes of the instant motion, Plaintiffs have alleged adequately that Defendant may have charged for third-party clicks that are neither fraudulent nor improper yet still invalid.

**b. Extrinsic evidence**

Plaintiffs contend that statements in the Help Center are credible evidence of the parties' understanding and the intended meanings of disputed terms, and that such statements should be considered at this preliminary stage. *See Pacific Gas & E.*, 69 Cal. 2d at 39-40. In its order dated April 22, 2010, the Court determined that statements in the Help Center could not be relevant to the intentions of the parties at the time of contracting unless Plaintiffs could allege that the statements existed at the time the contracts were formed and that Plaintiffs were aware of the statements. (April 22, 2010 order at 6:7-10.) Plaintiffs now allege that "[t]he policies and representations [in Defendant's Help Center that are] set forth in [FAC Exhs. B-E] (or materially similar policies and representations) were in existence at the time each of the Plaintiffs contracted with Defendant for advertising services and/or utilized Defendant's advertising services." (FAC ¶¶ 33, 34, 36, 37.) Plaintiffs also allege that "[p]rior to entering into the contract with Facebook, [Plaintiffs] reviewed and relied on the policies, practices and representations set forth on Facebook's website regarding its advertising services and reasonably

9

Case No. C 09-3043 JF (HRL)
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT (JFEX1)

believed that Facebook would only charge for valid clicks, that Facebook had measures in place to guard against invalid clicks, and that Facebook would not charge for invalid clicks." (FAC ¶¶ 55, 65, 76.)

Defendant contends that Plaintiffs have not addressed adequately the Court's previous concerns, arguing that Plaintiffs' allegations with respect to the statements in the Help Center are subject to the heightened pleading requirement of Rule 9(b) and do not meet that requirement. While in general plaintiffs are required to provide only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), claims that "sound in fraud" or are "grounded in fraud" must satisfy the particularity requirements of Fed .R. Civ. P. 9(b), *Ciba-Geigy*, 317 F.3d at 1103-04.

**i. Non-fraudulent third-party clicks**

Plaintiffs allege that they have been charged improperly for "failed attempts by Facebook users to reach an advertisement because of a glitch in Facebook's website that are improperly counted by Facebook as a billable click; . . . clicks by Facebook users that fail to open the advertiser's web page but still result in Facebook regarding the click as a billable click; . . . improperly recorded, or unreadable, clicks by Facebook users caused by an invalid proxy server or unknown browser type (indicating that the visitor may be a computer "bot" and not a human); . . [and] unintentional, multiple clicks from a Facebook user in rapid succession that Facebook regards as separate, billable clicks but that should be filtered out; . . . ." (FAC ¶ 3.) These alleged clicks are not necessarily "fraudulent," because the third-party actor need not act knowingly or recklessly.

Defendant argues that such clicks nonetheless are covered by the disclaimers because they are "improper." Plaintiffs contend that the clicks are not "improper" as defined by the disclaimer, pointing to the following statement in the Help Center: "We have a variety of measures in place to ensure that we only report and charge advertisers for *legitimate* clicks, and not clicks that come from *automated programs, or clicks that may be repetitive, abusive, or otherwise inauthentic*." (FAC Ex. B (emphasis added).) Plaintiffs argue that because Defendant represented that it would not charge for these clicks, such clicks cannot be the "improper" clicks

Case5:09-cv-03043-JF Document97 Filed08/25/10 Page11 of 17

as to which Defendant disclaimed liability. Defendant also represented in the Help Center that "[i]f your ads are bid on a CPC basis, you will be charged when *users* click on your ads *and visit your website*." (FAC Ex. C (emphasis added).) Plaintiffs assert that because Defendant represented that it would charge only for clicks by "users" and not for clicks that do not result in a visit to the destination website, a click may be invalid without being "improper."

