# EXHIBIT A

1

2   DRAFT – FOR DISCUSSION PURPOSES ONLY

3

4   Jonathan Shub (SBN 237708)
    jshub@shublaw.com
5   **SHUBLAW LLC**
6   1818 Market Street, 13th Floor
    Philadelphia, PA 19102
7   Telephone: (610) 453-6551
    Facsimile: (215) 569-1606
8

9   Rosemary M. Rivas (SBN 209147)          J. Paul Gignac (SBN 125676)
    rrivas@finkelsteinthompson.com          j.paul@aogllp.com
10  **FINKELSTEIN THOMPSON LLP**            **ARIAS OZZELLO & GIGNAC LLP**
    100 Bush Street, Suite 1450             4050 Calle Real, Suite 130
11  San Francisco, California 94104         Santa Barbara, California 93110
    Telephone: (415) 398-8700               Telephone: (805) 683-7400
12  Facsimile: (415) 398-8704               Facsimile:  (805) 683-7401

13  *Interim Co-Lead Class Counsel*         *Interim Liaison Class Counsel*

14

15              UNITED STATES DISTRICT COURT

16      NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

17                                    Master Case No. C 09-03043 JF

18

19                                    **Order re Electronic Discovery**
      In re FACEBOOK PPC Advertising Litigation
20

21

22

23  It is hereby ORDERED:

24         The following protocol shall apply to the production of documents.   Nothing in the

25  procedures set forth below shall alter the parties' obligations to preserve evidence in this litigation:

26  I.   **General**.

27

A. **Simple Documents.** All emails (and attachments), calendars, tasks, notes, word processing documents and presentations ("Simple Documents") existing in native format shall be produced in electronic image form in the manner provided herein. Simple Documents that present imaging or formatting problems shall be promptly identified; the parties shall meet and confer to attempt to resolve the problems.

B. **Complex Documents.** All spreadsheets, databases and/or electronic files created in other dynamic data systems ("Complex Documents") existing in native format shall be produced in native format.   Complex Documents that present formatting or other problems shall be promptly identified; the parties shall meet and confer to attempt to resolve the problems.

C. **Hard Copy Documents.**  All documents that do not exist in native format ("Hard Copy Document") will be produced in electronic image form in the manner provided herein.  Hard Copy Documents that present imaging or formatting problems shall be identified; the parties shall meet and confer to resolve the problems.

## II. Simple Documents

A. **Document Image Format**. All Simple Documents shall be saved electronically (or "printed") in a Group 4 compression single-page "TIFF" image that reflects how the source document would have appeared if printed out to a printer attached to a computer viewing the file. These images should also be "OCR'd" so that they are fully searchable. The parties shall produce a "load file" to accompany the images, which load file shall facilitate the use of the produced images by a document management or litigation support database system, preferably Summation. The parties shall meet and confer to the extent reasonably necessary to facilitate the import and use of the produced materials with commercially available document management or litigation support software.

B. **Document Unitization**. Each page of a document shall be electronically saved into an image. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original when creating the image file.

C. **Bates Numbering**. Each page of a produced document shall have a legible, unique page identifier ("Bates Number") electronically branded onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document. In order to ensure that the Bates Numbers do not obscure portions of the documents, the images may be proportionally reduced to create a larger margin in which the Bates Number may be branded. There shall be no other legend or stamp placed on the document image.

D. **File Naming Conventions**. Each document image file shall be named with the unique Bates Number of the page of the document in the case of single-page TIFFs, followed by the

ORDER RE PRODUCTION OF DOCUMENTS
CV 09-03043

extension "TIF".   Each document shall be named with a unique document identifier.
Attachments shall have their own unique document identifiers.

E.  **Production Media.**  The parties shall produce documents on CD-ROM, DVD, external hard
drive (with standard PC compatible interface), or such other readily accessible computer or
electronic media as the parties may hereafter agree upon (the "Production Media").   Each
piece of Production Media shall identify a production number corresponding to the
production "wave" the documents on the Production Media are associated with (e.g., "V001",
"V002"), as well as the volume of the material in that production wave (*e.g.*, "-001", "-002").
For example, if the first production wave by the parties comprise document images on three
hard drives, the parties shall label each hard drive in the following manner:   "V001-001",
"V001-002", "V001-003".   Additional information that shall be identified on the physical
Production Media shall include:   (1) text referencing that it was produced in [Case Docket
No.], (2) the producing party's name, (3) the production date, and (4) the Bates Number
range of the materials contained on the Production Media.

F.  **Extracted Meta Data**.   To the extent that the parties seek metadata associated with
documents produced, the parties shall meet and confer to discuss the potential production of
metadata on a case by case basis.

G.  **Electronic Text Files.**   To the extent a document has Extracted Text, the parties shall
produce text files for produced documents reflecting the full text that has been electronically
extracted from the original, native electronic files ("Extracted Text").   The Extracted Text
shall be provided in ASCII text format and shall be labeled and produced on Production
Media in accordance with the provisions of paragraph E.   The text files will be named with

the unique Bates Number of the first page of the corresponding document followed by the extension ".txt".

H. **Original Documents**.   The parties shall retain the original native electronic source documents for all documents produced in accordance with this Order in a manner so as to preserve the "metadata" associated with these electronic materials in the event further review of such metadata becomes necessary.   The parties agree to meet and confer with regard to any request that the parties produce copies of native electronic source documents.

## III. Complex Documents

A. **Native Format.**   All Complex Documents shall be produced in native format.   Such files must be produced with all functions and formulae unlocked.

B. **Software Compatability.** The parties shall meet and confer to determine what software is necessary to open and utilize Complex Documents.   The parties will provide access to such necessary software.

C. **Bates Numbering, File Naming Convention, Production Media.**   Complex Documents will be numbered and produced in the same manner as described above for Simple Documents to the extent possible.   If certain Complex Documents are not easily Bates-numbered, the parties shall meet and confer to discuss alternative methods for tracking or labeling produced documents.

ORDER RE PRODUCTION OF DOCUMENTS
CV 09-03043

**IV. Hard Copy Documents**

    **A.** **Document Image Format.** Hard Copy Documents shall be scanned and saved electronically (or "printed") in a Group 4 compression single-page "TIFF" image that reflects how the source document would have appeared if printed out to a printer attached to a computer viewing the file. In all other respects, production of Hard Copy Documents shall mirror production of Simple Documents.

    **B.** **Duplication.** If Hard Copy Documents also exist electronically, duplicate TIF images need not be produced. If hand-written notes, stamps, or other markings exist on the Hard Copy version of a document that also exists electronically, such documents are not duplicative and must be produced in addition to the electronic copy.

Dated: _____

_____

U.S.D.J.

ORDER RE PRODUCTION OF DOCUMENTS
CV 09-03043

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

ORDER RE PRODUCTION OF DOCUMENTS
CV 09-03043

# EXHIBIT B

Jonathan Shub (SBN 237708)
jshub@shublaw.com
**SHUBLAW LLC**
1818 Market Street, 13th Floor
Philadelphia, PA 19102
Telephone: (610) 453-6551
Facsimile: (215) 569-1606

Rosemary M. Rivas (SBN 209147)
rrivas@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
100 Bush Street, Suite 1450
San Francisco, California 94104
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

*Interim Co-Lead Class Counsel*

J. Paul Gignac (SBN 125676)
j.paul@aogllp.com
**ARIAS OZZELLO & GIGNAC LLP**
4050 Calle Real, Suite 130
Santa Barbara, California 93110
Telephone: (805) 683-7400
Facsimile:  (805) 683-7401

*Interim Liaison Class Counsel*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE FACEBOOK CPC ADVERTISING LITIGATION** <br><br> **This Document Relates To:** <br>     **All Actions.** | Master File No.  C 09-03043 JF <br><br> **PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANT FACEBOOK, INC.** <br><br><br><br> Judge:  Honorable Jeremy Fogel |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Northern District of California, Plaintiffs propound the following Requests for Production of Documents upon Defendant Facebook, Inc.  Plaintiffs request that Defendant respond in writing to the following Requests and produce or make available for inspection and copying the documents requested, within thirty (30) days at the offices of Finkelstein Thompson LLP, 100 Bush Street, Suite 1450, San Francisco, California,

94104.

