COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
WHITTY SOMVICHIAN (194463) (wsomvichian@cooley.com)
PETER M. COLOSI (252951) (pcolosi@cooley.com)
101 California Street, 5th Floor
San Francisco, CA  94111-5800
Telephone:   (415) 693-2000
Facsimile:    (415) 693-2222

Attorneys for Defendant
FACEBOOK, INC., a Delaware corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re FACEBOOK PPC Advertising Litigation,<br><br>This Document relates To:<br>All Actions. | Master File Case No. C 09-03043 JF<br><br>**DEFENDANT FACEBOOK, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DOCUMENTS**<br><br>Hearing Date:   March 22, 2011<br>Time:           10:00 a.m.<br>Judge:          Hon. Howard R. Lloyd<br>Courtroom:      2, 5th Floor |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

OPPOSITION TO MOTION
TO COMPEL
C 09-03043 JF

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1
II. BACKGROUND ................................................................................................................. 2
    A. Overview Of The Case ............................................................................................ 2
    B. Procedural Background ........................................................................................... 2
    C. Facebook's Document Productions To Date .......................................................... 3
III. ARGUMENT ...................................................................................................................... 5
    A. The Court Should Not Compel Further Unnecessary Discovery On Facebook's Click Filtering Systems And Computer Source Code ........................ 5
    B. An "ESI Protocol" Is Unnecessary Under The Circumstances ............................... 9
    C. Facebook Is Under No Obligation to Disclose Its Internal Search Process For Collecting and Producing Documents ............................................................ 12
    D. Plaintiffs' Additional Issues Are Premature or Irrelevant..................................... 14
IV. CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Biax Corp. v. Nvidia Corp.*,
  271 F.R.D. 200 (D. Colo. 2010) .......................................................................................... 13

*Capitol Records, Inc. v. MP3tunes, LLC*,
  261 F.R.D. 44 (S.D.N.Y. 2009) .......................................................................................... 10

*Cross Atl. Partners, Inc. v. Facebook, Inc.*,
  No. 2:07-CV-02768 (E.D. Pa.) ........................................................................................... 8-9

*Hartley Pen Co. v. U.S. Dist. Court*,
  287 F.2d 324 (9th Cir. 1961) ............................................................................................... 7

*Leader Techs., Inc. v. Facebook, Inc.*,
  No. C10-80028 (N.D. Cal.) ............................................................................................... 8, 9

*Leader Techs., Inc. v. Facebook, Inc.*,
  No. 08-862-JJF (D. Del.) ...................................................................................................... 9

*Oracle USA, Inc. v SAP AG*,
  264 F.R.D. 541 (N.D. Cal. 2009) ........................................................................................ 10

*Romero v. Allstate Ins. Co.*,
  271 F.R.D. 96 (E.D. Pa. 2010) ............................................................................................ 10

*Synopsys, Inc. v. Nassda Corp.*,
  No. C 01-2519 SI, 2002 WL 32749138 (N.D. Cal. Sept. 16, 2002) ................................. 7-8

**STATUTES**

Federal Rules of Civil Procedure
  23 ......................................................................................................................................... 14
  34(b)(2)(E)(ii) ............................................................................................................... 11, 12

## I. INTRODUCTION

This unnecessary motion practice is the result of plaintiffs realizing they have no case on the merits and their need to manufacture phantom discovery issues as a distraction. Plaintiffs' motion to compel should be denied because their discovery demands serve no useful purpose in the litigation and would impose a risk of severe harm to Facebook. Plaintiffs' core allegation is that advertisers who advertised on Facebook's web site were somehow over-charged due to allegedly inadequate "click filtering" systems. Facebook's robust and proprietary click-filtering system is among the most sensitive aspects of its business, and inadvertent disclosure of how these click filters operate would harm not only Facebook but the entire community of advertisers who advertise through Facebook.

Given these circumstances, Facebook produced its most sensitive documents detailing the operation of its click filters through a secure online method known as "Watchdox." This production gives plaintiffs full access to the documents and simply restricts printing in order to prevent copies from being inadvertently disclosed to third parties. This protection makes great sense given the number of plaintiffs' counsel involved and the inherent risk of inadvertent disclosure presented by paper documents. Plaintiffs fail to identify any prejudice resulting from this form of production, which in no way restricts the ability of their counsel and experts to access and review Facebook's critically sensitive click-filtering documentation. Plaintiffs' demand for reproduction of these documents should be rejected.

