# Exhibit J

RECEIVED
AUG 1 1 2011

1 | Jonathan Shub (SBN 237708)
jshub@seegerweiss.com
2 | **SEEGER WEISS LLP**
1515 Market Street, Suite 1380
3 | Philadelphia, PA 19102
Telephone: (215) 564-2300
4 | Facsimile: (215) 851-8029

5 | Rosemary M. Rivas (SBN 209147)          J. Paul Gignac (SBN 125676)
6 | rrivas@finkelsteinthompson.com          j.paul@aogllp.com
**FINKELSTEIN THOMPSON LLP**           **ARIAS OZZELLO & GIGNAC LLP**
7 | 100 Bush Street, Suite 1450             115 S. La Cumbre Lane, Suite 300
San Francisco, California 94104          Santa Barbara, California 93105
8 | Telephone: (415) 398-8700              Telephone: (805) 683-7400
Facsimile: (415) 398-8704               Facsimile:  (805) 683-7401
9 |
10 | *Interim Co-Lead Class Counsel*          *Interim Liaison Class Counsel*

11 |                      UNITED STATES DISTRICT COURT
12 |                     NORTHERN DISTRICT OF CALIFORNIA
13 |
14 |                              SAN JOSE DIVISION

15 | In re FACEBOOK PPC Advertising Litigation   | Master Case No. C 09-03043 JF
16 |                                              | **PLAINTIFFS' OBJECTIONS AND**
                                                  **RESPONSES TO DEFENDANT FACEBOOK,**
17 | This Document relates To:                    | **INC.'S SECOND SET OF**
                                                  **INTERROGATORIES**
18 |     All Actions.                             |
19 |                                              | The Honorable Jeremy D. Fogel
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |

1    Plaintiffs RootZoo, Inc., Fox Test Prep, and Steven Price (collectively, "Plaintiffs")

2    respond to Defendant Facebook, Inc.'s ("Defendant") Second Set of Interrogatories, served on

3    Plaintiffs' attorneys on July 1, 2011, subject to the accompanying objections, without waiving,

4    and expressly preserving, all such objections.  Plaintiffs also respond subject to, without

5    intending to waive, and expressly preserving: (a) any objections as to relevance, privilege, and

6    admissibility of documents or information provided; and (b) the right to object to other discovery

7    procedures involving or relating to the subject matter of Defendant's requests.

8         Plaintiffs respond and object based on Plaintiffs' attorneys' understanding of Defendant's

9    language.  Where it may be found that something was intended to be construed differently from

10   their interpretation, Plaintiffs reserve the right to amend Plaintiffs' responses and objections.

11        Plaintiffs' factual investigation and legal analysis is ongoing and these responses and

12   objections are without prejudice to later amendment and supplementation.  Defendant has not yet

13   fully produced documents and information (or otherwise given complete discovery).  Indeed,

14   Defendant produced documents as recently as July 27, 2011.  Plaintiffs' discovery, investigation,

15   and preparation for trial are ongoing and continuing as of the date of these responses.  Plaintiffs

16   reserve the right to continue discovery and investigation of facts, witnesses, and supplemental

17   information that may reveal information which, if presently within Plaintiffs' knowledge, would

18   have been included in these responses.  Plaintiffs reserve the right to present additional

19   information as may be disclosed through continuing discovery and investigation.  By this

20   reservation, Plaintiffs do not assume a continuing responsibility to update these responses (the

21   present responses only cover information received until the date of service of these responses).

22                              **GENERAL OBJECTIONS**

23        All of the general Objections below are incorporated into each of the individual responses

24   and have the same force and effect as if fully set forth therein.  Plaintiffs object to Defendant's

25   Interrogatories to the extent that:

26

27

PLAINTIFFS' OBJECTIONS AND RESPONSES TO
DEFENDANT'S SECOND SET OF INTERROGATORIES
CV 09-03043

1      1.      Defendant's definitions and instructions seek to impose obligations that exceed or

2   differ from the requirements of the Federal Rules of Civil Procedure.

3      2.      They seek to require responses or supplemental responses beyond the scope

4   and/or requirements of the Federal Rules of Civil Procedure.

