# Exhibit D

```
 1  J. Paul Gignac (State Bar No. 125676)
    j.paul@aogllp.com
 2  Kiley L. Grombacher (State Bar No. 245960)
    kgrombacher@aogllp.com
 3  ARIAS OZZELLO & GIGNAC LLP
    4050 Calle Real, Suite 130
 4  Santa Barbara, California 93110-3413
    Telephone: (805) 683-7400
 5  Facsimile: (805) 683-7401

 6  Mike Arias (State Bar. No. 115385)
    marias@aogllp.com
 7  ARIAS OZZELLO & GIGNAC LLP
    6701 Center Drive West, 14th Floor
 8  Los Angeles, California 90045
    Telephone: (805) 683-7400
 9  Facsimile: (805) 683-7401

10  Melissa M. Harnett (State Bar No. 164309)
    mharnett@wcclaw.com
11  Gregory B. Scarlett (State Bar No. 131486)
    gscarlett@wcclaw.com
12  WASSERMAN, COMDEN & CASSELMAN, LLP
    5567 Reseda Boulevard, Suite 330
13  Post Office Box 7033
    Tarzana, California 91357-7033
14  Telephone: (818) 705-6800 / (323) 872-0995
    Facsimile: (818) 996-8266
15
    Attorneys for Plaintiff
16
```

FEE NOT paid

FILED

2009 JUL 31 P 2:25

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

E-filing

ADR

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| STEVEN PRICE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | C09 03519 HRL<br><br>CLASS ACTION<br><br>**COMPLAINT FOR DAMAGES, RESTITUTION, INJUNCTIVE RELIEF AND DECLARATORY RELIEF**<br><br>DEMAND FOR JURY TRIAL |

All allegations in this Complaint are based upon information and belief except those allegations that pertain to Plaintiff, which are based on personal knowledge. Plaintiff's information and belief are based upon, *inter alia*, Plaintiff's own investigation and the investigation conducted by Plaintiff's attorneys. Each allegation in this Complaint either has evidentiary support or, alternatively, is likely to have evidentiary support after a reasonable opportunity for further investigation and/or discovery.

## NATURE OF THE ACTION

1. This is an action to enjoin ongoing, unfair and unlawful business practices and to recover monetary damages and restitution arising out of Facebook's unfair and unlawful business practices of: (1) charging its "pay per click" advertising customers for "invalid clicks" that never actually occurred; and (2) giving its advertising customers partial "credits", rather than full cash refunds, for such invalid clicks.

2. Facebook's practices violate its agreement with its advertising customers as memorialized in the standardized Facebook Advertising Guidelines and the Statement of Rights and Responsibilities that Facebook enters into with its advertising customers. Facebook's wrongful practices predictably involve small amounts of damages, and Facebook is attempting to carry out a scheme to deliberately cheat large numbers of its advertising customers out of individually small sums of money.

3. Facebook should be ordered to cease its wrongful practices and should be required to refund to its present and former advertising customers all monies that Facebook has collected as a result of its wrongful practices.

## PARTIES

4. Plaintiff Steven Price ("Plaintiff") is a resident of the State of California, residing in El Segundo, California.

5. Defendant Facebook, Inc. is a Delaware corporation registered to do business in the State of California, with its principal place of business located in Palo Alto, California. The Facebook website is a free-access social networking website that is operated and privately owned by Facebook. The website is accessible to users throughout the United States.

- 2 -   COMPLAINT FOR DAMAGES, RESTITUTION, INJUNCTIVE RELIEF AND DECLARATORY RELIEF

6. Plaintiff does not know the true names and capacities of Does 1 through 10, inclusive, whether individual, corporate, association or otherwise and, therefore, sues said defendants, and each of them, by such fictitious names. Plaintiff will amend this Complaint to include their true names and capacities when they have been ascertained. Each of these Doe defendants is in some manner legally responsible for the events, happenings, injuries and damages alleged in this Complaint.

7. As used herein, the term "Facebook" refers to Facebook, Inc. and the Doe defendants.

8. In this Complaint, when reference is made to any act, deed or conduct of Facebook, the allegation means that Facebook engaged in the act, deed or conduct by or through one or more of its officers, directors, agents, employees or representatives who was actively engaged in the management, direction, control or transaction of the ordinary business and affairs of Facebook.