Defendant contends that the Court may not consider the alleged representations in the Help Center, even at this preliminary stage, because Plaintiffs do not plead with Rule 9 specificity that the statements existed at the time of contracting or that Plaintiffs reviewed the statements. However, Plaintiffs' claims with respect to non-fraudulent clicks by definition are not grounded in fraud, and the representations in the Help Center are relevant to the proper interpretation of the terms of the contract. As discussed previously, Plaintiffs now allege that the statements in the Help Center existed at or around the time of contracting and that they reviewed the policies that did exist at that time. They also argue that the statements actually are part of the contracts, pointing to the statement in the AT&Cs that "[t]hese terms and conditions, the Advertising Guidelines *and other applicable Facebook policies*, and the terms of any applicable advertising order submitted through the site constitute the entire and exclusive agreement between the parties with respect to any advertising order I place . . . ." (Howitson Decl. Exhs. 1-2 (emphasis added).)[4] These allegations are adequate to survive a motion pursuant to Rule 12(b)(6).

The Court finds and concludes that the term "improper" is fairly susceptible to either of the two interpretations offered by the parties. In light of the statements in the Help Center, there is a plausible argument that some or all non-fraudulent but otherwise invalid third-party clicks are not "improper" within the meaning of the disclaimers

**ii. Fraudulent third-party clicks**

Plaintiffs also claim that they have been charged inappropriately for "clicks that were

---

[4] The Court notes, however, that the SR&Rs provide that "[t]his statement makes up the entire agreement between the parties regarding Facebook, and supersedes any prior agreements." (Clark Decl. Ex. A.)

11

Case No. C 09-3043 JF (HRL)
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT (JFEX1)

made in a deliberate effort to drive up the cost of an ad or deplete an advertiser's budget (this type of invalid click is referred to in the industry as 'click fraud.')." (FAC ¶ 3.) The disclaimers in all of the relevant agreements state explicitly that Defendant cannot be liable for "click fraud." Plaintiffs again point to Defendant's statement in the Help Center that "[w]e [Defendant] have a variety of measures in place to ensure that we only report and charge advertisers for *legitimate* clicks, and not clicks that come from automated programs, or *clicks that may be repetitive, abusive, or otherwise inauthentic*." (FAC Ex. B (emphasis added).) Though this aspect of their claim expressly is directed at "click *fraud*," Plaintiffs do not allege that Defendant has engaged in any knowing or reckless misrepresentation or concealment of the truth. Instead, they claim that Defendant has breached the contract by *charging* for "fraud" committed by third parties. However, even applying the more lenient pleading standard of Rule 8, it is difficult to see how Plaintiffs' allegation of "click fraud" can survive disclaimers that state unambiguously that Defendant will not be liable for "click fraud." Accordingly, this portion of Plaintiff's claim will be dismissed.

**D. UCL claims**

The UCL prohibits any "unlawful, unfair or fraudulent business practices." Cal. Bus. & Prof. Code § 17200, *see also Cel-Tech Commc'ns, Inc. v Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Because the statute is written in the disjunctive, it applies separately to business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. *See Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003). Plaintiffs contend that Defendant's conduct has violated all three prongs.

**1. Unlawful business practices**

"By proscribing 'any unlawful' business practice, [the UCL] 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech*, 20 Cal. 4th at 180. In its order of April 22, 2010, the Court determined that an allegation of a systematic breach of contract was sufficient to state a claim for unlawful business practices. However, this allegation is better analyzed under the "unfairness" prong of the UCL. *See Smith v. Wells Fargo Bank, N.A.*, 135 Cal. App. 4th 1463, 1483 (Cal. App. 4th

Dist. 2005) (citing a series of California appellate court decisions and concluding that "it appears that a systematic breach of certain types of contracts (e.g., breaches of standard consumer or producer contracts involved in a class action) can constitute an *unfair* business practice under the UCL." (emphasis added)). Other than breach of contract, Plaintiffs do not allege another possible predicate for a claim of unlawful conduct under the UCL.

**2. Fraudulent business practices**

In addition to the "click fraud" alleged in their breach of contract claim, Plaintiffs allege in connection with their claim under the UCL's fraud prong that Defendant itself is responsible for some type of "fraudulent" activity. While fraudulent business practices in violation of the UCL are not identical to common law fraud, *Daugherty v. American Honda Motor Co.*, Inc., 144 Cal. App. 4th 824, 838 (Cal. App. 2d Dist. 2006), allegations that are "grounded in fraud" or "sound in fraud" still are subject to the heightened pleading requirement of Rule 9(b). *Ciba-Geigy*, 317 F.3d at 1104. In the context of Rule 9(b), a plaintiff must include a description of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). The purpose of Rule 9(b) is to require a plaintiff to be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* at 764 (internal quotation and citation omitted). However, in the context of a fraudulent omission claim, a plaintiff cannot plead a specific time or place of a failure to act. *Washington v. Baenziger*, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987). Accordingly, a plaintiff may plead fraud in alternative ways. *Id.*