**INSTRUCTIONS**

1.      Unless otherwise indicated, the time period covered by these Document Requests is January 2007 through the present, including, but not limited to, documents created after the commencement of this action or after service of these Document Requests.

2.      These Document Requests shall be deemed continuing in nature so as to require prompt and supplemental production and/or responses if additional documents and/or things are obtained or discovered between the time of initial production or response and the time of hearing or trial.  Such supplemental production and/or responses are to be served upon Plaintiffs within thirty (30) days after the discovery of additional documents and/or things.

3.      You must furnish all responsive documents or things in your possession, custody or control, or which are otherwise available to you, regardless of whether such documents are possessed by you or your employees, agents, parent companies, subsidiaries, affiliates, investigators, predecessors, successors, representatives, or by your attorneys or their employees or investigators.

4.      You shall produce any and all drafts and copies of each document that are responsive to any Document Request, and all copies of such documents that are not identical in every respect, including but not limited to copies containing handwritten notes, markings, stamps, or interlineations.

5.      Pursuant to Fed. R. Civ. P. 34(b), you must produce the documents requested as they are kept in the ordinary course of business or must organize and label them to correspond with each document request to which they are submitted as being responsive.  If the requested documents are maintained in a paper file, you must also produce the file folder, folder tab or container, together with all labels and notations.  Documents attached to each other should not be

PLAINTIFFS' DOCUMENT REQUESTS
DIRECTED TO FACEBOOK, INC.

separated.  If any portion of a document is responsive to any Document Request, then the entire

document must be produced.  In addition, specifically identify the location and custodian of each

document produced by means of an index of production numbers.

6.     ESI shall be produced in a form agreed to by the parties in an ESI Protocol.

7.     In the event any document or thing called for by these Document Requests is to be

withheld on the basis of a claim of privilege, Defendant must identify the nature of the privilege

(including work product) which is being claimed and/or the privilege rule being invoked, and for

each document withheld, Defendant must provide the following information:

a.     the type of document;

b.     the subject matter of the document;

c.     the date of the document;

d.     the author(s), addressee(s), and recipient(s) of the document, and, where

not apparent, the relationship of the author(s), addressee(s) and recipient(s) to one another;

e.     the number of pages; and

f.     the identification of any enclosure or attachment.

8.     Production is sought regardless of whether the document purportedly was

"deleted," if such document is capable of being retrieved or restored.

9.     In the event that any document or thing called for by these Document Requests has

been destroyed or discarded, and is incapable of being retrieved or restored, that document is to

be identified by indicating the information set forth in subparagraphs a through f of paragraph 7

and the following:  the persons to whom the document was distributed, shown or explained; the

date that the document was destroyed or discarded and the reason therefor; and the person(s)

authorizing and carrying out the destruction or discarding.

10.     If an objection is made to any of these Document Requests, the response shall state whether documents or information are being withheld from inspection and production on the basis of such objection, or whether inspection and production of the responsive documentation or information will occur notwithstanding such objection.

11.     If any Document Request is objected to on grounds of over-breadth, specifically state the manner in which it is overly broad and respond to the Document Request as narrowed to conform to such objection.  If you cannot respond fully, or if you object in part, to any of these Requests, you are nevertheless required to respond to the remaining portions to the extent that you are capable of doing so.

12.     Special instructions against spoliation of evidence:  Demand is hereby made that you take all steps as may be necessary to preserve all documents, records, data, files and items, that may be relevant to this litigation, including, without limitation, documents, records, data and files kept by electronic, electromagnetic, photographic, digital or mechanical means, whether or not contained in current, backup or archival files of personal computers and networks or on hard drives, diskettes, CD-ROM disks, magnetic tapes, back-up tapes, or Zip and Jazz cartridges.  You must cease and desist from overwriting existing data, reusing backup tapes, or running data compression or defragmentation routines or "shredder programs" on any such documents, records, data or files before ensuring full compliance with the Document Requests made herein so as to prevent the inadvertent alteration or deletion of such documents, records, data and files.

## DEFINITIONS

1.     "Defendant," "you," and "your," means Defendant Facebook, Inc., any of its subsidiaries, divisions, subdivisions, affiliates, predecessors, sister corporations, employees, officers, directors, agents, consultants and like entities or individuals.

2.     "Defendant's website," "your website" or "Facebook website" shall mean

-4-                    PLAINTIFFS' DOCUMENT REQUESTS
                       DIRECTED TO FACEBOOK, INC.

1   www.facebook.com.

2      3.      The terms "and" and "or" shall be construed either disjunctively or conjunctively

3   as necessary to bring within the scope of the Document Request all responses that might

4   otherwise be construed as outside of its scope.

5      4.      As used herein, the word "any" shall include the collective as well as the singular

6   and shall mean "each," "all," and "every" and such terms shall be interchangeable.

7

8      5.      As used herein, "communication" shall mean any contact, whether written, oral or

9   otherwise, made between two or more persons, regardless of whether such contact is or was ever

10  rendered or recorded as a document.

11     6.      "Document" shall have the broadest possible meaning accorded to it under Rule 34

12  of the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document

13  within the meaning of this term.  The term includes any electronic, handwritten, typewritten,

14  printed, emailed, typed, photostatic, photographic, dictated or recorded document, including, but,

15

16  not limited to correspondence, emails, memoranda, notes, tapes, publications, surveys, analyses,

17  designs, diagrams, blueprints, charts, diaries, calendars, appointment books, projections,

18  testimony, evidence, affidavits, statements, tax returns, summaries, pamphlets, books, notebooks,

19  prospectuses, interoffice communications, offers, notations of or relating to any sort of

20  conversations or other communications (including but not limited to telephone conversations,

21  emails, videoconferences or meetings), bulletins, computer printouts, teletypes, telefaxes,

22

23  invoices, worksheets, and all drafts, alterations, modifications, changes or amendments of the

24  foregoing, graphic, or manual records or representations of any kind, which are in the possession,

25  custody or control of Defendant and/or its agents, consultants, insurers or attorneys.

26     7.      As used herein, "person" or "persons" shall mean all natural persons, corporations,

27  partnerships, or other business associations, governmental departments or agencies and all other

28

-5-

legal entities.

8.     As used herein, "relate to," "relating to," or "concerning" any given subject means any document or documents that comprise, constitute, contain, embody, evidence, identify, reflect, state, refer to, deal with or are in any way pertinent to that subject, including but not limited to, documents concerning the preparation of other documents.

9.     A "bot" shall mean a software robot or program that runs autonomously and/or automatically and simulates human activity by, for example, clicking or simulating clicks on advertising links.

10.     As used herein, a "billable click" is a click for which Defendant charges customers a fee.

11.     As used herein, a "non-billable click" is a click for which Defendant does not charge customers a fee.

12.     An "invalid click" shall mean any click that is not the result of a user clicking through to the advertiser's landing page.  Invalid clicks include, but are not limited to, clicks that are the result of  (a) technical problems which result in the counting of clicks that do not increase the probability of conversion (for example, those resulting from system implementation errors, incomplete clicks, improperly recorded or unreadable clicks, etc.); (b) mistaken, unintentional, inadvertent and/or double-clicks by visitors to www.facebook.com; (c) deliberate efforts to sabotage an advertiser which improperly result in the counting of and billing that advertiser for a click on a cost-per-click basis, where there is no possibility for a conversion, effectuated either through human or technological means, including various types of deceptive software programs, such as scripts or bots; and (d) phantom clicks.

13.     "Click fraud" shall mean the subset of invalid clicks resulting from a competitor clicking on an advertiser's ad in order to drive up the cost of the ad or deplete a competitor's

1  budget for placing ads.

2      14.   As used herein, "conversion" shall mean a visitor's taking action to purchase

3  goods or services on a customer's website.