Plaintiffs now also demand review of Facebook's computer source code, claiming it is indispensible to their case. But they provide no colorable basis for needing the source code that simply implements Facebook's click filters, as they already have the complete documentation explaining in detail how the click filters operate. Facebook's source code would add nothing to their understanding of the case beyond the substantial materials already provided.

In addition, plaintiffs seek to impose an "ESI Protocol" to dictate the form of production for all electronic discovery going forward. But they neglect to tell the Court that the parties have already reached agreement on the production format for the most significant categories of

1.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

OPPOSITION TO MOTION
TO COMPEL
C 09-03043 JF

documents and data in this case, including emails and click-related data (among other categories). To the extent additional issues arise in the future, Facebook is committed to working through those issues in good faith, as it has done throughout this case. Imposing plaintiffs' ESI protocol would do nothing but create inefficiencies and serve no useful purpose.

Plaintiffs' remaining issues fail for similar reasons. While plaintiffs complain that Facebook should be required to seek their permission before implementing search terms to identify responsive documents, there is no legal or factual basis to support this intrusive request. Indeed, plaintiffs fail to identify a single deficiency with the email production generated by Facebook's current search methodology, which spans over 110,000 pages of responsive material. And while plaintiffs make passing references to certain other ancillary discovery issues, these are unripe in light of prior and ongoing discussions, as further discussed below.

## II. BACKGROUND

### A. Overview Of The Case.

This case involves "pay-per-click" advertising arrangements in which advertisers place online advertisements on facebook.com and agree to pay Facebook on a per-click basis. Plaintiffs allege that Facebook misrepresented the quality of its "click filters," which are the systems that Facebook applies to screen out certain clicks that do not meet certain requirements so that they are not billed to advertisers.

### B. Procedural Background.

Plaintiffs served their First Requests for Production of Documents on February 18, 2010.[1] Since that date, the parties have litigated three rounds of motions to dismiss, which were not finally resolved until January 17, 2011.[2] Accordingly, the parameters of this case and the appropriate scope of discovery were set just three and a half weeks before plaintiffs filed this

---

[1] *See* accompanying Declaration of Peter M. Colosi In Support of Facebook's Opposition to Plaintiffs' Motion to Compel Documents ("Colosi Decl.") ¶ 3.

[2] On December 15, 2010, Judge Fogel ruled on the last of these motions, dismissing all claims relating to "fraudulent clicks" with leave to amend and allowing plaintiffs to proceed as to their claims for "invalid clicks." *See* Docket No. 135. Plaintiffs notified Facebook on January 17, 2011 that they would not seek to amend, opting instead to proceed exclusively on their claims for "invalid clicks." Colosi Decl. ¶ 4.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2.

OPPOSITION TO MOTION
TO COMPEL
C 09-03043 JF

1  motion.³  In March 2010, Judge Fogel allowed discovery to go forward but cautioned that only
2  "basic foundational discovery" should proceed pending resolution of Facebook's motions.⁴  Later,
3  Judge Fogel clarified that while he would not formally bifurcate discovery, the parties should
4  nonetheless focus their discovery efforts on class certification issues before merits-based
5  discovery.⁵  Despite these court-ordered discovery limitations and its pending motions to dismiss,
6  Facebook proceeded with discovery in good faith throughout 2010 to the present, as detailed
7  below.

### C. Facebook's Document Productions To Date.

Notwithstanding plaintiffs' claims of "obstructionist tactics,"⁶ the reality is that Facebook has attempted to accommodate plaintiffs' ever-changing and onerous demands and has already produced a large volume of materials, including the core documents needed for plaintiffs to evaluate the operation of Facebook's click filters.  In sum, Facebook has produced more than 130,000 pages of materials, including the following:

- **Click Filtering Documents**:  Facebook has produced the current and historical versions of its internal documentation that describes in detail the purpose and operation of the click filters implemented during the alleged class period.⁷

- **The Named Plaintiffs' Account Information**:  Facebook has produced information regarding the named plaintiffs' advertising accounts with Facebook and their communications with Facebook, if any.⁸

- **Click Data**: Facebook has produced detailed data on the clicks associated with the named plaintiffs' advertising accounts, which show exactly what clicks were

---

³ Docket No. 150, filed February 10, 2011, hereafter referenced as "Motion."
⁴ Transcript of March 5, 2010 Proceedings, Docket No. 62, at 23:23-25:3 (stating that "basic foundational discovery" should go forward).
⁵ Transcript of September 17, 2010 Proceedings, Docket No. 104, at 6:5-12 (stating "the focus [for discovery] should be on [class certification] issues rather than merit issues" and "there is a strong preference for focusing on certification issues").
⁶ Mot. at 2:4.
⁷ Colosi Decl. ¶¶ 10-16; accompanying Declaration of Thomas Carriero in Support of Facebook's Opposition to Plaintiffs' Motion to Compel Documents ("Carriero Decl.") ¶¶ 2 and 4.
⁸ Colosi Decl. ¶¶ 19-23.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3.