5      3.      They contravene the limits on the number of questions in any court orders, local

6   rules, or the Federal Rules of Civil Procedure.

7      4.      They seek to establish or imply a waiver of Plaintiffs' right to challenge the

8   relevancy, materiality, or admissibility of the documents or information provided by Plaintiffs, or

9   to object to the use of documents or information in any subsequent proceeding or trial.  In

10   responding, Plaintiffs do not waive the right to challenge the relevancy, materiality, and/or

11   admissibility of the documents or information provided by Plaintiffs, or to object to the use of

12   the documents or information in any later proceeding or trial.

13      5.      They call for legal conclusions or premature expert discovery.

14      6.      They seek disclosure of documents, communications, information, and things

15   protected by the attorney-client privilege or that constitutes attorney work-product/trial

16   preparation materials or any other privileged documents or information, as well as documents or

17   information that were compiled or prepared at the request and direction of counsel in anticipation

18   of, or in conjunction with, litigation that are protected by the attorney work-product doctrine;

19   items and information obtained by Plaintiffs' attorneys that involve their professional skill and

20   experience; legal research, including delegated research—which includes research or

21   investigation by Plaintiffs' attorneys, or by persons hired by Plaintiffs' attorneys and acting

22   under their supervision; strategic litigation planning, mental impressions (or documents

23   reflecting such planning or impressions); and documents gathered by Plaintiffs' attorneys while

24   researching issues in this case.  Further, it would also be unduly burdensome and oppressive to

25   search for, compile, and make a description of the nature of each such document,

26   communication, etc.

27

PLAINTIFFS' OBJECTIONS AND RESPONSES TO
DEFENDANT'S SECOND SET OF INTERROGATORIES
CV 09-03043

1       7.     They seek documents or information within the exclusive possession, custody or

2  control of Defendant.

3       8.     They seek documents or information contained in the pleadings and other papers

4  filed in this action.

## SPECIFIC OBJECTIONS AND RESPONSES TO DEFENDANT'SINTERROGATORIES

5

6  **INTERROGATORY NO. 21:**

7       DESCRIBE all click filters, limits, or other measures that YOU contend Facebook should

8  have implemented to conform with INDUSTRY STANDARDS.

9  **RESPONSE TO INTERROGATORY NO. 21**

10       Plaintiffs object to this Interrogatory as vague and ambiguous.  Plaintiffs also object to

11  this Interrogatory on the grounds that it is duplicative.  Plaintiffs further object to this

12  Interrogatory to the extent that it prematurely seeks expert discovery and/or information

13  protected by the attorney-client privilege and/or the work product doctrine. *See Hickman v.*

14  *Taylor*, 329 U.S. 495, 516 (1947) ("Discovery was hardly intended to enable a learned profession

15  to perform its functions either without wits or on wits borrowed from the adversary."); *see also*

16  *Upjohn Co. v. U.S.*, 449 U.S. 383, 385 (same).  Plaintiffs further object to this Interrogatory as a

17  premature contention interrogatory.  Courts have routinely found that requiring responses to

18  contention discovery at an early stage of the discovery process is neither necessary nor wise.  As

19  Judge Brazil observed in *In re Convergent Technologies Sec. Litig.*, 108 F.R.D. 328, 332 (N.D.

20  Cal. 1985), "[T]here is substantial reason to believe that the early knee jerk filing of sets of

21  contention interrogatories that systematically track all the allegations in an opposing party's

22  pleadings is a serious form of discovery abuse.  Such comprehensive sets of contention

23  interrogatories can be almost mindlessly generated, can be used to impose great burdens on

24  opponents, and can generate a great deal of counterproductive friction between parties and

25  counsel.  Moreover, at least in cases where defendants presumably have access to most of the

26  evidence about their own behavior, it is not at all clear that forcing plaintiffs to answer these

27

1   kinds of questions, early in the pretrial period, is sufficiently likely to be productive to justify

2   the burden that responding can entail." 108 F.R.D. at 337–338. *Accord, Nestlé Foods Corp. v.*

3   *Aetna Cas. and Sur. Co.*, 135 F.R.D. 101, 110–111 (D.N.J. 1990) ("This Court agrees that