## JURISDICTION AND VENUE

9. Federal jurisdiction is proper under 28 U.S.C. §1331 because Plaintiff alleges claims for relief under the Declaratory Judgment Act, 28 U.S.C. §2201 *et seq.*

10. Federal jurisdiction is also proper under 28 U.S.C. §1332(d)(2) because: (a) Plaintiff is a resident of California, as are many of the proposed class members, whereas Facebook is incorporated in Delaware; (b) this is a class action that involves more than one hundred proposed class members; and (c) the amount in controversy in this class action exceeds $5,000,000.

11. This Court may and should exercise supplemental jurisdiction over the state law claims under 28 U.S.C. §1367 because they are derived from a nucleus of operative facts that is common to the federal law claims such that Plaintiff and Facebook ordinarily would expect to try both the federal law claims and the state law claims in a single proceeding.

12. This Court has personal jurisdiction over Facebook because Facebook has purposefully availed itself of the privilege of conducting business activities within the State of California by employing workers within the State of California and by selling its services within

the State of California. Facebook generally has maintained systematic and continuous business contacts within the State of California.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2) because Facebook transacts substantial business within this judicial district thereby subjecting Facebook to personal jurisdiction in this judicial district. In addition, a substantial part of the events giving rise to the claims asserted by Plaintiff took place in this judicial district. Finally, Facebook's Statements of Rights and Responsibilities, which governs Facebook's relationship with, *inter alia*, its advertising customers, contains a venue provision providing that any claim, cause of action or dispute arising out of Facebok's Statement of Rights and Responsibilities should be resolved in a state or federal court located in Santa Clara County.

## FACTS RELATING TO FACEBOOK

14. Founded in February 2004, Facebook develops technologies that facilitate the sharing of information. Facebook is the second most-trafficked PHP site in the world and one of the largest MySQL installations anywhere, running thousands of databases. Facebook is accessible internationally.

15. To generate revenue, Facebook provides online advertising services. The Internet research firm eMarketer estimates that Facebook generated about $210 million in U.S. advertising revenue in 2008. However, that amount pales in comparison to the estimated $585 million in advertising revenue that was generated in 2008 by MySpace, Facebook's chief rival. Recently, there has been speculation in the news media concerning Facebook's ability to survive as an ongoing business enterprise given its inability to generate revenue.

16. Facebook ads appear in the right side column on Facebook pages. In order to place an ad on Facebook, the advertiser must submit a bid. The Facebook ad system decides which ads to run by employing an algorithm that estimates the best performing advertisement based on a number of factors, including historical performance of the ad and its bid. The bid necessary to win the advertisement fluctuates as the system learns more about the ad's actual performance and as the pool of competing ads change.

- 4 -  COMPLAINT FOR DAMAGES, RESTITUTION, INJUNCTIVE RELIEF AND DECLARATORY RELIEF

17. Facebook users can access all of the advertisements that have been shown to them within a given 24 hour time period through their page or via the "More Ads" link located under the ads on their page.

18. Creation of an advertisement set to run on Facebook is a four-step process: design, selection of target demographic, scheduling the running of the ad and setting the daily budget, and finally design review and submission. All ads are designed using software created by Facebook and accessible to the user via a link from the Facebook website. During the design process, advertisers may choose to have their ad link either to their external web page or an internal Facebook link such as a page, application, group or event.

19. Advertisers are able to target their exact audience with demographic and psychographic filters. By default, Facebook targets all users 18 and older in the default location. Advertisers can schedule their advertisement to run continuously starting once the ad is approved or at a specified start and end date.

20. There is no set cost for Facebook advertisements; rather, Facebook advertisers can choose to either to pay-per-click or pay for views. Facebook's website touts that an advertiser can reach more than 200,000,000 active Facebook users.

21. Pay-per-click ("PPC") is an internet marketing formula used to price online advertisements. Also known as cost-per-click ("CPC"), advertisers pay internet publishers based on the number of individual clicks an advertisement receives. The cost of each click is determined by a bidding process, wherein the highest bidder for a click would have its ad placed on the Facebook site.