California law also requires Plaintiffs to plead actual reliance in connection with this claim. Subsequent to Proposition 64, approved at a general election on November 2, 2004, a private plaintiff has standing to sue "only if he or she 'has suffered injury in fact and has lost money or property as a result of such unfair competition.'" *In re Tobacco II Cases*, 46 Cal. 4th 298, 314 (2009). The California Supreme Court concluded that the "language ['as a result of'] imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action

under the UCL's fraud prong." *Id.* at 326. This requirement extends to claims both of misrepresentations and fraudulent omissions. "Reliance is 'an essential element of … fraud … . [R]eliance is proved by showing that the defendant's misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's injury-producing conduct.'" *Id.* at 326 (citing *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1110-1111 (1993) (Kennard, J., concurring and dissenting)).

**a. Misrepresentations**

Plaintiffs contend that Defendant made certain misrepresentations, including "[r]epresenting that advertisers are billed based on the number of actual and valid clicks, yet charging . . . for invalid clicks; . . . [and] [r]epresenting that Defendant has adequate measures in place to ensure that it only reports and charges advertisers for valid clicks, when it does not . . . ." (FAC ¶¶ 93, 100.) "'A plaintiff may establish that the defendant's misrepresentation is an 'immediate cause' of the plaintiff's conduct by showing that in its absence the plaintiff 'in all reasonable probability' would not have engaged in the injury-producing conduct.'" *In re Tobacco II Cases*, 46 Cal. 4th at 326 (citing *Mirkin*, 5 Cal. 4th at 1110-1111). The only sources of misrepresentations identified in the FAC are the statements in Defendant's Help Center.

While Plaintiffs' pleadings with respect to the existence of the statements in the Help Center are adequate for purposes of their breach of contract claims, their claims under the fraud prong of the UCL must meet the heightened standards of Rule 9(b). Plaintiffs allege that the statements in the Help Center "(or materially similar policies and representations) were in existence at the time each of the Plaintiffs contracted with Defendant for advertising services and/or utilized Defendant's advertising services." (FAC ¶¶ 33, 34, 36, 37.) This allegation is insufficiently specific: if accepted as true, it demonstrates only that the statements existed at the time of contracting *or* at some point during the performance of the contracts. The timing of the statements is critical, as Plaintiffs cannot establish reliance on these statements if the statements did not exist at the time of the contracting. Nor do Plaintiffs provide sufficient information with respect to the contents of the statements, as it is not clear what would constitute "materially similar policies and representations."

///

Case5:09-cv-03043-JF Document97 Filed08/25/10 Page15 of 17

**b. Omissions**

Plaintiffs also contend that Defendant made certain omissions, such as "[f]ailing to disclose or adequately disclose that it charges . . . for invalid clicks; [and] [f]ailing to disclose or adequately disclose that it does not have adequate measures in place to ensure that it only reports and charges advertisers for invalid clicks . . . ." (*Id.*) To demonstrate reliance on an omission, "[o]ne need only prove that, had the omitted information been disclosed, one would have been aware of it and behaved differently." *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993). Plaintiffs allege that before contracting with Defendant, they "reviewed and relied on the policies, practices and representations set forth on Facebook's website regarding its advertising services . . . ." (FAC ¶¶ 54, 65, 76.) This allegation again is insufficient for purposes of Rule 9(b). The Court recognizes the difficulty in pleading a specific time and place of a failure to act, *see Baenziger*, 673 F. Supp. at 1482, but Plaintiffs still should be able to identify with particularity at least the specific policies and representations that they reviewed.

**3. Unfair business practices**

Plaintiffs do not distinguish their allegations of unfair business practices from their allegations of unlawful or fraudulent business practices. As discussed above, they allege generally that Defendant violated the UCL by:

a) Representing that advertisers are billed based on the number of actual and valid clicks, yet charging . . . for invalid clicks;

b) Representing that Defendant has adequate measures in place to ensure that it only reports and charges advertisers for valid clicks, when it does not;

c) Failing to disclose or adequately disclose that it charges . . . for invalid clicks;

d) Failing to disclose or adequately disclose that it does not have adequate measure in place to ensure that it only reports and charges advertisers for valid clicks; and

e) Failing to implement adequate measures to protect advertisers against charges for invalid clicks.