4      15.   As used herein, "customer" shall mean a person (as defined herein) who contracted

5  with Defendant to pay Defendant a fee each time a visitor to Defendant's website,

6  www.facebook.com, clicked on the customer's advertisement which was placed on Defendant's

7

8  website.

9      16.   As used herein, "visitor" shall mean a person who visits/views Defendant's

10 Facebook website.

11     17.   "CPC" refers to "cost per click."  If an ad is bid on a CPC basis, the advertiser is

12 charged when users click on the ad and visit the advertiser's website.

13

14     18.   "CPC advertising" shall mean advertising on a cost-per-click basis.

15                          **DOCUMENT REQUESTS**

16 **Document Request No. 1:**

17     Please produce documents sufficient to identify the number of CPC advertising customers

18 that contracted with you per month for CPC advertising placement on your website.

19 **Document Request No. 2:**

20     Please produce all versions of any form contracts used by You on your website that set

21 forth the terms and conditions pursuant to which customers purchase CPC advertising, and

22 documents sufficient to identify the date on which each version was implemented.

23 **Document Request No. 3:**

24     Please produce all versions of the web pages which are accessible on the Facebook

25 website under the following headings, categories and/or names:  "Help Center," "Glossary of Ad

26 Terms," "terms and conditions," "terms of use," "Statement of Rights and Responsibilities,"

27 "Advertising Guidelines," "Ad Manager," and "Advertising Help," and documents sufficient to

28

identify the date on which each version was implemented.

**Document Request No. 4:**

Please produce all versions of the web pages from your website which make a representation about the terms "click" or "clicks" (including but not limited to legitimate clicks, valid clicks, illegitimate clicks, invalid clicks, fraudulent clicks, click fraud, accidental clicks, unintentional clicks, clicks made for improper purposes, click quality, cost per click, price per click), "user" or "users," and documents sufficient to identify the date on which each page was implemented and/or accessible.

**Document Request No. 5:**

Please produce all versions of the web pages from your website which are accessible to a customer placing a CPC advertising order (including all pages comprising the order form or the advertising order), and documents sufficient to identify the date on which each version was implemented.

**Document Request No. 6:**

Please produce organizational charts or other personnel records sufficient to identify your personnel responsible for interacting with actual or prospective CPC advertisers.

**Document Request No. 7:**

Please produce organizational charts or other personnel records sufficient to identify your personnel responsible for determining and/or implementing policies relating to billing for CPC advertising placement.

**Document Request No. 8:**

Please produce organizational charts or other personnel records sufficient to identify your personnel responsible for tracking clicks on customers' advertisements, including those responsible for identifying invalid clicks and for creating, implementing and revising the filtering systems.

**Document Request No. 9:**

Please produce organizational charts or other personnel records sufficient to identify your

Master File No.  C 09-03043 JF

PLAINTIFFS' DOCUMENT REQUESTS
DIRECTED TO FACEBOOK, INC.

personnel responsible for responding to complaints from CPC advertising customers about being charged for invalid clicks.

**Document Request No. 10:**

Please produce all documents sufficient to indicate the revenue and profit you generated from CPC advertising placement.

**Document Request No. 11:**

Please produce all versions of marketing or promotional materials you provided or made available to actual or prospective customers related to CPC advertising placement and date(s) on which the materials were provided or made available.

**Document Request No. 12:**

Please produce all internal communications that relate or refer to the charging for CPC advertising on your website.

**Document Request No. 13:**

Please produce all documents that relate or refer to your systems that are designed to detect invalid clicks.

**Document Request No. 14:**

Please produce all documents that relate or refer to your systems designed to pre-filter invalid clicks, *i.e.*, to remove invalid clicks before they are even seen by the filters, *e.g.*, test clicks generated by your personnel for testing purposes and clicks improperly recorded in the log files whose records have some technical problems resulting in the clicks being unreadable or meaningless.

**Document Request No. 15:**

Please produce all documents that relate or refer to your systems designed to online filter invalid clicks, including, but not limited to those which are anomaly-based (*e.g.*, if normal average clicking on a given advertisement or by a given visitor is 10 times per week and then, in a given week there are 100 clicks on that advertisement or 100 clicks by that visitor), and those which are rule-based (e.g., if a double-click on a given advertisement, with the second click being

Master File No.  C 09-03043 JF

PLAINTIFFS' DOCUMENT REQUESTS
DIRECTED TO FACEBOOK, INC.

within $x$ seconds of the first click, then, the second click is deemed invalid).

**Document Request No. 16:**

Please produce all documents that relate or refer to your systems designed to post-filter invalid clicks offline, including both automated monitoring and manual inspection stages.

**Document Request No. 17:**

Please produce all documents that relate or refer to revisions to filter parameters, introductions of new filters or conditions to filters and the removal of old underperforming filters.

**Document Request No. 18:**

Please produce all documents that relate or refer to the performance of the filters, *i.e.*, the number or percentage of clicks that the filters categorize as invalid and/or non-billable to customers.

**Document Request No. 19:**

Please produce all documents that relate or refer to your systems used to track clicks for purposes of charging your CPC customers.

**Document Request No. 20:**

Please produce all documents that relate or refer to your systems used to track the number of clicks from a single source on a given customer's advertisement.

**Document Request No. 21:**

Please produce all documents that relate or refer to your systems used to track post-click data, *i.e.*, data about conversion actions on your customers' websites, including but not limited to whether visitors visited certain pages on the advertisers' website that the advertiser marked as conversion pages.

**Document Request No. 22:**

Please produce all documents sufficient to identify on a monthly aggregate basis the number of billable clicks on advertisers' ads.

**Document Request No. 23:**

Please produce all documents sufficient to identify on a monthly aggregate basis the

Master File No.  C 09-03043 JF

PLAINTIFFS' DOCUMENT REQUESTS
DIRECTED TO FACEBOOK, INC.

number of non-billable clicks on advertisers' ads.

**Document Request No. 24:**

Please produce all documents that relate or refer to any communications, or notification of any kind, that you received from CPC advertising customers, potential customers and/or visitors regarding charges for invalid clicks of any kind.

**Document Request No. 25:**

Please produce all documents that relate or refer to any communications with outside media sources regarding reports of CPC advertising customers being charged for invalid clicks by Facebook for CPC advertising.

**Document Request No. 26:**

Please produce all documents that you provide to CPC advertising customers and/or potential customers to assist them in selecting a daily or weekly budget for the maximum they are willing to spend per day/week for advertisement placements.

**Document Request No. 27:**

Please produce all documents that you provide to CPC advertising customers and/or potential customers to assist them in selecting a "Maximum Bid" for each click that they are willing to spend.

**Document Request No. 28:**

Please produce all documents that relate or refer to the methodology you use to determine which customer's advertisement will run at a given time among a pool of advertisers competing for advertising placements on Facebook pages.

**Document Request No. 29:**

Please produce all documents that relate or refer to credits or refunds issued to CPC Advertising customers relating to invalid clicks, whether on a customer by customer basis or in terms of any tracking and/or monitoring systems or reports.

**Document Request No. 30:**

Please produce all documents relating or referring to Plaintiff RootZoo.

Master File No.  C 09-03043 JF

PLAINTIFFS' DOCUMENT REQUESTS
DIRECTED TO FACEBOOK, INC.

**Document Request No. 31:**

Please produce all documents relating or referring to Plaintiff Price.

**Document Request No. 32:**

Please produce all documents relating or referring to Plaintiff Smith.

**Document Request No. 33:**

Please produce all documents sufficient to identify any legal proceedings in any venue commenced against Facebook related to a dispute regarding billing for CPC advertising.