OPPOSITION TO MOTION
TO COMPEL
C 09-03043 JF

filtered and which specific click filters were applied. This data was extracted in its raw form. Plaintiffs have not identified any issues with this click data production.[9]

- **E-Mails**: Facebook has produced over 110,000 pages of responsive emails and documents from certain Facebook custodians as requested by plaintiffs[10]. Over 9,000 pages of these emails were produced on January 15, 2011, almost a month before plaintiffs' motion, yet plaintiffs make no mention of this in their briefing. The format of this email production conforms to plaintiffs' proposed "ESI Protocol"[11] and plaintiffs cannot identify any ongoing disputes regarding format.[12]

- **Other Documents From Facebook Custodians**: Facebook has also produced Word, PowerPoint, Excel and other documents in their native form or an equivalent and equally usable format. Excel documents were produced in native form (satisfying plaintiffs' proposed ESI protocol) and Word and Power Point documents were produced as fully searchable documents in TIFF format. Plaintiffs have not identified any problems with these documents.[13]

- **Materials Regarding the Web Pages At Issue**: Facebook has also produced materials regarding the current and historical versions of the web pages plaintiffs claim contained misleading statements. Plaintiffs have not noted any problems with the format of these productions.[14]

- **Customer Inquiries**: Facebook has produced over 18,000 pages of communications with advertisers on click quality issues. Due to the proprietary

---

[9] Colosi Decl. ¶¶ 24-25; Carriero Decl. ¶ 3. Facebook also provided a 30(b)(6) witness on data-related issues, who explained at length how to understand and interpret this data. Colosi Decl. ¶ 26.

[10] The custodians associated with these productions were selected based on plaintiffs' designation of the witnesses they wanted to prioritize for depositions. Colosi Decl. ¶¶ 27-30. Facebook has made clear in meet and confer discussions that it is willing to confer on additional custodians for production, but has not received a specific proposal from plaintiffs. *Id*. at ¶¶ 52-53.

[11] *See* Exhibit A to Declaration of Jonathon Shub ("Shub Decl."), Docket No. 150-2, filed February 10, 2011.

[12] Colosi Decl. ¶¶ 27-36.

[13] Colosi Decl. ¶¶ 37-38.

[14] Colosi Decl. ¶¶ 39-41. Facebook also provided a 30(b)(6) witness on these web-page-related issues. Colosi Decl. ¶ 42.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4.

OPPOSITION TO MOTION
TO COMPEL
C 09-03043 JF

system used to store the communications, native production would have rendered plaintiffs' review impossible so they were produced in a fully searchable PDF format.[15]

### III. ARGUMENT

#### A. The Court Should Not Compel Further Unnecessary Discovery On Facebook's Click Filtering Systems And Computer Source Code.

##### 1. Plaintiffs' Demands Relate To One of The Most Confidential and Sensitive Aspects of Facebook's Business.

Facebook's methods for filtering clicks are a critical component of its competitive advantage as a platform for online advertising. (Carriero Decl. ¶¶ 5, 7-8.) Facebook's proprietary systems are the result of multiple years of development and refinement by Facebook's engineers. (*Id.* ¶ 8.) Inadvertent disclosure of this highly sensitive information would have grave consequences for not only Facebook but all advertisers (large and small) who advertise on Facebook. (*Id.* ¶ 7.) If third-parties were able to access Facebook's internal materials related to its click filters, they could potentially circumvent the system to defraud or otherwise harm Facebook and its advertisers. (*Id.*) Moreover, disclosure would also allow competitors of Facebook to copy the systems that Facebook has developed for its own use at great effort and expense. (*Id.* ¶¶ 7-8.) To protect the confidentiality of this information, only Facebook employees who have signed confidentiality agreements under penalty of termination and legal action have access to these documents. (*Id.* ¶ 6.)