4   judicial economy as well as efficiency for the litigants dictate that contention interrogatories are

5   more appropriate after a substantial amount of discovery has been conducted."); *Leksi, Inc. v.*

6   *Federal Ins. Co.*, 129 F.R.D. 99, 107 (D.N.J. 1989) (same). Subject to these General and

7   Specific Objections, Plaintiffs respond as follows: Plaintiffs incorporate by reference their

8   Supplemental Response No. 11 to Facebook's First Set of Interrogatories as is fully set forth

9   herein. In addition, Facebook failed to operate its click filtering system in accordance with

10  industry standards in at least the following manner:

**REDACTED**

11

12

13

14

15

16

17

18  **INTERROGATORY NO. 22:**

19      Define "legitimate clicks" as YOU use that term in the SUPPLEMENTAL RESPONSES.

20  **RESPONSE TO INTERROGATORY NO. 22**

21      Plaintiffs object to this Interrogatory on the grounds that it is vague, ambiguous and

22  duplicative. Plaintiffs further object to this Interrogatory to the extent that it prematurely seeks

23  expert discovery and/or information protected by the attorney-client privilege and/or the work

24  product doctrine. *See Hickman v. Taylor*, 329 U.S. 495, 516 (1947) ("Discovery was hardly

25  intended to enable a learned profession to perform its functions either without wits or on wits

26  borrowed from the adversary."); *see also Upjohn Co. v. U.S.*, 449 U.S. 383, 385 (same).

27

1  Plaintiffs further object to this Interrogatory as a premature contention interrogatory.  Courts

2  have routinely found that requiring responses to contention discovery at an early stage of the

3  discovery process is neither necessary nor wise.  As Facebook readily concedes, it has produced

4  documents for a limited number of custodians although there are literally dozens of custodians

5  that have relevant documents that not yet been produced.   As Judge Brazil observed in *In re*

6  *Convergent Technologies Sec. Litig.*, 108 F.R.D. 328, 332 (N.D. Cal. 1985), "[T]here is

7  substantial reason to believe that the early knee jerk filing of sets of contention interrogatories

8  that systematically track all the allegations in an opposing party's pleadings is a serious form of

9  discovery abuse.  Such comprehensive sets of contention interrogatories can be almost

10  mindlessly generated, can be used to impose great burdens on opponents, and can generate a

11  great deal of counterproductive friction between parties and counsel.  Moreover, at least in cases

12  where defendants presumably have access to most of the evidence about their own behavior, it is

13  not at all clear that forcing plaintiffs to answer these kinds of questions, early in the pretrial

14  period, is sufficiently likely to be productive to justify  the burden that responding can entail."

15  108 F.R.D. at 337–338.  *Accord, Nestlé Foods Corp. v. Aetna Cas. and Sur. Co.*, 135 F.R.D. 101,

16  110–111 (D.N.J. 1990) ("This Court agrees that judicial economy as well as efficiency for the

17  litigants dictate that contention interrogatories are more appropriate after a substantial amount of

18  discovery has been conducted."); *Leksi, Inc. v. Federal Ins. Co.*, 129 F.R.D. 99, 107 (D.N.J.

19  1989) (same).  Subject to these general and specific objections, Plaintiffs respond as follows:  the

20  term "legitimate" (or "valid" ) means any click that satisfies industry-standard rules-based

21  algorithmic characteristics or conditions.

22  **INTERROGATORY NO. 23**

23  For each of the alleged "deficiencies" in Facebook's click filtration system identified in

24  the SUPPLEMENTAL RESPONSES, state all facts supporting YOUR contention that the