22. An advertiser must confirm the maximum amount he is willing to pay per click or per 1000 impressions depending on the payment method selected. The suggested bid range shows the advertiser what other advertisers are currently bidding to reach people in their target.

23. Prior to final submission of their advertisement, advertisers are required to agree to Facebook's Statement of Rights and Responsibilities as well as Facebook's Advertising Guidelines -- which govern the advertiser's relationship with Facebook.

- 5 -   COMPLAINT FOR DAMAGES, RESTITUTION, INJUNCTIVE RELIEF AND DECLARATORY RELIEF

## FACTS RELATING TO PLAINTIFF

24. On or about May 26, 2009, Plaintiff purchased advertising from Facebook. Under the terms of Plaintiff's agreement with Facebook, Facebook was required to provide Internet advertising service to Plaintiff in exchange for payment from Plaintiff. Plaintiff authorized Facebook to direct bill his credit card account for the payments due from him.

25. Plaintiff created his first advertisement on May 26, 2009. He selected the pay-per-click payment method. Plaintiff's advertisement began running on the Facebook website on or about May 27, 2009. Plaintiff's advertisement was designed such that a Facebook user who clicked on Plaintiff's ad would be directed to Plaintiff's website.

26. Plaintiff received the first charge to his credit card from Facebook on or about May 28, 2009. He received numerous additional charges thereafter. Between May 28, 2009 and June 21, 2009, Facebook charged Plaintiff's credit card account more than $500 for his advertisements. Facebook sent Plaintiff email invoices for each of the charges to his credit card account. However, none of the email invoices details the number of clicks, time of the clicks or origination of the clicks.

27. In an effort to ascertain this information -- which would allow him to tailor his advertisements to maximize profitability -- Plaintiff accessed the Facebook Ad Manager Page. The Facebook Ad Manager Page provides information regarding, *inter alia*, the number of clicks made on an advertisement on a day-by-day basis. Upon reviewing the information related to his ad, Plaintiff became concerned that the number of clicks was overstated. Therefore, Plaintiff used Google Analytics to test the veracity of the data reflected on the Facebook Ad Manager Page.

28. Google Analytics is a software program that generates detailed statistics about visitors to a website. Plaintiff used Google Analytics to test the veracity of the charges that he was receiving from Facebook on eight days between May 27, 2009 and June 3, 2009. Based upon the data Plaintiff received from Google Analytics for these eight days, Plaintiff determined that approximately 66% of the clicks for which he was being charged by Facebook, as reflected on the Facebook Ad Manager Page, were invalid clicks that had never even occurred.

29. On or about June 4, 2009, Plaintiff began to run Statcounter.com in conjunction with the Google Analytics program. Statcounter.com is another web-tracker that allows the user to analyze and monitor visitors to a website. Plaintiff used both Google Analytics and Statcounter.com to test the veracity of the charges that he was receiving from Facebook on five dates on which Plaintiff ran ads between June 4, 2009 and June 21, 2009.

30. Based upon the data Plaintiff received from Statcounter.com for the five dates, Plaintiff determined that approximately 67% of the clicks for which he was being charged by Facebook, as reflected on the Facebook Ad Manager Page, were invalid clicks that had never even occurred. Therefore, the data results from Statcounter.com confirmed the findings of Google Analytics: that is, approximately two-thirds of the clicks for which Plaintiff was being charged were invalid clicks that had never even occurred.

31. Attached hereto as Exhibit "A" is an excel spreadsheet that demonstrates the discrepancies between the clicks for which Plaintiff was charged by Facebook and the clicks that actually occurred as tracked by Google Analytics and Statcounter.com. For example, for May 27, 2009, the Facebook Ad Manager Page reflects 95 clicks, whereas Google Analytics tracked only 19 clicks – a difference of 76 invalid clicks.

32. Facebook has charged, and Plaintiff has paid, for all clicks on Plaintiff's ads. On June 26, 2009, Facebook notified Plaintiff that "Recently, we have detected an increase in invalid clicks on Facebook. Your account was impacted and as a result, we are crediting your account. Your credit has been automatically deposited into your Facebook account and will apply toward future advertising campaigns. Your credits expire December 15, 2009."