(FAC ¶¶ 93, 100.) California courts have extended the reliance requirement of *Tobacco II* at least to some claims for unlawful conduct under the UCL. *See Hale v. Sharp Healthcare*, 183 Cal. App. 4th 1373, 1385 (2010). The California Court of Appeal noted in *Hale* that *Tobacco II* "emphasize[d] that our discussion of causation in this case is limited to such cases where . . . a

15

Case No. C 09-3043 JF (HRL)
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT
(JFEX1)

UCL action is based on a *fraud theory involving false advertising and misrepresentations to consumers*." *Id.* (quoting *Tobacco II*, 46 Cal. 4th at 325, n.17) (emphasis in the original). The court held that if the "basic allegation" is one of misrepresentation, a claim under the unlawful prong of the UCL also must satisfy the reliance requirement. *Id.* Because Plaintiffs' allegations (a) through (d) are premised on a fraud theory involving misrepresentations and omissions, they must allege reliance, irrespective of whether the claims are asserted under the fraud prong or the unfair prong of the UCL. As discussed above, Plaintiffs' current allegations of misrepresentations and omissions are insufficiently specific.

Allegation (e) is not necessarily based on allegations of misrepresentations or omissions. Plaintiffs' allege that Defendant has failed to implement adequate measures to protect advertisers from charges both for fraudulent third-party clicks and for non-fraudulent invalid third-party clicks. California courts define an unfair business practice as one that 1) causes substantial injury, 2) is not outweighed by any countervailing benefits to consumers or competition, and 3) causes an injury that consumers themselves could not reasonably have avoided. *See Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581, 584 (Cal. App. 2d Dist. 2009) (applying the unfairness test from 15 U.S.C. § 45(n) as applied by *Camacho v. Automobile Club of Southern California*, 142 Cal. App. 4th 1394, 1405 (Cal. App. 2d Dist. 2006)). Plaintiffs, on behalf of the putative class, allege sufficiently that they have been substantially injured because "[a]n injury may be sufficiently substantial . . . if it does a small harm to a large number of people." *American Financial Services Asso. v. FTC*, 767 F.2d 957, 972 (D.C. Cir. 1985) (discussing substantial injury under 15 U.S.C. § 45(n)). They claim that Defendant easily could provide safeguards to prevent billing for invalid and fraudulent clicks, (FAC ¶ 10), and that the detriments of the subject practice are not outweighed by the countervailing benefits.

Ultimately, this claim mirrors Plaintiffs' breach of contract claim. Plaintiffs allege sufficiently that they reasonably could not have avoided the claimed injury because of ambiguities in the contract as to the nature of"improper" clicks.[5] Rather than being premised on

[5] Plaintiffs do not allege sufficiently that they could not have avoided the claimed injury related to charges for "click fraud," as the disclaimers in the agreement state unambiguously that

allegations of fraud or misrepresentations, the claim boils down to a dispute over contractual interpretation, and accordingly it not subject to the pleading standards of Rule 9(b) or the reliance requirements of *Tobacco II*. As discussed above, a systematic breach of contract may be an unfair business practice. *See Smith*, 135 Cal. App. 4th at 1483.

**IV. DISPOSITION**

The motion to dismiss is granted with respect to Plaintiffs' breach of contract claim based upon click fraud, claims under the unfair prong of the UCL based upon click fraud, and claims under the unlawful and fraudulent prongs of the UCL. The motion otherwise will be denied. Leave to amend is granted,[6] any amended complaint shall be filed within thirty (30) days of the date of this order.

IT IS SO ORDERED.

DATED: 8/25/10

JEREMY FOGEL
United States District Judge

---

Defendant cannot be liable for "click fraud."

[6] In light of the time the instant case has been pending and the Court's effort to provide Plaintiff with detailed guidance both in its order of April 22, 2010 and in this order, it is unlikely that further leave to amend would be granted. *See Lee*, 245 F.3d at 1052.