DATED: February 18, 2010

By: _Rosemary M. Rivas_

Jonathan Shub
**SHUBLAW LLC**
1818 Market Street, 13th Floor
Philadelphia, PA 19102
Telephone: (610) 453-6551
Facsimile: (215) 569-1606

Rosemary M. Rivas
**FINKELSTEIN THOMPSON LLP**
100 Bush Street, Suite 1450
San Francisco, CA 94104
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

Mila F. Bartos
Stan Doerrer
**FINKELSTEIN THOMPSON LLP**
1050 30th Street, N.W.
Washington, D.C. 20007
Telephone: (202) 337-8000
Facsimile: (202) 337-8090

*Interim Co-Lead Class Counsel*

J. Paul Gignac
**ARIAS OZZELLO & GIGNAC LLP**
4050 Calle Real, Suite 130
Santa Barbara, California 93110-3413
Telephone: (805) 683-7400
Facsimile: (805) 683-7410

Master File No.  C 09-03043 JF

-12-

PLAINTIFFS' DOCUMENT REQUESTS
DIRECTED TO FACEBOOK, INC.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Interim Liaison Counsel*

TerriAnne Benedetto
**SEEGER WEISS LLP**
1515 Market Street, Suite 1380
Philadelphia, PA 19102
Telephone: (215) 564-2300

Steven Berk
**BERK LAW PLCC**
1225 15th Street, NW
Washington, D.C. 20005
Telephone: (202) 232-7500
Facsimilie: (202) 232-7566

Paul M. Weiss
**FREED & WEISS LLC**
111 West Washington Street, Suite 1311
Chicago, IL 60602
Telephone: (312) 220-0000

Brian S. Kabateck
**KABATECK BROWN KELLNER LLP**
664 S. Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 217-5000
Facsimilie: (213) 217-5010

Gordon M. Fauth, Jr.
**LITIGATION LAW GROUP**
1801 Clement Avenue, Suite 101
Alamada, CA 94501
Telephone: (510) 238-9610
Facsimilie: (510) 337-1431

Melissa Meeker Harnett
**WASSERMAN, COMDEN & CASSLEMAN, LLP**
5567 Reseda Boulevard, Suite 330
Tarzana, CA 91357-7033
Telephone: (818) 705-6800
Facsimilie: (818) 996-8266

*Additional Counsel for Plaintiffs*

-13-

PLAINTIFFS' DOCUMENT REQUESTS
DIRECTED TO FACEBOOK, INC.

1

## CERTIFICATE OF SERVICE

2    I, Sheeree Renwick, declare:

3    I am employed in San Francisco County, State of California. I am over the age of 18 years and

4 not a party to the within action. My business address is Finkelstein Thompson LLP, 100 Bush Street,

5 Suite 1450, San Francisco, California 94104.

6    I hereby certify that on February 18, 2010, I caused the foregoing **PLAINTIFFS' FIRST**

7 **REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANT**

8 **FACEBOOK, INC.** to be:

9

10      hand delivered via First Legal Network messenger service to the following participant:

11        Angela Lucia Padilla
         **Orrick, Herrington & Sutcliffe LLP**

12        405 Howard Street
         San Francisco, CA 94105-2669

13   I declare under penalty of perjury under the laws of the State of California that the foregoing is

14 true and correct. Executed at San Francisco, California on February 18, 2010.

15

16

17

18                                              *Sheeree Renwick*

19                                              Sheeree Renwick

20

21

22

23

24

25

26

27

28

                                   PLAINTIFFS' DOCUMENT REQUESTS
                                   DIRECTED TO FACEBOOK, INC.

Master File No. C 09-03043 JF

# EXHIBIT C

COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
WHITTY SOMVICHIAN (194463) (wsomvichian@cooley.com)
PETER M. COLOSI (252951) (pcolosi@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:     (415) 693-2000
Facsimile:     (415) 693-2222

Attorneys for Defendant
FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re FACEBOOK PPC Advertising Litigation, <br><br> This Document relates To: <br>     All Actions. | Master File Case No.  C 09-03043 JF <br><br> **DEFENDANT FACEBOOK, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS** |

Defendant Facebook, Inc. ("Facebook") hereby responds to Plaintiffs' First Request for Production of Documents ("First Request"), as follows:

## I.   GENERAL LIMITATIONS

Facebook asserts, whether separately set forth in the individual response to each document request below, the following general limitations ("General Limitations") to each and every instruction, definition, and document request made in the First Request.

1.      Facebook's response is made to the best of Facebook's present knowledge, information, and belief.  This response is at all times subject to such additional or different information that discovery or further investigation may disclose and, while based on the present state of Facebook's employees' recollection, is subject to such refreshing of recollection, and

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1182684 v1/SF

1.

OBJECTIONS AND RESPONSES
TO FIRST DOCUMENT REQUEST
C 09-03043 JF

1   such additional knowledge of facts, as may result from Facebook's further discovery or

2   investigation. Facebook reserves the right to make any use of, or to introduce at or in connection

3   with any hearing or trial, documents responsive to the First Request but discovered after

4   Facebook's initial production, including but not limited to, any documents obtained in discovery

5   herein.

6        2.    Facebook will respond to each document request with documents currently in its

7   possession. By stating in these responses that Facebook will produce documents or is searching

8   for documents, Facebook does not warrant that any document actually exists, but rather that it has

9   made a diligent search and reasonable inquiry to ascertain whether documents responsive to the

10   First Request do, in fact, exist.

11        3.    To the extent that Facebook responds to the First Request by stating that it will

12   produce documents which it or any party to this action deems to embody material that is private,

13   business confidential, proprietary, trade secret, and/or information otherwise protected from

14   disclosure, Facebook will do so only upon entry of and pursuant to an appropriate protective

15   order in this action.

16        4.    Facebook reserves the right to decide whether the documents produced for

17   inspection shall be produced as they are kept in the usual course of business or shall be organized

18   and labeled to correspond with the categories in the First Request.

19        5.    Facebook reserves all objections or other questions as to the competency,

20   relevance, materiality, privilege or admissibility as evidence in any subsequent proceeding in or

21   trial of this or any other action for any purpose whatsoever of this response and any document or

22   thing produced in response to the First Request.

23        6.    Facebook reserves the right to object on any ground at any time to such other or

24   supplemental requests for production as the Plaintiffs may propound involving or relating to the

25   subject matter of the First Request.

26   **II.**   **GENERAL OBJECTIONS**

27        Facebook asserts, whether separately set forth in the individual response to each document

28   request below, the following general objections ("General Objections") to each and every

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2.

OBJECTIONS AND RESPONSES
TO FIRST DOCUMENT REQUEST
C 09-03043 JF

1  instruction, definition, and document request made in the First Request.

2      1.    Facebook objects generally to each and every request on the grounds that the First

3  Request is burdensome and oppressive in that it calls for disclosure of information protected by

4  the attorney-client privilege, the attorney work product doctrine, or other applicable privilege or

5  immunity. Such documents or information shall not be produced in response to any request and

6  any inadvertent production thereof shall not be deemed a waiver of any privilege or right with

7  respect to such documents or information or of any work product doctrine that may attach thereto.

8      2.    Facebook objects generally to each and every request on the grounds that the First

9  Request is burdensome and oppressive in that it calls for disclosure of trade secrets or other

10  confidential or proprietary research, development, or commercial information of Facebook or any

11  third party. Such information will be disclosed, if at all, only pursuant to a suitable protective

12  order and, if appropriate, consent of relevant third parties.

13      3.    Facebook objects generally to each and every request on the grounds that the First

14  Request is burdensome and oppressive to the extent it seeks documents not currently in

15  Facebook's possession, custody or control, including without limitation, those of its accountants,

16  attorneys, or other agents, or refer to persons, entities or events not known to it, on the grounds

17  that such requests seek to require more of Facebook than any obligation imposed by law, would

18  subject Facebook to unreasonable and undue annoyance, oppression, burden and expense, and

19  would seek to impose upon Facebook an obligation to investigate or discover information or

20  materials from third parties or services which are equally accessible to the Plaintiffs.

21      4.    Facebook objects generally to each and every request on the grounds that the First

22  Request is burdensome and oppressive in that it seeks information that is irrelevant and not

23  reasonably calculated to lead to the discovery of admissible evidence, and would result in undue

24  burden and expense to Facebook.