##### 2. Facebook's Production Via The Watchdox System Is Appropriate.

Given the extreme sensitivity of the information at issue, Facebook produced the filtering documentation through the Watchdox system. Watchdox is a secure online repository that allows sensitive information to be produced in a secure environment. (Colosi Decl. ¶ 10.) The documents on Watchdox can be reviewed online anytime and anywhere by authorized users without restriction. (*Id.*) The only aspect of the Watchdox system that differs from any other

---

[15] Colosi Decl. ¶¶ 43-46; Carriero Decl. ¶ 11. Because the information is stored in a proprietary format within Facebook, there is no feasible way to produce these communications in a native form as there would be no way for plaintiffs to create the software environment needed to load and review these documents in their native form. Colosi Decl. ¶ 46; Carriero Decl. ¶ 11.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5.

OPPOSITION TO MOTION
TO COMPEL
C 09-03043 JF

form of production is the restriction on printing of documents.[16] (*Id.*) This limitation is an appropriate and necessary safeguard against the risks that would inevitably arise if plaintiffs' representatives were allowed to make copies of Facebook's confidential materials without restriction. Indeed, the risks of inadvertent disclosure are heightened in this case given the large group of lawyers, experts, and other representatives working on this matter. (The docket for this matter lists no fewer than 17 plaintiffs' attorneys working on this case.) Under these circumstances, the modest constraints of the Watchdox system are an entirely appropriate safeguard against inadvertent disclosure of Facebook's trade secret information.

Apart from stating in conclusory terms that the Watchdox system is inconvenient and pointing out glitches that have already been addressed, plaintiffs do not articulate any actual prejudice from this method of production. Simply being required to review materials on a computer screen does not interfere in any way with plaintiffs' ability to access and review the documents at issue. Indeed, that is precisely how Facebook's own engineers access and review the click filtering documents internally. (Carriero Decl. ¶ 6.) And even if there were some minor inconvenience associated with reviewing documents online, those issues apply equally to all parties and reviewers in this case, and there is no unfair advantage gained by Facebook's production method. As confirmed in the supporting declarations hereto, Facebook's own counsel and consultants in this case are operating under the same constraints as plaintiffs, by working with Facebook's click filtering documents exclusively in electronic form without printing in hard copy. (Colosi Decl. ¶¶ 17-18.)

---

[16] While plaintiffs also complain in their Motion about certain minor glitches in the Watchdox system, Facebook has promptly addressed all of these issues as they have arisen. Colosi Decl. ¶ 16. For example, Facebook promptly renewed authorized access to certain reviewers and re-oriented how certain pages appeared on a screen to facilitate plaintiffs' review when plaintiffs raised these issues. *Id.* Plaintiffs also complain that the system allows their review to be tracked. But Facebook has never tracked information on which authorized users are reviewing documents on Watchdox and has disabled the feature of Watchdox that might allow such tracking. *Id.*

Plaintiffs also claim the documents on Watchdox are not searchable. Facebook produced all documents to Watchdox.com in searchable PDF format. Colosi Decl. ¶¶ 11-15. To the extent some of the produced documents were not searchable as of the date of the Motion, Facebook has worked with Watchdox system administrators to ensure that all documents are currently searchable. *Id.* ¶¶ 13-14.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6.

OPPOSITION TO MOTION
TO COMPEL
C 09-03043 JF

Plaintiffs contend that production via Watchdox violates the Stipulated Protective Order[17] in this case, but that Order does not purport to dictate that all discovery materials must be produced in physical hard copy. To the contrary, one provision in the Order contemplates the exact opposite, that certain materials produced in discovery must be maintained only in electronic form. Specifically, the Order states that "[i]t may be appropriate under certain circumstances to require the Receiving Party to store any electronic Protected Material[18] in password-protected form." (Order, at footnote 1 on page 8.) This requirement that electronic information be stored in password-protected form would make no sense if all information had to be physically produced in hard copy. While plaintiffs point to the use of the isolated term "copies" to claim that physical production was not "contemplated" by the Order, (Mot. at 13:18-22), that passing reference simply does not support plaintiffs' interpretation.

In sum, plaintiffs have offered no practical justification or authority to support their demand that Facebook's click filtering documentation be re-produced in a form stripped of reasonable and unobtrusive safeguards against disclosure.