25  NAMED PLAINTIFFS were overcharged or otherwise impacted by those alleged "deficiencies."

26

27

PLAINTIFFS' OBJECTIONS AND RESPONSES TO
DEFENDANT'S SECOND SET OF INTERROGATORIES
CV 09-03043

**RESPONSE TO INTERROGATORY NO. 23**

      Plaintiffs object to this Interrogatory on the grounds that it is vague, ambiguous and duplicative.  Plaintiffs further object to this Interrogatory to the extent that it prematurely seeks expert discovery and/or information protected by the attorney-client privilege and/or the work product doctrine.  *See Hickman v. Taylor*, 329 U.S. 495, 516 (1947) ("Discovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary."); *see also Upjohn Co. v. U.S.*, 449 U.S. 383, 385 (same).  Plaintiffs further object to this Interrogatory as a premature contention interrogatory.  Courts have routinely found that requiring responses to contention discovery at an early stage of the discovery process is neither necessary nor wise.  As Facebook readily concedes, it has produced documents for a limited number of custodians although there are literally dozens of custodians that have relevant documents that not yet been produced.  As Judge Brazil observed in *In re Convergent Technologies Sec. Litig.*, 108 F.R.D. 328, 332 (N.D. Cal. 1985), "[T]here is substantial reason to believe that the early knee jerk filing of sets of contention interrogatories that systematically track all the allegations in an opposing party's pleadings is a serious form of discovery abuse.  Such comprehensive sets of contention interrogatories can be almost mindlessly generated, can be used to impose great burdens on opponents, and can generate a great deal of counterproductive friction between parties and counsel.  Moreover, at least in cases where defendants presumably have access to most of the evidence about their own behavior, it is not at all clear that forcing plaintiffs to answer these kinds of questions, early in the pretrial period, is sufficiently likely to be productive to justify  the burden that responding can entail."  108 F.R.D. at 337–338.  *Accord, Nestlé Foods Corp. v. Aetna Cas. and Sur. Co.*, 135 F.R.D. 101, 110–111 (D.N.J. 1990) ("This Court agrees that judicial economy as well as efficiency for the litigants dictate that contention interrogatories are more appropriate after a substantial amount of discovery has been conducted."); *Leksi, Inc. v. Federal Ins. Co.*, 129 F.R.D. 99, 107 (D.N.J. 1989) (same).  Plaintiffs will respond to this Interrogatory after Facebook has produced all documents responsive to Plaintiffs' Requests for Production of Documents.

1  **INTERROGATORY NO. 24**

2      State all facts supporting YOUR contention that each, some, all, or any of the click

3  filters, limits, or other measures identified in the document at Bates range FBCPC 000067-

4  000076 is or was deficient.

5  **RESPONSE TO INTERROGATORY NO. 24**

6      Plaintiffs object to this Interrogatory on the grounds that the term "deficient" is vague,

7  and ambiguous.. Plaintiffs further object to this Interrogatory to the extent that it prematurely

8  seeks expert discovery and/or information protected by the attorney-client privilege and/or the

9  work product doctrine. *See Hickman v. Taylor*, 329 U.S. 495, 516 (1947) ("Discovery was

10  hardly intended to enable a learned profession to perform its functions either without wits or on

11  wits borrowed from the adversary."); *see also Upjohn Co. v. U.S.*, 449 U.S. 383, 385 (same).

12  Plaintiffs further object to this Interrogatory as a premature contention interrogatory. Courts

13  have routinely found that requiring responses to contention discovery at an early stage of the

14  discovery process is neither necessary nor wise. As Facebook readily concedes, it has produced

15  documents for a limited number of custodians although there are literally dozens of custodians

16  that have relevant documents that not yet been produced.  As Judge Brazil observed in *In re*

17  *Convergent Technologies Sec. Litig.*, 108 F.R.D. 328, 332 (N.D. Cal. 1985), "[T]here is

18  substantial reason to believe that the early knee jerk filing of sets of contention interrogatories

19  that systematically track all the allegations in an opposing party's pleadings is a serious form of

20  discovery abuse.  Such comprehensive sets of contention interrogatories can be almost

21  mindlessly generated, can be used to impose great burdens on opponents, and can generate a

22  great deal of counterproductive friction between parties and counsel.  Moreover, at least in cases

23  where defendants presumably have access to most of the evidence about their own behavior, it is

24  not at all clear that forcing plaintiffs to answer these kinds of questions, early in the pretrial

25  period, is sufficiently likely to be productive to justify  the burden that responding can entail."