33. By voluntarily crediting Plaintiff's account, Facebook admitted that it had charged Plaintiff for invalid clicks. However, rather than refunding to Plaintiff the monies he had been charged and paid for these invalid clicks, Facebook gave Plaintiff "credits" in the amount of $105.01 that could only be used to purchase additional advertising from Facebook. Moreover, unlike the cash refund to which Plaintiff is entitled, these credits expire December 15, 2009. Finally, these credits do not even come close to compensating Plaintiff for the monies that he has been wrongfully charged and paid to Facebook for invalid clicks.

- 7 -   COMPLAINT FOR DAMAGES, RESTITUTION, INJUNCTIVE RELIEF AND DECLARATORY RELIEF

## SIMILAR COMPLAINTS BY OTHER CUSTOMERS OF FACEBOOK

34. Other customers of Facebook have complained about being subjected to the same wrongdoing experienced by Plaintiff. In each case, Facebook improperly charged its advertising customers for invalid clicks on their advertisements. A sampling of those complaints is set forth in paragraphs 35 through 40 below.

35. Facebook customer "Jesse" has complained that:

> I'm in the middle of some issues with facebook's ad system, which is how I found your post to begin with. I've been doing research to see if anyone's run into the same issues I have.
>
> First of all, I should say that not only does my Google Analytics account show obvious evidence of click fraud, but there's a scarier issue at hand here. Facebook claims, and has charged me for, 800+ clicks on given days where my Google Analytics (and a second third-party tracker) reveals only 250-300 clicks via Facebook on those days. This is a huge discrepancy and amounts to hundreds of dollars on each given day where this occurred.

36. Facebook customer "Russell" has complained that:

> I am having similar problems with what I consider to be click fraud. Google Analytics tells me that I am receiving around 30% less clicks and those that are coming my way are bouncing at a much higher rate than other traffic – referred and organic. The conversion rate is also much lower – around ½ of that of organic traffic, so I think it is pretty clear that it is not legitimate traffic. I have yet to contact Facebook – I cannot even find their contact form on their site yet – but will pose Facebook's response.

37. Facebook customer "Fernando" has complained that:

> Same issue here, charged me for 800+ clicks but my 2 site trackers reveals only 500 visits. I am going to contact them for an explanation otherwise I will contact my credit card company.

38. Facebook customer "Taavi" has complained that:

> I have reached this page for exact same reasons. I noticed that Google Analytic shows about 30% less visits that Facebook shows(and changes clicks). I also noticed that I still get visits from Facebook although my ads have been switched off.

- 8 -    COMPLAINT FOR DAMAGES, RESTITUTION, INJUNCTIVE RELIEF AND DECLARATORY RELIEF

39. Facebook customer "Jbenet" has complained that:

I have been experimenting with FC ads 3 times now, and for certain Statcounter shows that I was billed TWICE for every incoming click from falsebook on my last campaign.

Just set up a new site, with google analytics AND statcounter, the site is getting zero organic traffic, and FB tells me 5 people clicked it, YET I have had zero visitors still...

So either google and statcounter are junk, or... my guess is that Facebook is running a scam, and maybe Ralph Nader should get his Consumer Reports to look into it.

40. Facebook customer "Marc" has complained that:

We started using Facebook Ads about a week ago. Our site only has around 30 unique visitors per day and around 100 returning visitors a day. We use Google Analytics to watch this traffic and monitor what States our advertising is doing better in. We setup a campaign in two cities, Boston and Las Vegas. Facebook charged us for 27 clicks in Las Vegas and 36 in Boston over the first few days. Google Analytics tells me that we only received a total of 4 new visitors in Las Vegas and only 3 in Boston over the last week. None of which came from Facebook and none of the days Facebook claimed the took place on. We have two Facebook pages that sent traffic of 32 unique visits "Before" we used the Ads system and those visits took place over a week before we started the Ads campaign. We have no proof that Facebooks Adds were legitimate clicks, we can only prove that Facebook has charged us $1.00 for each click.

We have a feeling all of these clicks are fraudulent and false. We are also having trouble contacting Facebook to get the issue resolved and have discontinued our Ads in the time being.

## CLASS ACTION ALLEGATIONS

41. Plaintiff brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of advertising customers of Facebook as defined herein. Plaintiff is a member of the class that he seeks to represent.