25      5.    Facebook objects to the terms "relate to", "relating to" and "concerning" in the

26  First Request. These terms are overly broad, vague, ambiguous, and unintelligible, require

27  subjective judgment on the part of Facebook and its attorneys, and would require a conclusion or

28  opinion of counsel contrary to the protection from discovery afforded by the attorney work

COOLEY LLP
ATTORNEYS AT LAW
S·N FRANCISCO

3.

OBJECTIONS AND RESPONSES
TO FIRST DOCUMENT REQUEST
C 09-03043 JF

1    product doctrine. Without waiving this objection, and subject to all other applicable objections or

2    privileges stated herein, Facebook will produce, in response to these requests, such documents as

3    expressly constitute or refer on their face to information relevant to the specified subject.

4           6.      Facebook objects generally to each and every request in the First Request that

5    seeks information relevant and related to what the Court has termed "third-party clicks." Such

6    requests ask for information which the Court has expressly stated is not yet at issue in this

7    litigation and for which discovery is not yet warranted.

8    **III.    SPECIFIC OBJECTIONS AND RESPONSES TO FIRST REQUEST**

9           Facebook incorporates its foregoing General Limitations and General Objections into each

10   response below. Subject to and without waiving those General Limitations or General

11   Objections, Facebook makes the following specific objections and responses to the First

12   Request's document requests as follows:

13   **Document Request No. 1:**

14          Please produce documents sufficient to identify the number of CPC advertising customers

15   that contracted with you per month for CPC advertising placement on your website.

16   **Response to Document Request No. 1:**

17          Facebook objects to this request as premature, overly broad, unduly burdensome, and

18   exceeding the permissible scope of discovery in that the Court has dismissed all claims related to

19   third-party clicks in its April 22, 2010 Order Granting in Part and Denying in Part Motion to

20   Dismiss ("Order") and no class has been certified with respect to claims for first-party clicks.

21   This request seeks information that would be discoverable only in connection with litigating the

22   merits of Plaintiffs' class claims if and when class certification is granted. To the extent the

23   information requested has some bearing on the numerosity requirement for class certification,

24   Facebook will meet and confer with Plaintiffs on a potential stipulation to address Plaintiffs'

25   needs while avoiding an unnecessary and unduly burdensome production.

26   **Document Request No. 2:**

27          Please produce all versions of any form contracts used by You on your website that set

28   forth the terms and conditions pursuant to which customers purchase CPC advertising, and

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4.

OBJECTIONS AND RESPONSES
TO FIRST DOCUMENT REQUEST
C 09-03043 JF

1   documents sufficient to identify the date on which each version was implemented.

2   **Response to Document Request No. 2:**

3       Facebook objects to this request as vague, overly broad, unduly burdensome, and

4   exceeding the permissible scope of discovery.   To the extent Plaintiffs are seeking discovery

5   related to the "Extrinsic Evidence" (as defined by the Court in its Order)  or similar materials,

6   such discovery is premature because the Court has expressly found the Extrinsic Evidence to be

7   irrelevant in its Order and has not yet ruled on whether Plaintiffs' new allegations in the

8   Amended Complaint are sufficient to show that the Extrinsic Evidence may be considered. To the

9   extent Plaintiffs are seeking discovery on other materials, Facebook will meet and confer further

10   with Plaintiffs over the proper scope of any production, consistent with the Court's Order.

11   **Document Request No. 3:**

12       Please produce all versions of the web pages which are accessible on the Facebook

13   website under the following headings, categories and/or names: "Help Center," "Glossary of Ad

14   Terms," "terms and conditions," "terms of use," "Statement of Rights and Responsibilities,"

15   "Advertising Guidelines," "Ad Manager," and "Advertising Help," and documents sufficient to

16   identify the date on which each version was implemented.

17   **Response to Document Request No. 3:**

18       Facebook objects to this request on the basis that it is unduly burdensome and that

19   discovery on the "Extrinsic Evidence" (as defined by the Court in its Order) and similar materials

20   is premature at this stage of the proceedings as the Court has expressly found the Extrinsic

21   Evidence to be irrelevant based on the prior complaint and has not yet ruled on whether Plaintiffs'

22   new allegations in the Amended Complaint are sufficient to show that the Extrinsic Evidence may

23   be considered.

24   **Document Request No. 4:**

25       Please produce all versions of the web pages from your website which make a

26   representation about the terms "click" or "clicks" (including but not limited to legitimate clicks,

27   valid clicks, illegitimate clicks, invalid clicks, fraudulent clicks, click fraud, accidental clicks,

28   unintentional clicks, clicks made for improper purposes, click quality, cost per click, price per

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5.

OBJECTIONS AND RESPONSES
TO FIRST DOCUMENT REQUEST
C 09-03043 JF

1    click), "user" or "users," and documents sufficient to identify the date on which each page was

2    implemented and/or accessible.

3    **Response to Document Request No. 4:**

4        Facebook objects to this request on the basis that it is unduly burdensome and that

5    discovery on the "Extrinsic Evidence" (as defined by the Court in its Order) and similar materials

6    is premature at this stage of the proceedings as the Court has expressly found the Extrinsic

7    Evidence to be irrelevant based on the prior complaint and has not yet ruled on whether Plaintiffs'

8    new allegations in the Amended Complaint are sufficient to show that the Extrinsic Evidence may

9    be considered.

10   **Document Request No. 5:**

11       Please produce all versions of the web pages from your website which are accessible to a

12   customer placing a CPC advertising order (including all pages comprising the order form or the

13   advertising order), and documents sufficient to identify the date on which each version was

14   implemented.

15   **Response to Document Request No. 5:**

16       Facebook objects to this request on the basis that it is unduly burdensome and that

17   discovery on the "Extrinsic Evidence" (as defined by the Court in its Order) and similar materials

18   is premature at this stage of the proceedings as the Court has expressly found the Extrinsic

19   Evidence to be irrelevant based on the prior complaint and has not yet ruled on whether Plaintiffs'

20   new allegations in the Amended Complaint are sufficient to show that the Extrinsic Evidence may

21   be considered.

22   **Document Request No. 6:**

23       Please produce organizational charts or other personnel records sufficient to identify your

24   personnel responsible for interacting with actual or prospective CPC advertisers.

25   **Response to Document Request No. 6:**

26       Facebook objects to this request as exceeding the permissible scope of discovery to the

27   extent it seeks information related to claims for third-party clicks, which have been dismissed by

28   the Court.   Without waiving any objections, Facebook will produce responsive information

CooLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6.

OBJECTIONS AND RESPONSES
TO FIRST DOCUMENT REQUEST
C 09-03043 JF

1    related to those claims that the Court has allowed to proceed under its Order.

2    **Document Request No. 7:**

3        Please produce organizational charts or other personnel records sufficient to identify your

4    personnel responsible for determining and/or implementing policies relating to billing for CPC

5    advertising placement.

6    **Response to Document Request No. 7:**

7        Facebook objects to this request as exceeding the permissible scope of discovery to the

8    extent it seeks information related to claims for third-party clicks, which have been dismissed by

9    the Court.   Without waiving any objections, Facebook will produce responsive information

10   related to those claims that the Court has allowed to proceed under its Order.

11   **Document Request No. 8:**

12       Please produce organizational charts or other personnel records sufficient to identify your

13   personnel responsible for tracking clicks on customers' advertisements, including those

14   responsible for identifying invalid clicks and for creating, implementing and revising the filtering

15   systems.

16   **Response to Document Request No. 8:**

17       Facebook objects to this request as exceeding the permissible scope of discovery to the

18   extent it seeks information related to claims for third-party clicks, which have been dismissed by

19   the Court.   Without waiving any objections, Facebook will produce responsive information

20   related to those claims that the Court has allowed to proceed under its Order.

21   **Document Request No. 9:**

22       Please produce organizational charts or other personnel records sufficient to identify your

23   personnel responsible for responding to complaints from CPC advertising customers about being

24   charged for invalid clicks.

25   **Response to Document Request No. 9:**

26       Facebook objects to this request as exceeding the permissible scope of discovery to the

27   extent it seeks information related to claims for third-party clicks, which have been dismissed by

28   the Court.   Without waiving any objections, Facebook will produce responsive information

CooleyLLP
Attorneys At Law
S▪N Francisco

7.