### 3. Plaintiffs Have Failed To Meet The Heightened Burden to Compel The Production of Facebook's Source Code.

Under established standards, a party seeking trade secret materials like computer source code must show that the requested information is not only relevant but "necessary" to the party's ability to pursue its claims. *See, e.g., Hartley Pen Co. v. U.S. Dist. Court*, 287 F.2d 324, 328 (9th Cir. 1961) (denying motion to compel and stating that "[a] trade secret must and should be disclosed where upon a proper showing it is made to appear that such disclosure is relevant *and necessary* to the proper presentation of a plaintiff's or defendant's case") (emphasis added); *Synopsys, Inc. v. Nassda Corp.*, No. C 01-2519 SI, 2002 WL 32749138, at *1 (N.D. Cal. Sept. 16, 2002) (denying motion to compel production of additional source code in a patent case, stating that "[the requesting party] has the burden of establishing that the disclosure of the source code is

---

[17] *See* Docket No. 95, filed August 16, 2010 ("Order").
[18] "Protected Material" is defined as produced documents designated either "as 'CONFIDENTIAL' or as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY.'" Order at 3:12-13.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7.

OPPOSITION TO MOTION
TO COMPEL
C 09-03043 JF

*both relevant and necessary to the action*") (emphasis added).

Plaintiffs cannot meet this heightened burden of proof because the source code they are demanding would add nothing to their understanding of the issues in this case beyond the click filtering documentation already provided. In fact, plaintiffs admit that Facebook's existing production allows them "to draw hypotheses regarding the efficacy of every filter update and can even help identify the percentage of unfiltered invalid clicks in the periods directly before each filter update." (Declaration of Bryan Cockeram, Docket No. 150-1, at 2:26-3:1.) Nevertheless, plaintiffs ask the Court to compel an additional production of source code claiming "there is in fact no substitute for code review." (*Id*. at 3:1-2.) To support this incorrect assertion, plaintiffs' expert poses seven questions for which he claims the source code "would be an invaluable tool." (*Id*. at 3:18-27.) But these questions simply go to the general background circumstances regarding the development of Facebook's click filters (for example, plaintiffs claim they need to know "what caused [Facebook] to determine the current filter was inadequate"). The answers to these questions have nothing to do with the contents of the computer source code, which is simply the method by which Facebook has programmed its system. (Carriero Decl. ¶¶ 9-10.) Rather, the actual operation of the click filters (the types of clicks intended to be captured, the specific parameters for identifying the relevant clicks, etc.) is explained in the documentation that plaintiffs' counsel and experts already have (Carriero Decl. ¶ 4; Colosi Decl. ¶¶ 11-14), which was also the subject of a day-long 30(b)(6) deposition (Colosi Decl. ¶ 26). Far from being "necessary" to this case, the source code would add nothing.

Indeed, plaintiffs' cited authorities actually highlight why their demands for source code are improper in the context of this case. As plaintiffs point out, Facebook has produced source code in certain other litigations, specifically *Cross Atl. Partners, Inc. v. Facebook, Inc.*, No. 07-CV-02768 (E.D. Pa.) and *Leader Technologies, Inc. v. Facebook, Inc.*, No. C10-80028 MISC JW (HRL) (N.D. Cal.). However, both of those cases are software patent cases where the core issue in dispute is the functionality of Facebook's source code and there was no record to show that the issues in dispute could be litigated using other alternative sources of information. *See Cross Atl.*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8.

OPPOSITION TO MOTION
TO COMPEL
C 09-03043 JF

*Partners, Inc. v. Facebook, Inc.*, No. 2:07-CV-02768, at *3, Docket No. 53 (E.D. Pa. Dec. 20, 2007) ("[Facebook's] source code is relevant to determining a full understanding of how [Facebook's] software operates, which may lead to evidence of alleged infringement."); *see also Leader Techs., Inc. v. Facebook, Inc.*, No. C10-80028 MISC JW (HRL), 2010 WL 761296, at *1 (N.D. Cal. Mar. 2, 2010) ("LTI claims that Facebook willfully infringes U.S. Patent No. 7,139,761 B2"). Here, plaintiffs allege that Facebook misled certain advertisers about the quality of its advertising platform. The statements at issue (and the historical versions thereof) have already been disclosed, as has the documentation that explains Facebook's click filtering systems and the data showing how those filters were applied to the plaintiffs' advertisements. There is simply no need to engage in the additional expense and burden of producing source code in this case, as it adds nothing and would require modification of the protective order to add another tier of protection for source code review.

In the event the Court deems the source code to be discoverable, Facebook requests that the Court modify the Order in this case to clarify that the production of source code must proceed under the protections contemplated in the Northern California District Court Stipulated Protective Order For Litigation Involving Patents, Highly Sensitive Confidential Information And/Or Trade Secrets.[19] Specifically, Facebook would request that any production of source code be produced in a manner consistent with the *Leader* case that plaintiffs rely on, in which source code was made available only on a standalone computer accessed at a location designated by Facebook's counsel. *See* section 8 of the Stipulated Protective Order for *Leader Techs., Inc. v. Facebook, Inc.*, No. 08-862-JJF (D. Del.), docket No. 35, filed April 28, 2009, attached hereto as Exhibit A to Colosi Decl.