26  108 F.R.D. at 337–338. *Accord, Nestlé Foods Corp. v. Aetna Cas. and Sur. Co.*, 135 F.R.D. 101,

27

110–111 (D.N.J. 1990) ("This Court agrees that judicial economy as well as efficiency for the litigants dictate that contention interrogatories are more appropriate after a substantial amount of discovery has been conducted."); *Leksi, Inc. v. Federal Ins. Co.*, 129 F.R.D. 99, 107 (D.N.J. 1989) (same).  Plaintiffs will respond to this Interrogatory after Facebook has produced all documents responsive to Plaintiffs' Requests for Production of Documents.

**INTERROGATORY NO. 25**

For each of the "deficiencies" in Facebook's click filtration system identified in the SUPPLEMENTAL RESPONSES, state whether YOU contend that the "deficiency" led to alleged charges to putative class members for (i) INVALID clicks, (ii) FRAUDULENT clicks, or (iii) both INVALID and FRAUDULENT clicks, and state all facts that support YOUR contention.

**RESPONSE TO INTERROGATORY NO. 25**

Plaintiffs object to this Interrogatory on the grounds that the term "fraudulent" is vague and ambiguous., Plaintiffs further object to this Interrogatory on the grounds that it is overbroad and duplicative and contains numerous sub-parts exceeding the number of interrogatories permitted under the Federal Rules of Civil Procedure.  Plaintiffs further object to this Interrogatory to the extent that it prematurely seeks expert discovery and/or information protected by the attorney-client privilege and/or the work product doctrine.  *See Hickman v. Taylor*, 329 U.S. 495, 516 (1947) ("Discovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary."); *see also Upjohn Co. v. U.S.*, 449 U.S. 383, 385 (same).  Plaintiffs further object to this Interrogatory as a premature contention interrogatory.  Courts have routinely found that requiring responses to contention discovery at an early stage of the discovery process is neither necessary nor wise.  As Judge Brazil observed in *In re Convergent Technologies Sec. Litig.*, 108 F.R.D. 328, 332 (N.D. Cal. 1985), "[T]here is substantial reason to believe that the early knee jerk filing of sets of contention interrogatories that systematically track all the allegations in an opposing party's

1   pleadings is a serious form of discovery abuse. Such comprehensive sets of contention

2   interrogatories can be almost mindlessly generated, can be used to impose great burdens on

3   opponents, and can generate a great deal of counterproductive friction between parties and

4   counsel. Moreover, at least in cases where defendants presumably have access to most of the

5   evidence about their own behavior, it is not at all clear that forcing plaintiffs to answer these

6   kinds of questions, early in the pretrial period, is sufficiently likely to be productive to justify

7   the burden that responding can entail." 108 F.R.D. at 337–338. *Accord, Nestlé Foods Corp. v.*

8   *Aetna Cas. and Sur. Co.*, 135 F.R.D. 101, 110–111 (D.N.J. 1990) ("This Court agrees that

9   judicial economy as well as efficiency for the litigants dictate that contention interrogatories are

10   more appropriate after a substantial amount of discovery has been conducted."); *Leksi, Inc. v.*

11   *Federal Ins. Co.*, 129 F.R.D. 99, 107 (D.N.J. 1989) (same).

12   **INTERROGATORY NO. 26**

13       State all facts supporting each of the contentions YOU made in Paragraphs 10, 11, 44, 50,

14   and 62 of the SECOND AMENDED COMPLAINT.

15   **RESPONSE TO INTERROGATORY NO. 26**

16       Plaintiffs object to this Interrogatory on the grounds that it is vague, ambiguous and

17   duplicative. Plaintiff also object to this Interrogatory on the grounds that it exceeds the number

18   of interrogatories permitted by the Federal Rules of Civil Procedure. Plaintiffs further object to

19   this Interrogatory to the extent that it prematurely seeks expert discovery and/or information

20   protected by the attorney-client privilege and/or the work product doctrine. *See Hickman v.*

21   *Taylor*, 329 U.S. 495, 516 (1947) ("Discovery was hardly intended to enable a learned profession

22   to perform its functions either without wits or on wits borrowed from the adversary."); *see also*

23   *Upjohn Co. v. U.S.*, 449 U.S. 383, 385 (same). Plaintiffs further object to this Interrogatory as a