42. Pursuant to Facebook's Statements of Rights and Responsibilities, which governs Facebook's relationship with advertising customers and others who interact with

Facebook, California law applies to the claims of all advertising customers of Facebook. As a result, Plaintiff shall seek to represent a nationwide class ("the Class") as to all claims for relief alleged herein. Plaintiff proposes to define the Class as follows:

> All pay-per-click advertising customers of Facebook who reside in the United States and who were charged for "invalid clicks".

43. The members of the Class shall be referred to herein collectively as the "Class Members".

44. The following pay-per-click advertising customers of Facebook shall be excluded from the Class and therefore shall not qualify as Class Members: (a) all employees, officers, directors, agents and legal representatives of Facebook; (b) any judge, justice or judicial officer assigned to hear any proceeding in relation to this case; and (c) all persons who validly exclude themselves from the Class.

45. While the exact number of Class Members is unknown to Plaintiff at this time and can only be determined by appropriate discovery, membership in the Class is ascertainable based upon the billing records maintained by Facebook. The Class consists of many hundreds, if not many thousands, of members, the identities of which are within the knowledge of and can be ascertained by Facebook by reference to its customer records. Therefore, the Class Members are sufficiently numerous that joining all Class Members in a single action is impracticable under Fed. R. Civ. P. 23(a)(1), and the resolution of their claims through the procedure of a class action will be of benefit to the parties and the Court.

46. Common questions of law and fact exist as to the Class Members, as required by Fed. R. Civ. P. 23(a)(2), and predominate over any questions that affect only individual Class Members within the meaning of Fed. R. Civ. P. 23(b)(3).

47. The questions of fact that are common to the Class Members include, but are not limited to, the following:

  a. whether Facebook improperly assesses charges to the Class Members for invalid clicks;

  b. whether Facebook generated or caused to be generated the invalid clicks;

  c. whether Facebook provides partial "credits", rather than full cash refunds, to the Class Members for invalid clicks; and

  d. whether the Class Members were damaged as a result of Facebook's actions and conduct.

48. The questions of law that are common to the Class Members include, but are not limited to, the following:

  a. whether Facebook breached the terms and/or implied covenants of its contracts with the Class Members;

  b. whether the Class Members are entitled to declaratory relief under the Declaratory Judgment Act;

  c. whether Facebook has committed one or more acts of "unfair competition" within the meaning of and in violation of California Business and Professions Code §17200, *et seq.*; and

  d. whether Facebook, by its actions and conduct, has been unjustly enriched at the expense and to the detriment of the Class Members.

49. Plaintiff's claims are typical of the claims of the Class Members whom he seeks to represent under Fed. R. Civ. P. 23(a)(3) because Plaintiff and each of the Class Members have been subjected to the same improper practices and have been damaged in the same manner.

50. Plaintiff will fairly and adequately represent and protect the interests of the Class Members as required by Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate representative of the Class, as he has no interests that are adverse to the Class Members. Plaintiff is committed to the vigorous prosecution of this action on behalf of the Class Members and, to that end, Plaintiff has retained counsel who are competent and experienced in handling class action litigation.

51. A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted in this action under Fed. R. Civ. P. 23(b)(3) because:

   a. the Class Members have no interest in individually controlling the prosecution of separate actions on their own behalves because the expense and burden of individual litigation make it economically unfeasible for the Class Members to seek redress other than through the procedure of a class action;

   b. the Class Members have not commenced and are not pursuing other litigation against Facebook arising out of the subject matter of this class action lawsuit, and if separate actions were brought by individual Class Members, the resulting duplicity of lawsuits would cause undue hardship and expense to the Court and the litigants by necessitating multiple trials of similar factual issues;

   c. it is desirable to concentrate the litigation of the Class Members' claims in this forum because all of the Class Members are residents of the State of California and because the Class Members allege claims under federal law and California state law; and

   d. Plaintiff is aware of no difficulty likely to be encountered in the management of this litigation that should preclude its maintenance as a class action.