Objections and Responses
to First Document Request
C 09-03043 JF

1   related to those claims that the Court has allowed to proceed under its Order.

2   **Document Request No. 10:**

3       Please produce all documents sufficient to indicate the revenue and profit you generated

4   from CPC advertising placement.

5   **Response to Document Request No. 10:**

6       Facebook objects to this request on the basis that it is premature, overly broad and unduly

7   burdensome, and exceeds the permissible scope of discovery in that the Court has dismissed all

8   claims related to third-party clicks and no class has been certified with respect to claims for first-

9   party clicks.  This request seeks information that would be discoverable only in connection with

10  litigating the merits of Plaintiffs' class claims if and when class certification is granted.

11  **Document Request No. 11:**

12      Please produce all versions of marketing or promotional materials you provided or made

13  available to actual or prospective customers related to CPC advertising placement and date(s) on

14  which the materials were provided or made available.

15  **Response to Document Request No. 11:**

16      It is Facebook's understanding based on meet and confer discussions that Plaintiffs have

17  agreed to withdraw this request as redundant to requests 2 through 5 above.  Facebook hereby

18  incorporates its responses and objections to those requests herein.

19  **Document Request No. 12:**

20      Please produce all internal communications that relate or refer to the charging for CPC

21  advertising on your website.

22  **Response to Document Request No. 12:**

23      Facebook objects to this request as overly broad, unduly burdensome, and exceeding the

24  permissible scope of discovery.  Specifically, to the extent this request seeks discovery on

25  communications related to invalid clicks originating from third parties, claims for such clicks are

26  not yet "in play" pursuant to the Order as further clarified at the May 7, 2010 Case Management

27  Conference.  (*See* CMC Transcript at 6:14-18.).  Additionally, at the parties' telephonic meet and

28  confer discussion on Wednesday, May 26, 2010, Plaintiffs stated they were not interested in

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8.

OBJECTIONS AND RESPONSES
TO FIRST DOCUMENT REQUEST
C 09-03043 JF

1    discovery related to what the Court termed "first-party" clicks. As all claims related to third-
2    party clicks have been dismissed and Plaintiffs have stated they do not want any documents
3    related to first-party clicks, there are no documents responsive to this request.

4    **Document Request No. 13:**

5           Please produce all documents that relate or refer to your systems that are designed to
6    detect invalid clicks.

7    **Response to Document Request No. 13:**

8           Facebook objects to this request as overly broad, unduly burdensome, and exceeding the
9    permissible scope of discovery. Specifically, to the extent this request seeks information related
10   to the detection of invalid clicks originating from third parties, claims for such clicks are not yet
11   "in play" pursuant to the Order as further clarified at the May 7, 2010 Case Management
12   Conference. (*See* CMC Transcript at 6:14-18.). Additionally, at the parties' telephonic meet and
13   confer discussion on Wednesday, May 26, 2010, Plaintiffs stated they were not interested in
14   discovery related to what the Court termed "first-party" clicks. As all claims related to third-
15   party clicks have been dismissed and Plaintiffs have stated they do not want any documents
16   related to first-party clicks, there are no documents responsive to this request.

17   **Document Request No. 14:**

18          Please produce all documents that relate or refer to your systems designed to pre-filter
19   invalid clicks, i.e., to remove invalid clicks before they are even seen by the filters, e.g., test
20   clicks generated by your personnel for testing purposes and clicks improperly recorded in the log
21   files whose records have some technical problems resulting in the clicks being unreadable or
22   meaningless.

23   **Response to Document Request No. 14:**

24          Facebook objects to this request as overly broad, unduly burdensome, and exceeding the
25   permissible scope of discovery. Specifically, to the extent this request seeks information related
26   to invalid clicks originating from third parties, claims for such clicks are not yet "in play"
27   pursuant to the Order as further clarified at the May 7, 2010 Case Management Conference. (*See*
28   CMC Transcript at 6:14-18.). Additionally, at the parties' telephonic meet and confer discussion

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9.

OBJECTIONS AND RESPONSES
TO FIRST DOCUMENT REQUEST
C 09-03043 JF

1    on Wednesday, May 26, 2010, Plaintiffs stated they were not interested in discovery related to

2    what the Court termed "first-party" clicks.  As all claims related to third-party clicks have been

3    dismissed and Plaintiffs have stated they do not want any documents related to first-party clicks,

4    there are no documents responsive to this request.

5    **Document Request No. 15:**

6        Please produce all documents that relate or refer to your systems designed to online filter

7    invalid clicks, including, but not limited to those which are anomaly-based (e.g., if normal

8    average clicking on a given advertisement or by a given visitor is 10 times per week and then, in a

9    given week there are 100 clicks on that advertisement or 100 clicks by that visitor), and those

10   which are rule-based (e.g., if a double-click on a given advertisement, with the second click being

11   within x seconds of the first click, then, the second click is deemed invalid).

12   **Response to Document Request No. 15:**

13       Facebook objects to this request as overly broad, unduly burdensome, and exceeding the

14   permissible scope of discovery.  Specifically, to the extent this request seeks information related

15   to invalid clicks originating from third parties, claims for such clicks are not yet "in play"

16   pursuant to the Order as further clarified at the May 7, 2010 Case Management Conference.  (*See*

17   CMC Transcript at 6:14-18.).  Additionally, at the parties' telephonic meet and confer discussion

18   on Wednesday, May 26, 2010, Plaintiffs stated they were not interested in discovery related to

19   what the Court termed "first-party" clicks.  As all claims related to third-party clicks have been

20   dismissed and Plaintiffs have stated they do not want any documents related to first-party clicks,

21   there are no documents responsive to this request.

22   **Document Request No. 16:**

23       Please produce all documents that relate or refer to your systems designed to post-filter

24   invalid clicks offline, including both automated monitoring and manual inspection stages.

25   **Response to Document Request No. 16:**

26       Facebook objects to this request as overly broad, unduly burdensome, and exceeding the

27   permissible scope of discovery.  Specifically, to the extent this request seeks information related

28   to invalid clicks originating from third parties, claims for such clicks are not yet "in play"

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10.

OBJECTIONS AND RESPONSES
TO FIRST DOCUMENT REQUEST
C 09-03043 JF

1   pursuant to the Order as further clarified at the May 7, 2010 Case Management Conference.  (*See*

2   CMC Transcript at 6:14-18.).  Additionally, at the parties' telephonic meet and confer discussion

3   on Wednesday, May 26, 2010, Plaintiffs stated they were not interested in discovery related to

4   what the Court termed "first-party" clicks.  As all claims related to third-party clicks have been

5   dismissed and Plaintiffs have stated they do not want any documents related to first-party clicks,

6   there are no documents responsive to this request.

7   **Document Request No. 17:**

8        Please produce all documents that relate or refer to revisions to filter parameters,

9   introductions of new filters or conditions to filters and the removal of old under performance

10  filters.

11  **Response to Document Request No. 17:**

12       Facebook objects to this request as overly broad, unduly burdensome, and exceeding the

13  permissible scope of discovery.  Specifically, to the extent this request seeks information related

14  to invalid clicks originating from third parties, claims for such clicks are not yet "in play"

15  pursuant to the Order as further clarified at the May 7, 2010 Case Management Conference.  (*See*

16  CMC Transcript at 6:14-18.).  Additionally, at the parties' telephonic meet and confer discussion

17  on Wednesday, May 26, 2010, Plaintiffs stated they were not interested in discovery related to

18  what the Court termed "first-party" clicks.  As all claims related to third-party clicks have been

19  dismissed and Plaintiffs have stated they do not want any documents related to first-party clicks,

20  there are no documents responsive to this request.

21  **Document Request No. 18:**

22       Please produce all documents that relate or refer to the performance of the filters, i.e., the

23  number or percentage of clicks that the filters categorize as invalid and/or non-billable to

24  customers.