### B. An "ESI Protocol" Is Unnecessary Under The Circumstances.

Plaintiffs also ask the Court to force the parties to negotiate a master "ESI Protocol" to govern the form of production for all further electronic discovery in this case. (Mot. at 1:4-9 and 12:1-7.) While Facebook remains committed to meeting and conferring over discovery and

---

[19] Available at http://www.cand.uscourts.gov/pages/690.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9.

OPPOSITION TO MOTION
TO COMPEL
C 09-03043 JF

production issues in good faith – as it has since the case commenced – there is no support in the Federal Rules for imposing the rigid up-front requirements that plaintiffs are demanding. Indeed, plaintiffs' own authorities recognize nothing more than a general obligation for parties to meet and confer as discovery issues arise. (*See* Mot. at 7.) In none of plaintiffs' cited cases did the court require the parties to reach a master agreement on all discovery production issues up-front as a substitute for an ongoing meet and confer process.[20] Indeed, forcing the parties to try to anticipate and address all potential issues on the form of electronic production would likely have the result of frustrating and slowing down the discovery process.

In any case, an ESI protocol is unnecessary here because Facebook has timely resolved all of plaintiffs' issues (with the exception of the Watchdox, source code, and search term issues that will be resolved by way of this motion in any event). Plaintiffs' hyperbole aside[21], there is no actual dispute as to the form of production for the bulk of materials in this case, including:

- Click data (which was provided in a raw form that plaintiffs do not contest);

- E-mails (for which the parties have already reached agreement consistent with plaintiffs' proposed ESI protocol);

- Word, PowerPoint, and Excel documents (which Facebook has produced either in native or other fully searchable form)

- Current and historical versions of the disputed web pages at issue (which plaintiffs do not contest); and

- The named plaintiffs' account information (which Facebook has re-produced in searchable format)

While there may be new categories of documents and new discovery issues that arise in the

---

[20] *See Romero v. Allstate Ins. Co.,* 271 F.R.D. 96, 107-10 (E.D. Pa. 2010) (holding nothing more than that metadata must be included in productions of ESI); *Oracle USA, Inc. v SAP AG*, 264 F.R.D. 541, 543 (N.D. Cal. 2009) (never dealing with a discovery protocol and holding that plaintiffs could not introduce a new claim on the eve of trial, as doing so would require additional discovery at a very late stage in the litigation); *Capitol Records, Inc. v. MP3tunes, LLC*, 261 F.R.D. 44, 47-50 (S.D.N.Y. 2009) (never imposing a structured set of discovery deadlines for a production format going forward and merely ordering plaintiff to locate and produce documents generally). Nothing in these decisions should lead this Court to conclude that forcing the parties to come to agreement on an ESI protocol is superior to a meet and confer process.
[21] Contrary to Plaintiffs' claim that Facebook never engaged in discussions regarding the proposed ESI Protocol (Mot. at 8:14-15), Facebook more than once informed Plaintiffs that it would not bind itself to an agreement dictating the format of production but would meet and confer as appropriate on production issues as they arise. Colosi Decl. ¶¶ 47-48.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10.

OPPOSITION TO MOTION
TO COMPEL
C 09-03043 JF

future, there is no way that an ESI protocol can address in advance these sorts of unanticipated issues. The only feasible way to address such future issues is for the parties to confer as the need arises, which Facebook has done and remains committed to doing. Imposing a strict ESI protocol on the parties at this juncture would serve no useful purpose and will invariably lead to more disputes about what such a protocol may or may not mean.[22]

Indeed, plaintiffs' proffered reasons for imposing an ESI protocol actually demonstrate why a protocol is unnecessary. First, plaintiffs argue that the Court should order "Facebook to produce (or re-produce) documents in searchable form and in native format except when doing so is not feasible." (Mot. at 9.)[23] But that is precisely what Facebook has *already done*. As discussed, *all* documents have now been produced in a searchable form. (Colosi Decl. ¶ 8.) The only documents that plaintiffs correctly identify in their motion as not being initially searchable are the few documents that comprise the basic account information of the named plaintiffs. (Mot. at 4:14-17 and 5:16-19.)[24] These documents amounted to just 0.2% of Facebook's total document production at the time of plaintiffs' Motion and just under 0.05% of the current total production of over 130,000 pages. (Colosi Decl. ¶ 21.) In any case, Facebook has reproduced the documents in searchable format, making this a complete non-issue.[25]