24   premature contention interrogatory. Courts have routinely found that requiring responses to

25   contention discovery at an early stage of the discovery process is neither necessary nor wise. As

26   Judge Brazil observed in *In re Convergent Technologies Sec. Litig.*, 108 F.R.D. 328, 332 (N.D.

27

Cal. 1985), "[T]here is substantial reason to believe that the early knee jerk filing of sets of

contention interrogatories that systematically track all the allegations in an opposing party's

pleadings is a serious form of discovery abuse.  Such comprehensive sets of contention

interrogatories can be almost mindlessly generated, can be used to impose great burdens on

opponents, and can generate a great deal of counterproductive friction between parties and

counsel.  Moreover, at least in cases where defendants presumably have access to most of the

evidence about their own behavior, it is not at all clear that forcing plaintiffs to answer these

kinds of questions, early in the pretrial period, is sufficiently likely to be productive to justify

the burden that responding can entail." 108 F.R.D. at 337–338. *Accord, Nestlé Foods Corp. v.*

*Aetna Cas. and Sur. Co.*, 135 F.R.D. 101, 110–111 (D.N.J. 1990) ("This Court agrees that

judicial economy as well as efficiency for the litigants dictate that contention interrogatories are

more appropriate after a substantial amount of discovery has been conducted."); *Leksi, Inc. v.*

*Federal Ins. Co.*, 129 F.R.D. 99, 107 (D.N.J. 1989) (same).  Plaintiffs will respond to this

Interrogatory after Facebook has produced all documents responsive to Plaintiffs' Requests for

Production of Documents.

Dated: August 10, 2011

By: _____

Jonathan Shub (SBN 237708)
jshub@seegerweiss.com
**SEEGER WEISS LLP**
1515 Market Street, Suite 1380
Philadelphia, PA 19102
Telephone: (215) 564-2300
Facsimile: (215) 851-8029

Rosemary M. Rivas (SBN: 209147)
rrivas@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
100 Bush Street, Suite 1450
San Francisco, CA 94104
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

PLAINTIFFS' OBJECTIONS AND RESPONSES TO
DEFENDANT'S SECOND SET OF INTERROGATORIES
CV 09-03043

*Interim Co-Lead Class Counsel*

J. Paul Gignac (SBN: 125676)
j.paul@aogllp.com
**ARIAS OZZELLO & GIGNAC LLP**
115 S. La Cumbre Lane, Suite 300
Santa Barbara, California 93105
Telephone: (805) 683-7400
Facsimile: (805) 683-7401

*Interim Liaison Class Counsel*

Steven Berk
**BERK LAW PLCC**
1225 15th Street, NW
Washington, D.C. 20005
Telephone: (202) 232-7500
Facsimile: (202) 232-7566

Paul M. Weiss
**FREED & WEISS LLC**
111 West Washington Street, Suite 1311
Chicago, IL 60602
Telephone: (312) 220-0000

Brian S. Kabateck
**KABATECK BROWN KELLNER LLP**
664 S. Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 217-5000
Facsimile: (213) 217-5010

Gordon M. Fauth, Jr.
**LITIGATION LAW GROUP**
1801 Clement Avenue, Suite 101
Alameda, CA 94501
Telephone: (510) 238-9610
Facsimile: (510) 337-1431

Melissa Meeker Harnett
**WASSERMAN, COMDEN, CASSELMAN &
ESENSTEN, LLP**
5567 Reseda Boulevard, Suite 330
Tarzana, CA 91357-7033
Telephone: (818) 705-6800

11

PLAINTIFFS' OBJECTIONS AND RESPONSES TO
DEFENDANT'S SECOND SET OF INTERROGATORIES
CV 09-03043

1

Facsimile: (818) 996-8266

2

TerriAnne Benedetto (admitted pro hac vice)
**SEEGER WEISS LLP**

3

1515 Market Street, Suite 1380
Philadelphia, PA 19102

4

Telephone: (215) 564-2300
Facsimile: (215) 564-1606

5

*Additional Counsel for Plaintiffs*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFFS' OBJECTIONS AND RESPONSES TO
DEFENDANT'S SECOND SET OF INTERROGATORIES
CV 09-03043