52. In the alternative, this action is certifiable under the provisions of Fed. R. Civ. P. 23(b)(1) and/or (b)(2) because:

   a. the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members which would establish incompatible standards of conduct for Facebook;

   b. the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them which

would, as a practical matter, be dispositive of the interests of the other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c. Facebook has acted or refused to act on grounds generally applicable to the Class Members, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class Members as a whole and necessitating that any such relief be extended to the Class Members on a mandatory, class-wide basis.

53. The names and addresses of the Class Members are available from Facebook's records. Notice can be provided to the Class Members via first class mail or otherwise using techniques and a form of notice similar to those customarily used in class actions arising under California state law and federal law. Specifically, notice can be provided to the Class Members by posting a notice on the Facebook main page. Additionally notice can be provided to the Class Members who are current advertising customers of Facebook by including a notice in or on the monthly bill sent to Facebook's advertising customers with the minimal cost of such notice to be borne by Facebook.

### FIRST CLAIM FOR RELIEF
### (Breach of Contract)

54. Plaintiff repeats and incorporates herein by reference the allegations contained in paragraphs 1 through 53 of this Complaint.

55. Plaintiff brings this claim for relief on behalf of himself and the members of the Class.

56. The relationship between Facebook and its advertising customers is governed by Facebook's Statement of Rights and Responsibilities. A true and correct copy of Facebook's Statement of Rights and Responsibilities is attached hereto as Exhibit "B".

57. Under the terms of Facebook's Statement of Rights and Responsibilities, Facebook agreed, *inter alia*, whether expressly or implicitly, to provide advertising services to Plaintiff and the Class Members, and Plaintiff and the Class Members correspondingly agreed to pay for such services on a PPC basis.

58. Plaintiff and the Class Members have performed all conditions, covenants, and promises required to be performed on their part in accordance with the terms of their contracts with Facebook, except to the extent such performance was excused, released or waived by the actions, conduct or agreement of Facebook.

59. Pursuant to the terms of Facebook's standardized contracts, Plaintiff and the Class Members were to be charged PPC fees based on the number of clicks by a user on the advertisements of Plaintiff and other Class Members.

60. Facebook breached the terms of its contracts by charging fees to Plaintiff and the Class Members for invalid clicks that never even occurred.

61. Alternatively, by charging fees to Plaintiff and the Class Members for invalid clicks that never even occurred., Facebook breached the implied covenant of good faith and fair dealing in its contracts with Plaintiff and the Class Members.

62. As a direct and proximate result of Facebook's breach of contract, Plaintiff and the Class Members have been damaged in an amount according to proof at trial.

**SECOND CLAIM FOR RELIEF**
**(Declaratory Judgment Under 28 U.S.C. § 2201)**

63. Plaintiff repeats and incorporates herein by reference the allegations contained in paragraphs 1 through 53 of this Complaint.

64. Plaintiff brings this claim for relief on behalf of himself and the members of the Class.

65. An actual controversy has arisen and now exists between Plaintiff and the Class Members, on one hand, and Facebook, on the other hand, concerning their respective rights and duties. Plaintiff and the Class Members contend that Facebook's practices of charging its advertising customers for invalid clicks that never even occurred and giving its advertising

- 14 -  COMPLAINT FOR DAMAGES, RESTITUTION, INJUNCTIVE RELIEF AND DECLARATORY RELIEF

customers partial "credits", rather than full cash refunds, for such invalid clicks are improper and unlawful, while Facebook maintains that its actions and conduct are lawful and proper.

66.  A judicial declaration is necessary and appropriate at this time, under the circumstances presented, in order that Plaintiff and the Class Members may ascertain their rights and duties with respect to Facebook's practices of charging its advertising customers for invalid clicks that never even occurred and giving its advertising customers partial "credits", rather than full cash refunds, for such invalid clicks.

### THIRD CLAIM FOR RELIEF
### (Unjust Enrichment)

67.  Plaintiff repeats and incorporates herein by reference the allegations contained in paragraphs 1 through 53 of this Complaint.

68.  Plaintiff brings this claim for relief on behalf of himself and the members of the Class.

69.  Facebook has engaged in the unfair, inequitable and/or unconscionable practices of: (1) charging and collecting fees for invalid clicks that never even occurred; and (2) giving its advertising customers partial "credits", rather than full cash refunds, for such invalid clicks.