25  **Response to Document Request No. 18:**

26       Facebook objects to this request as overly broad, unduly burdensome, and exceeding the

27  permissible scope of discovery.  Specifically, to the extent this request seeks information related

28  to invalid clicks originating from third parties, claims for such clicks are not yet "in play"

1    pursuant to the Order as further clarified at the May 7, 2010 Case Management Conference. (*See*

2    CMC Transcript at 6:14-18.).  Additionally, at the parties' telephonic meet and confer discussion

3    on Wednesday, May 26, 2010, Plaintiffs stated they were not interested in discovery related to

4    what the Court termed "first-party" clicks.  As all claims related to third-party clicks have been

5    dismissed and Plaintiffs have stated they do not want any documents related to first-party clicks,

6    there are no documents responsive to this request.

7    **Document Request No. 19:**

8           Please produce all documents that relate or refer to your systems used to track clicks for

9    purposes of charging your CPC customers.

10   **Response to Document Request No. 19:**

11          Facebook objects to this request as overly broad, unduly burdensome, and exceeding the

12   permissible scope of discovery.  Specifically, to the extent this request seeks information related

13   to invalid clicks originating from third parties, claims for such clicks are not yet "in play"

14   pursuant to the Order as further clarified at the May 7, 2010 Case Management Conference. (*See*

15   CMC Transcript at 6:14-18.).  Additionally, at the parties' telephonic meet and confer discussion

16   on Wednesday, May 26, 2010, Plaintiffs stated they were not interested in discovery related to

17   what the Court termed "first-party" clicks.  As all claims related to third-party clicks have been

18   dismissed and Plaintiffs have stated they do not want any documents related to first-party clicks,

19   there are no documents responsive to this request.

20   **Document Request No. 20:**

21          Please produce all documents that relate or refer to your systems used to track the number

22   of clicks from a single source on a given customer's advertisement.

23   **Response to Document Request No. 20:**

24          Facebook objects to this request as overly broad, unduly burdensome, and exceeding the

25   permissible scope of discovery.  Specifically, to the extent this request seeks information related

26   to invalid clicks originating from third parties, claims for such clicks are not yet "in play"

27   pursuant to the Order as further clarified at the May 7, 2010 Case Management Conference. (*See*

28   CMC Transcript at 6:14-18.).  Additionally, at the parties' telephonic meet and confer discussion

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12.

OBJECTIONS AND RESPONSES
TO FIRST DOCUMENT REQUEST
C 09-03043 JF

1    on Wednesday, May 26, 2010, Plaintiffs stated they were not interested in discovery related to

2    what the Court termed "first-party" clicks. As all claims related to third-party clicks have been

3    dismissed and Plaintiffs have stated they do not want any documents related to first-party clicks,

4    there are no documents responsive to this request.

5    **Document Request No. 21:**

6         Please produce all documents that relate or refer to your systems used to track post-click

7    data, i.e., data about conversion actions on your customers' websites, including but not limited to

8    whether visitors visited certain pages on the advertisers' website that the advertiser marked as

9    conversion pages.

10   **Response to Document Request No. 21:**

11        Without waiving any objections, it is Facebook's understanding based on meet and confer

12   discussions that Plaintiffs have agreed to withdraw or defer this request.

13   **Document Request No. 22:**

14        Please produce all documents sufficient to identify on a monthly aggregate basis the

15   number of billable clicks on advertisers' ads.

16   **Response to Document Request No. 22:**

17        Facebook objects to this request on the basis that it is premature, overly broad and unduly

18   burdensome, and exceeds the permissible scope of discovery in that the Court has dismissed all

19   claims related to third-party clicks and no class has been certified with respect to claims for first-

20   party clicks. This request seeks information that would be discoverable only in connection with

21   litigating the merits of Plaintiffs' class claims if and when class certification is granted.

22   **Document Request No. 23:**

23        Please produce all documents sufficient to identify on a monthly aggregate basis the

24   number of non-billable clicks on advertisers' ads.

25   **Response to Document Request No. 23:**

26        Facebook objects to this request on the basis that it is premature, overly broad and unduly

27   burdensome, and exceeds the permissible scope of discovery in that the Court has dismissed all

28   claims related to third-party clicks and no class has been certified with respect to claims for first-

1  party clicks.  This request seeks information that would be discoverable only in connection with

2  litigating the merits of Plaintiffs' class claims if and when class certification is granted.

3  **Document Request No. 24:**

4       Please produce all documents that relate or refer to any communications, or notification of

5  any kind, that you received from CPC advertising customers, potential customers and/or visitors

6  regarding charges for invalid clicks of any kind.

7  **Response to Document Request No. 24:**

8       Facebook objects to this request as overly broad, unduly burdensome, and exceeding the

9  permissible scope of discovery.  Specifically, to the extent this request seeks information related

10  to invalid clicks originating from third parties, claims for such clicks are not yet "in play"

11  pursuant to the Order as further clarified at the May 7, 2010 Case Management Conference.  (*See*

12  CMC Transcript at 6:14-18.).  Additionally, at the parties' telephonic meet and confer discussion

13  on Wednesday, May 26, 2010, Plaintiffs stated they were not interested in discovery related to

14  what the Court termed "first-party" clicks.  As all claims related to third-party clicks have been

15  dismissed and Plaintiffs have stated they do not want any documents related to first-party clicks,

16  there are no documents responsive to this request.

17  **Document Request No. 25:**

18       Please produce all documents that relate or refer to any communications with outside

19  media sources regarding reports of CPC advertising customers being charged for invalid clicks by

20  Facebook for CPC advertising.

21  **Response to Document Request No. 25:**

22       Facebook objects to this request as overly broad, unduly burdensome, and exceeding the

23  permissible scope of discovery.  Specifically, to the extent this request seeks information related

24  to invalid clicks originating from third parties, claims for such clicks are not yet "in play"

25  pursuant to the Order as further clarified at the May 7, 2010 Case Management Conference.  (*See*

26  CMC Transcript at 6:14-18.).  Additionally, at the parties' telephonic meet and confer discussion

27  on Wednesday, May 26, 2010, Plaintiffs stated they were not interested in discovery related to

28  what the Court termed "first-party" clicks.  As all claims related to third-party clicks have been

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14.

OBJECTIONS AND RESPONSES
TO FIRST DOCUMENT REQUEST
C 09-03043 JF

1  dismissed and Plaintiffs have stated they do not want any documents related to first-party clicks,

2  there are no documents responsive to this request.

3  **Document Request No. 26:**

4       Please produce all documents that you provide to CPC advertising customers and/or

5  potential customers to assist them in selecting a daily or weekly budget for the maximum they are

6  willing to spend per day/week for advertisement placements.

7  **Response to Document Request No. 26:**

8       Without waiving any objections, it is Facebook's understanding based on meet and confer

9  discussions that Plaintiffs have agreed to withdraw or defer this request.

10  **Document Request No. 27:**

11       Please produce all documents that you provide to CPC advertising customers and/or

12  potential customers to assist them in selecting a "Maximum Bid" for each click that they are

13  willing to spend.

14  **Response to Document Request No. 27:**

15       Without waiving any objections, it is Facebook's understanding based on meet and confer

16  discussions that Plaintiffs have agreed to withdraw or defer this request.

17  **Document Request No. 28:**

18       Please produce all documents that relate or refer to the methodology you use to determine

19  which customer's advertisement will run at a given time among a pool of advertisers competing

20  for advertising placements on Facebook pages.

21  **Response to Document Request No. 28:**

22       Without waiving any objections, it is Facebook's understanding based on meet and confer

23  discussions that Plaintiffs have agreed to withdraw or defer this request.

24  **Document Request No. 29:**

25       Please produce all documents that relate or refer to credits or refunds issued to CPC

26  Advertising customers relating to invalid clicks, whether on a customer by customer basis or in

27  terms of any tracking and/or monitoring systems or reports.

28  **Response to Document Request No. 29:**

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15.