Plaintiffs also complain that Facebook's production of inquiries from advertisers

---

[22] Plaintiffs' statement that none of the 29,948 documents produced at the time of the Motion conformed with the proposed ESI protocol is patently false. *See* Shub Decl. 5:22-23. Indeed, Facebook informed Plaintiffs that each of the 9,646 pages produced on January 15, 2011, conformed with that protocol. Colosi Decl. ¶¶ 9, 35. As of today, just under 85% of all pages produced in discovery conform with the protocol. *Id.* ¶ 9.
[23] There is no support for plaintiffs contention that documents must be produced in native format except when it is "not feasible" to do so. To the contrary, documents need only be produced in "a reasonably usable form." Fed. R. Civ. Proc. 34(b)(2)(E)(ii). Indeed, plaintiffs' cited case law stands for nothing more than that the producing party cannot take ordinarily searchable ESI and convert to non-searchable productions. *See* Mot. at 9:9-10:13. Here, Facebook has either produced or reproduced all files in searchable form. Colosi Decl. ¶ 8.
[24] Plaintiffs' Motion and the accompanying Shub Decl. repeatedly mischaracterize Facebook's productions by stating either "all" or "the vast majority" of them were produced in non-searchable format. Mot. at 9:5-8; 11:19-20; Shub Decl. ¶ 20. In fact, as of the date of the Motion, only 2,108 pages out of 29,956 were non-searchable. Colosi Decl. ¶ 8. Facebook has since reproduced all images in searchable form or resolved all technical issues with the Watchdox system which prevented searchability. *Id.*
[25] Notably, Plaintiffs never attempted to meet and confer regarding this account information and never raised the issue of searchability until doing so in their Motion.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11.

OPPOSITION TO MOTION
TO COMPEL
C 09-03043 JF

regarding click filtering issues is "unusable" because it represents a "static copy of a dynamic document." (Mot. at 11:5.) It is unclear what plaintiffs mean by this or how stored correspondence is somehow "dynamic." Plaintiffs have the complete correspondence with advertisers with the exception of the redaction of certain private information about its advertisers (names, e-mail addresses, account numbers, etc.) that was redacted to protect the privacy of advertisers. (Colosi Decl. ¶¶ 43-45.) The redaction of this private information does not impact in any way the searchability of the document or otherwise impair plaintiffs' ability to review the communications reflected in the document. Nor would imposing an ESI Protocol have allowed Facebook to divulge private information that plaintiffs have no need for in this case.

In short, there is no need for an ESI Protocol when the current production issues have already been resolved by agreement or will be resolved by this Motion, and Facebook remains committed to meeting and conferring in good faith as any additional issues arise.[26]

### C. Facebook Is Under No Obligation to Disclose Its Internal Search Process For Collecting and Producing Documents.

Plaintiffs ask the Court to compel Facebook to seek prior consent from plaintiffs in connection with the search terms to be used in Facebook's collection and production of emails and documents. (Mot. at 12:1-5.) Plaintiffs cite no authority that would support this unusual demand (other than the Sedona Conference's general, non-binding advice on cooperation in discovery). (Mot. at 8:3-4.)

Significantly, plaintiffs fail to identify any perceived gaps or other deficiencies with Facebook's production that could possibly warrant their demand for judicial intervention of Facebook's internal discovery procedures. In fact, plaintiffs had over 9,000 pages of emails in their possession as of January 15, 2010, approximately three weeks before the filing of their

---

[26] Plaintiffs also claim they can impose their ESI Protocol because they specified "the manner of production" in their Requests. (Mot. at 8:16-18.) This is false. Plaintiffs' Requests did not list any specific form of production but rather stated only that "ESI shall be produced in a form agreed to by the parties in an ESI Protocol." (*See* Exhibit B to Shub Decl.). Under these circumstances, the Federal Rules make clear that Facebook is only required to produce ESI "in a form or forms in which it is ordinarily maintained or in a reasonably usable form," which Facebook has complied with as set forth herein. Fed. R. Civ. Proc. 34(b)(2)(E)(ii).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12.

OPPOSITION TO MOTION
TO COMPEL
C 09-03043 JF

Motion. (Colosi Decl. ¶ 27.) Yet they fail to identify any issues that might call into question the sufficiency of Facebook's search process for identifying responsive emails and documents.