70.  As a direct and proximate result of Facebook's unfair, inequitable and/or unconscionable practices, Facebook has been unjustly enriched at the expense of and to the detriment of Plaintiff and the Class Members.

71.  By reason of Facebook's conduct, Plaintiff and the Class Members are entitled to restitution of all monies paid to Facebook for invalid clicks that never even occurred.

### FOURTH CLAIM FOR RELIEF
### (Violation of California Business and Professions Code § 17200, *et seq.*)

72.  Plaintiff repeats and incorporates herein by reference the allegations contained in paragraphs 1 through 62 and 68 through 71 of this Complaint.

73. Plaintiff brings this claim for relief on behalf of himself and the members of the Class.

74. Facebook has engaged in and continues to engage in the unfair and/or unlawful business practices of: (1) charging and collecting fees for invalid clicks that never even occurred; and (2) giving its advertising customers partial "credits", rather than full cash refunds, for such invalid clicks.

75. By engaging in these practices, Facebook has committed one or more acts of unfair competition within the meaning of California Business and Professions Code § 17200, *et seq*.

76. Facebook's practices are unfair because they are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to Plaintiff and the Class Members.

77. Facebook's practices are unlawful because they constitute breach of contract and unjust enrichment.

78. Unless Facebook is enjoined from continuing to engage in these unfair and/or unlawful business practices, Plaintiff and the Class Members will continue to be injured by Facebook's wrongful actions and conduct.

79. So as not to be unjustly enriched by its own wrongful actions and conduct, Facebook should be required to disgorge and restore to Plaintiff and the Class Members all monies wrongfully obtained by Facebook as a result of its unfair and/or unlawful business practices, together with interest thereon.

## RELIEF REQUESTED

Plaintiff, on behalf of himself and the Class Members, requests that this Court order the following relief and enter judgment against Facebook as follows:

### On The First Claim For Relief

For compensatory damages in an amount according to proof at trial; and

For prejudgment interest through the date of entry of judgment.

### On The Second Claim For Relief

That this Court declare that Facebook's practices of charging and collecting fees for invalid clicks that never even occurred and giving its advertising customers partial "credits", rather than full cash refunds, for such invalid clicks are improper and unlawful.

### On The Third Claim For Relief

For disgorgement and restitution to Plaintiff and the Class Members of all monies wrongfully obtained and retained by Facebook; and

For prejudgment interest through the date of entry of judgment.

### On The Fourth Claim For Relief

For disgorgement and restitution to Plaintiff and the Class Members of all monies wrongfully obtained and retained by Facebook;

For an order enjoining Facebook from: (1) charging and collecting fees for invalid clicks that never even occurred; and (2) giving its advertising customers partial "credits", rather than full cash refunds, for such invalid clicks; and

For prejudgment interest through the date of entry of judgment.

### On All Claims For Relief

For all attorneys' fees, expenses and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action, provided that this action results in a common fund for the benefit of the Class Members and/or confers a substantial benefit on the Class Members; and

For such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury of all issues so triable in this action.

Dated: July 30th, 2009

ARIAS OZZELLO & GIGNAC LLP

By: J. Paul Gignac (State Bar No. 125676)
j.paul@aogllp.com
Kiley L. Grombacher (State Bar No. 245960)
kgrombacher@aogllp.com
ARIAS OZZELLO & GIGNAC LLP
4050 Calle Real, Suite 130
Santa Barbara, California 93110-3413
Telephone:  (805) 683-7400
Facsimile:  (805) 683-7401

Mike Arias (State Bar. No. 115385)
marias@aogllp.com
ARIAS OZZELLO & GIGNAC LLP
6701 Center Drive West, 14th Floor
Los Angeles, California 90045
Telephone:  (805) 683-7400
Facsimile:  (805) 683-7401

Melissa M. Harnett (State Bar No. 164309)
mharnett@wcclaw.com
Gregory B. Scarlett (State Bar No. 131486)
gscarlett@wcclaw.com
WASSERMAN, COMDEN & CASSELMAN, LLP
5567 Reseda Boulevard, Suite 330
Post Office Box 7033
Tarzana, California 91357-7033
Telephone: (818) 705-6800 / (323) 872-0995
Facsimile: (818) 996-8266

Attorneys for Plaintiff