OBJECTIONS AND RESPONSES
TO FIRST DOCUMENT REQUEST
C 09-03043 JF

1    Facebook objects to this request as overly broad, unduly burdensome, and exceeding the

2    permissible scope of discovery.  Specifically, to the extent this request seeks information related

3    to invalid clicks originating from third parties, claims for such clicks are not yet "in play"

4    pursuant to the Order as further clarified at the May 7, 2010 Case Management Conference.  (*See*

5    CMC Transcript at 6:14-18.).  Additionally, at the parties' telephonic meet and confer discussion

6    on Wednesday, May 26, 2010, Plaintiffs stated they were not interested in discovery related to

7    what the Court termed "first-party" clicks.  As all claims related to third-party clicks have been

8    dismissed and Plaintiffs have stated they do not want any documents related to first-party clicks,

9    there are no documents responsive to this request.

10   **Document Request No. 30:**

11   Please produce all documents relating or referring to Plaintiff RootZoo.

12   **Response to Document Request No. 30:**

13   Facebook objects to this request on the basis that it is potentially overly broad and unduly

14   burdensome.  Subject to and without waiving any objections, Facebook will produce responsive,

15   non-privileged documents relating or referring to Plaintiff RootZoo to the extent reasonably

16   calculated to lead to admissible evidence on the claims currently at issue pursuant to the Court's

17   Order, including Plaintiff's account information and relevant data on clicks charged to Plaintiff

18   on Plaintiff's advertisements.

19   **Document Request No. 31:**

20   Please produce all documents relating or referring to Plaintiff Price.

21   **Response to Document Request No. 31:**

22   Facebook objects to this request on the basis that it is potentially overly broad and unduly

23   burdensome.  Subject to and without waiving any objections, Facebook will produce responsive,

24   non-privileged documents relating or referring to Plaintiff Price to the extent reasonably

25   calculated to lead to admissible evidence on the claims currently at issue pursuant to the Court's

26   Order, including Plaintiff's account information and relevant data on clicks charged to Plaintiff

27   on Plaintiff's advertisements.

28   **Document Request No. 32:**

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16.

OBJECTIONS AND RESPONSES
TO FIRST DOCUMENT REQUEST
C 09-03043 JF

1    Please produce all documents relating or referring to Plaintiff Smith.

2    **Response to Document Request No. 32:**

3    Facebook objects to this request on the basis that it is potentially overly broad and unduly

4    burdensome.  Subject to and without waiving any objections, Facebook will produce responsive,

5    non-privileged documents relating or referring to Plaintiff Smith to the extent reasonably

6    calculated to lead to admissible evidence on the claims currently at issue pursuant to the Court's

7    Order, including Plaintiff's account information and relevant data on clicks charged to Plaintiff

8    on Plaintiff's advertisements.

9    **Document Request No. 33:**

10    Please produce all documents sufficient to identify any legal proceedings in any venue

11    commenced against Facebook related to a dispute regarding billing for CPC advertising.

12    **Response to Document Request No. 33:**

13    Facebook objects to this request on the basis that it is overly broad and unduly

14    burdensome, seeks information irrelevant to the litigation and not reasonably calculated to lead to

15    the discovery of admissible evidence, and calls for the production of documents protected by the

16    attorney-client privilege and work product doctrine.

17

18
      Dated: June 8, 2010                          COOLEY LLP
19

20

21                                                 MICHAEL G. RHODES (116127)
                                                   WHITTY SOMVICHIAN (194463)
22                                                 PETER M. COLOSI (252951)

23                                                 BY:  /s/ Whitty Somvichian
24                                                      WHITTY SOMVICHIAN

25                                                 Attorneys for Defendant
                                                   FACEBOOK, INC.
26

27

28

# EXHIBIT D



Peter M. Colosi                                    VIA EMAIL JSHUB@SEEGERWEISS.COM AND MAIL
(415) 693-2130
pcolosi@cooley.com


January 28, 2011


Jonathan Shub
SEEGER WEISS LLP
1515 Market Street, Suite 1380
Philadelphia, PA 19102


RE:    **In re Facebook PPC Advertising Litigation**
       **Case No.: 09-03043 JF**

Dear Jonathon:

This letter responds to yours of January 13, 2011 regarding ongoing discovery issues.

You state in your letter that plaintiffs believe there is an "impasse" as to "categories 1, 2, 3, 5 and 13" as identified in your November 30, 2010 email and that you intend to file a motion to compel as to those categories of documents. We disagree that an impasse exists and do not believe there is a ripe dispute appropriate for a motion to compel.

Category 1 was a request for "Facebook WIKI, as it relates to Advertising Sales, Click Filters and Click Quality, including all hyperlinks to documents referenced on the WIKI." Category 13 was a request for "All versions of the click filtering overview document, including documents identified in hyperlinks." To clarify, the "click filtering overview document" is the "WIKI". Facebook has now produced all historical versions of the click filtering overview wiki, including the responsive links from the wiki itself. To the extent the "impasse" you reference in your letter regards the fact that these documents were produced via the WatchDox system, you have failed to identify any way that the method of production prejudices your clients. The current production allows you, your staff, and your experts full access to review these documents. While the printing feature is disabled, this does not impact your review of the documents and is a necessary protection to safeguard against inadvertent disclosure of Facebook's highly-sensitive click-filtering information. Further, you have previously noted that the system potentially gives Cooley access to information on who has reviewed the document. We have not availed ourselves of this feature and as an additional accommodation have disabled the system so that no one at Cooley will receive any notifications on who has accessed the document. Last, we are currently in the process of correcting the orientation of all documents on the system to address the issue you noted.

Category 2 was a request for "Internal communications, including emails and instant messages, relating to click quality, legal or valid or illegal or illegal clicks, refunds or credits relating to click quality, and the creation or modification of click filters." We stated in our December 17, 2010 letter to you that we are currently reviewing and expect to produce by the end of January internal communications pertaining to the list of witnesses you identified in the December 3,



Jonathan Shub
January 24, 2011
Page Two

2010 Notice of Deposition: Lexa Pope, Rebecca Sawyer, Kirsten Bury, Kasey Galang, Pierre Moreels, David Fischer and Karl Voskuil. While we are willing to confer on potential additional custodians, we are under no obligation to complete the entire production of potentially relevant documents from all custodians before the class certification process. Indeed, on September 17, 2010, the Court made clear that "there is a strong preference for focusing on [class] certification issues" during this stage of discovery.

Category 3 was a request for documents relating to the "Ticket Processing System". Category 5 was a request for documents relating to "Click Quality Investigations". Both categories of documents were produced on December 14, 2010 in Facebook's seventh document production. To the extent the "impasse" you reference in your letter refers to the form of this production, you have again failed to identify any way that form prejudices your clients. Those documents could not be produced in native format as they were maintained by Facebook in a proprietary system. They were produced in searchable .pdf format as that was the most user-friendly format available. We do not believe the redactions made should have any effect on plaintiffs' ability to identify and review the particular emails associated with a particular complaint. Notwithstanding the redactions made to protect our advertisers' privacy, each email will still have specific information tying it to other emails referencing the same complaint. Thus, the private information redacted from the document in no way prejudices plaintiffs.

Your letter also seeks to clarify (by simply referring us to deposition testimony) your request for documents in categories 4 and 12 of your prior email.

Category 4 relates to "Site code and database that contains and tracks changes to the FAQs and other reports provided to advertisers." We have already provided the available information showing the text of prior versions of the FAQs and Help Center pages related to Facebook's click filtering systems, including the web pages identified in the complaint. If you can identify a deficiency in our production, or if there are other web pages you believe are relevant, please bring that to our attention.

Category 12 relates to "Code History relating to click filtering." Please see above for our response to your request for Categories 1 and 13; we have already produced all versions of the documentation on the wiki that set forth and explains Facebook's click filtering systems and a full day of testimony from a Facebook engineer on the filters. Production of the proprietary source code implementing the filters, if even possible, would be tremendously burdensome and offer little to no additional value.

We will respond separately regarding the deposition issues you raised and regarding the deficiencies in plaintiffs' discovery responses.



Jonathan Shub
January 24, 2011
Page Three


Please let me know if you have further questions.

Sincerely,

Peter M. Colosi
PMC/pem

cc:      Whitty Somvichian
1207227 v1/SF