The circumstances of this case thus bear no resemblance to the rare instances in which some courts have exercised supervision over the search terms used to collect electronic discovery. For example, in *Biax Corp. v. Nvidia Corp.*, 271 F.R.D. 200, 203-04 (D. Colo. 2010), the plaintiff showed that the defendant's production of a mere 38 documents could not possibly be the complete set of responsive documents. Based on that record, the court ordered both parties to provide "a proposed list of discrete search terms" to be used to augment the production and asked the parties to provide "a proposed cost-sharing agreement for the hefty cost of searching electronic discovery." *Id*. at 205. Here, plaintiffs are asking for similar relief but without proposing any cost sharing or identifying a single problem with Facebook's production to suggest that Facebook's existing search methodology is somehow inadequate.

To the contrary, Facebook and its counsel took diligent steps to ensure that the search terms employed addressed the issues raised in plaintiffs' requests. After initially conferring with plaintiffs' counsel to better understand the scope of their requests, Facebook's counsel reviewed an initial set of key documents to craft the search terms and phrases that would best capture the issues in this case. (Colosi Decl. ¶ 49.) The result of this effort was a search protocol that contained 29 searches with 42 unique search terms implemented using boolean search capability. (*Id*.) These searches were then run on the electronic documents of eight relevant custodians, resulting in a set of over 100,000 documents for initial review. (*Id*. ¶ 50.) Each page of those roughly 100,000 documents was reviewed by counsel for responsiveness to plaintiffs' discovery requests, resulting in the current production of over 21,000 documents spanning over 110,000 pages of emails and other documents. (*Id*. ¶¶ 50-51.) These results make clear that the search terms used by Facebook were over-inclusive and erred on the side of a more expansive review of potentially responsive documents than otherwise needed.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13.

OPPOSITION TO MOTION
TO COMPEL
C 09-03043 JF

### D. Plaintiffs' Additional Issues Are Premature or Irrelevant.

#### 1. Facebook Has Attempted to Meet and Confer Regarding Review and Production from Additional Relevant Custodians.

Plaintiffs ask this Court to order "Facebook to meet and confer in an effort to reach agreement on . . . [those] custodians" to be included in Facebook's production. (Mot. at 1:4-6.) This request is bizarre because Facebook has repeatedly asked plaintiffs for the same thing. For example, on January 29, 2011, Facebook stated its willingness "to meet and confer regarding additional custodians if [plaintiffs] have a good-faith basis for their addition." (Colosi Decl. ¶ 52.) Plaintiffs, however, refused to meet and confer in response to these repeated overtures, instead taking the blanket position that it is Facebook's burden to "produce all internal communications." (*Id*. ¶ 53.) Facebook remains willing to discuss additional custodians. In the meantime, given plaintiffs' own refusal to meet and confer, this issue is premature and no judicial intervention is warranted at this time.

#### 2. Monthly Transaction Data Relating to The Number of CPC Advertisers and The Number of Clicks.

These last categories of demands in plaintiffs' motion are non-issues. Plaintiffs' Request for Production No. 1 presumes there are documents sufficient to "identify the number of CPC advertising customers that contracted with you per month for CPC advertising placement on your website." As Facebook has explained, there are various issues that prevent Facebook from generating an accurate record of the total number of CPC advertisers for historical time periods and so there are no existing documents that comprehensively address the Request as framed.[27] To address this issue, Facebook has previously offered to provide current snapshots of the number of U.S.-based CPC advertisers on given dates. (Colosi Decl. ¶ 55.) Facebook also agreed to consider a stipulation on numerosity for Rule 23 purposes, to address plaintiffs' position that this information is needed to address class certification issues. (*Id*. ¶ 56.) Although plaintiffs did not respond to these offers, Facebook remains open to conferring on these issues to reach a compromise that would avoid further burdening the Court. Similarly, with respect to data on the

---

[27] *See* Colosi Decl. ¶ 54.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14.

OPPOSITION TO MOTION
TO COMPEL
C 09-03043 JF

overall number of clicks, Facebook has also agreed to confer with plaintiffs to determine an appropriate scope and form for production.

## IV. CONCLUSION

For the foregoing reasons, Facebook respectfully requests that the Court deny plaintiffs' Motion in its entirety.

Dated: March 1, 2011

COOLEY LLP
MICHAEL G. RHODES (116127)
WHITTY SOMVICHIAN (194463)
PETER M. COLOSI (252951)

/s/ Whitty Somvichian
Whitty Somvichian (194463)

Attorneys for Defendant
FACEBOOK, INC.

1211637 v1/SF

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15.

OPPOSITION TO MOTION
TO COMPEL
C 09-03043 JF