Jonathan Shub (SBN 237708)
jshub@seegerweiss.com
**SEEGER WEISS LLP**
1515 Market Street, Suite 1380
Philadelphia, PA 19102
Telephone: (215) 564-2300
Facsimile: (215) 851-8029

Rosemary M. Rivas (SBN 209147)  J. Paul Gignac (SBN 125676)
rrivas@finkelsteinthompson.com  j.paul@aogllp.com
**FINKELSTEIN THOMPSON LLP**  **ARIAS OZZELLO & GIGNAC LLP**
One California Street, Suite 900  4050 Calle Real, Suite 130
San Francisco, California 94111  Santa Barbara, California 93110
Telephone: (415) 398-8700  Telephone: (805) 683-7400
Facsimile: (415) 398-8704  Facsimile: (805) 683-7401

*Interim Co-Lead Class Counsel*  *Interim Liaison Class Counsel*

**COOLEY LLP**
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
WHITTY SOMVICHIAN (194463) (wsomvician@cooley.com)
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

Attorneys for Facebook, Inc.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| **IN RE FACEBOOK PPC ADVERTISING LITIGATION**<br><br>**This Document Relates To:**<br>**All Actions.** | Master File No. C 09-03043 PJH<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>Date: March 26, 2015<br>Time: 2:00 p.m.<br>Courtroom: 3, 3rd Floor<br>Judge: Honorable Phyllis J. Hamilton |

Plaintiffs and Defendant Facebook, Inc. ("Defendant" or "Facebook") respectfully submit this Joint Case Management Conference Statement in response to the Court's February 6, 2015 request that the parties submit "a joint case management statement setting forth a proposal for the scheduling and resolution of the remaining issues," Dkt 292, now that the appeal in this matter has been resolved by the Ninth Circuit Court of Appeals.

### I.   SUMMARY OF PROCEEDINGS TO DATE

Plaintiffs filed their initial Consolidated Class Action Complaint ("CCAC") on November 20, 2009, in which they asserted statutory and common law claims for relief and sought a variety of legal remedies. Defendant denied any wrongdoing. On April 22, 2010, the Court entered an Order Granting In Part And Denying In Part Defendant's Motion To Dismiss And Denying Motion to Strike. On May 21, 2010, Plaintiffs filed a Consolidated Amended Complaint, which Defendant moved to dismiss on June 14, 2010. On August 25, 2010, the Court issued an order granting in part and denying in part Defendant's motion to dismiss. Plaintiffs filed a Consolidated Second Amended Complaint on September 24, 2010, and Defendant moved for partial dismissal on October 22, 2010. This motion was granted and Plaintiffs opted not to amend.

Following extensive fact and expert discovery, Plaintiffs filed their motion for class certification on August 29, 2011. The Court denied class certification on April 13, 2012. Plaintiffs filed a petition for permission to appeal pursuant to Fed. R. Civ. P. 23(f), which was granted on July 17, 2012. On December 26, 2014, the Ninth Circuit Court of Appeals issued an order affirming this Court's denial of Plaintiffs' motion for class certification. The matter was then remanded to this Court for further proceedings.

### II.   THE PARTIES' PROPOSALS

#### A.   Plaintiffs' Proposal & Facebook's Response.

**Plaintiffs' Proposal:**

Plaintiffs brought this class action suit against Facebook for improper charges that they and members of the Class incurred in connection with advertising placed on Defendant's website at www.facebook.com during the period of January 1, 2006 to the present. Plaintiffs contracted with

Facebook to pay Facebook a fee each time a person "clicked" on Plaintiffs' advertisements on the Facebook website in a conscious attempt to view the advertisement. Plaintiffs and Facebook regarded such action (by a Facebook user) as a valid, or billable, "click" for which advertisers were contractually obligated to pay Facebook a fee in accordance with their contract. Plaintiffs allege that Facebook systematically fails to limit charges to valid clicks. Instead, Plaintiffs allege that advertisers have been and continue to be unlawfully charged for and presently pay for a range of various types of invalid clicks.

The Ninth Circuit affirmed this Court's order denying class certification but did so on grounds different from this Court. The Ninth Circuit ruled that Plaintiffs' expert had failed to perform the methodology that he testified was a feasible way to determine valid and invalid clicks. The Court declined to rule on the basis for which this Court denied certification. Plaintiffs intend on refiling their class certification motion within 120 days, after limited discovery focused on the data logs maintained by Facebook, and will demonstrate in their expert's declaration the feasibility of their methodology by implementing it with actual data from Facebook. Plaintiffs will also propose a narrower class that is focused on only particular filter that they claim is violative of the contract. Plaintiff will also seek certification of a declaratory and/or injunctive relief class under Rule 23(b)(2) and in the alternative, certification of issue classes under Rule 23(c)(4).

**Facebook's Response:**

Plaintiffs' attempt to have a second bite at the apple, after nearly six years of hard-fought litigation, should be denied. By their own admission, Plaintiffs conducted extensive discovery (both fact and expert) prior to filing their class certification motion. Plaintiffs had ample opportunity to request the additional material they now seek, to conduct the additional expert work they now propose, and to narrow the scope of the proposed class. But they made the tactical decision to not do any of this. In any case, Plaintiffs' belated proposals would make no difference at this point, because they would not cure the various defects that this Court and the Ninth Circuit identified in denying certification and affirming that denial. Granting Plaintiffs' request would serve only to impose unfair costs and burdens on Facebook to re-litigate an issue that has already been resolved.

1  For these and the other reasons discussed below, Plaintiffs' proposal should be denied and the
2  case should proceed only as to Plaintiffs' individual claims.[1]

3  ***First***, there are no new facts or circumstances to warrant reconsideration of this Court's
4  denial. As a general rule, "courts should not condone a series of rearguments on the class issues"
5  absent a showing of "'materially changed or clarified circumstances." Newberg on Class Actions §
6  7:47. Numerous courts have applied this rule to reject efforts to file a renewed class certification
7  motion after an initial motion is denied. *See, e.g., Hartman v. United Bank Card, Inc.*, 291 F.R.D.
8  591, 596 (W.D. Wash. 2013) (quoting and applying Newberg); *Washington v. Vogel*, 158 F.R.D. 689,
9  692-93 (M.D. Fla. 1994) (explaining that renewed motions require "materially changed or clarified
10 circumstances, or the occurrence of a condition on which the initial class ruling was expressly
11 contingent") (citation omitted); *Zapata v. IBP, Inc.*, 175 F.R.D. 578, 581 (D. Kan. 1997) (plaintiff
12 was not entitled to "rehash and recast old arguments already considered by the court in its original
13 ruling" denying class certification); *In re Fed. Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig.*,
14 No. 09 MD 2072 (MGC), 2012 U.S. Dist. LEXIS 138638, at *3 (S.D.N.Y. Sept. 25, 2012) (renewed
15 class certification motion unwarranted because plaintiff did not present "evidence of changed
16 circumstances"); *Mogel v. UNUM Life Ins. Co. of Am.*, 677 F. Supp. 2d 362, 366 (D. Mass. 2009)
17 (declining request to file a renewed motion that would merely "allow plaintiffs to revisit their prior
18 (unsuccessful) tactical decision" in their initial class certification motion).

---

[1] Plaintiffs are simply wrong when they claim that the Ninth Circuit ruled on different grounds than this Court in denying certification. The opinion makes clear that the court *agreed* with this Court that Plaintiffs failed to satisfy their burden to meet the requirements of Rule 23(b)(3). *See Fox Test Prep v. Facebook*, No. 4:09 CV-3043 PJH, slip op. at 3-4 (9th Cir. Dec. 26, 2014). Like the district court, the Ninth Circuit specifically cited Plaintiffs' expert's failure to provide any workable method to distinguish between valid and invalid clicks and the expert's admission that he knew of "no sources" that provide any specific parameters for evaluating clicks. *Id.* at 4 ("Because Plaintiffs failed to meet their burden of demonstrating a workable class-wide methodology to determine what constitutes a "valid click," the district court did not abuse its discretion in denying class certification because common issues do not predominate . . . as required by Rule 23(b)(3)") (internal quotation marks and citation omitted); *In re Facebook, Inc., PPC Adver. Litig.*, 282 F.R.D. 446, 456 (N.D. Cal. 2012) ("The court finds that the proposed class cannot be certified under 23(b)(3) because . . . plaintiffs have . . . failed to establish that there is any uniform method for distinguishing, on a classwide basis, between 'invalid' clicks (at issue in the case) and 'fraudulent clicks' (not at issue in the case)").

3

1   This rule reflects a recognition among courts that the class certification process imposes tremendous burdens on the parties and the judicial system, and allowing plaintiffs to file multiple class certification motions would unduly prejudice a defendant by forcing it to bear this burden multiple times. *Hartman v. United Bank Card, Inc.*, 291 F.R.D. 591, 596 (W.D. Wash. 2013) (plaintiffs' request to reopen class discovery and file a second class certification motion was "prejudicial" to defendants because of "the financial burden of revisiting the same issues repeatedly").

Here, Plaintiffs offer no "materially changed or clarified circumstances" to justify dragging the parties and the Court through the class certification process again. Instead, they seek to rehash the same issues that they had ample opportunity to address before, in the two years of active litigation that preceded the completion of class certification briefing on November 21, 2011. This included a massive discovery process involving depositions of 17 fact witnesses, 4 expert reports, and 5 additional expert depositions, and production of tens of thousands of documents and voluminous data, including logs reflecting the very data that Plaintiffs now claim to need. Significantly, this discovery was conducted under an agreement in which Plaintiffs identified the specific discovery they claimed they needed for class certification, and the parties agreed to postpone Plaintiffs' filing date to complete the specified discovery and give Plaintiffs additional time to prepare their class certification motion. (*See* Dkt 209 (stipulation entered by the Court); Dkt 223 (describing parties' discovery agreement).) Indeed, Plaintiffs' counsel acknowledged at the hearing that "this case was fairly heavily discovered, frankly, for a class certification, in my experience." (Tr. at 8:11-12.) Under these circumstances, Facebook would be unfairly prejudiced if Plaintiffs were allowed to impose another round of additional cost and burden on Facebook by forcing it to re-litigate class certification a second time.

***Second,*** Plaintiffs' proposal to provide a supplemental expert report does not justify a renewed class certification process. The district court's analysis in *In re Fed. Home Loan Mortg. Corp.*, 2012 U.S. Dist. LEXIS 138638, is illustrative. The court denied class certification in that case, finding that the plaintiff had failed to prove the existence of an efficient market for the

4

securities at issue because plaintiff's expert on market efficiency "was unreliable and unpersuasive." *Id.* at *1-2. Plaintiff then sought leave to file a renewed class certification motion and submitted a declaration from a new proposed expert in support of the request. *Id.* at *2. The court denied plaintiff's request, explaining that "the circumstances here do not warrant re-argument or additional expert testimony about the efficiency of the market…." *Id.* at *3. The court further explained:

> Since that hearing, the facts pertinent to the efficiency have not materially changed, and plaintiff has not made a showing of changed circumstances. Without evidence of changed circumstances, plaintiff effectively seeks a new opportunity to engage in a battle of the experts. Plaintiff was free to choose his most persuasive expert in support of certification. A plaintiff who wants to lead a class action should be prepared to put his best foot forward on the initial application.

*Id*; *see also Hartman*, 291 F.R.D. at 597 (plaintiffs' desire to adduce new expert testimony did not constitute a "change in circumstances" warranting a renewed motion for class certification).

The same result applies here. As noted above, Plaintiffs propose to (1) seek additional samples of Facebook's click data, and (2) submit new expert reports that would purportedly use this data to demonstrate a proposed classwide method for identifying alleged invalid clicks. But Facebook has *already* produced[2] all of the available click data for Plaintiffs' own advertisements and did so well *before* Plaintiffs' class certification motion, as Plaintiffs and their data expert both acknowledged. *See* FBCPC000065, FBCPC0000202; Shub Decl. In Support Of Plaintiffs' Motion for Class Certification ¶¶ 37-38 (certifying these documents as "true and correct copies"); Ex. 4 to Plaintiffs' Motion for Class Certification at 13 (Expert Report of Dr. Marcus Jakobsson). This production shows the specific type of click data that Facebook maintains for advertisements and how that data is organized in Facebook's systems. Plaintiffs also deposed a Facebook employee at length about this click data, and cited that information in their class certification motion. (Deposition of Thomas Carriero, November 18, 2010, at 189:22-191:4;  289:5-314:10; Deposition of Thomas Carriero, June 23, 2011 at 180:9-188:7; Plaintiffs' Motion for Class Certification at 16.)

---

[2] Plaintiffs' account information and data were produced on September 29, 2010 and November 15, 2010. Facebook also produced unhashed versions of the click data on August 29, 2011.

Plaintiffs and their three experts could have used that data to show how they proposed to identify alleged invalid clicks—but they chose not to, as this Court and the Ninth Circuit recognized. *In re Facebook, Inc.*, *PPC Adver. Litig.*, 282 F.R.D. at 458-59; *Fox Test Prep*, No. 4:09 CV-3043 PJH, slip op. at 3-4.  Plaintiffs are not entitled to "a new opportunity to engage in a battle of the experts" simply because they now wish to belatedly fix the defects in their prior expert reports.

Moreover, allowing Plaintiffs to submit new expert reports based on additional click data *from Facebook* would do nothing to address the other problems that prevented class certification. For example, Facebook's expert showed that server data *from each advertiser* is also needed to determine whether any given click is allegedly fraudulent, invalid, or valid.  Unlike Plaintiffs' experts, Facebook's expert reviewed the available click data and prepared a detailed report showing that (1) individual analysis of each click, using both Facebook click data *and* advertiser server data, was needed to evaluate Plaintiffs' claims and, (2) Facebook correctly billed Plaintiff Fox Test Prep for clicks based on that analysis (Fox Test Prep was the only Plaintiff that had produced its server data and thus the only Plaintiff for whom this analysis could be performed).  *See* Ex. L to Brown Decl. in Support of Defendant's Opposition to Plaintiffs' Motion for Class Certification (Stroz Friedberg Expert Report) at pp. 16-20.

Plaintiffs' proposal also ignores this Court's and the Ninth Circuit's additional finding that Plaintiffs' expert could not identify any sources that "provide[] specific parameters for determining what constitutes a valid click."  *See Fox Test Prep*, No. 4:09 CV-3043 PJH, slip op. at 4; *In re Facebook, Inc.*, *PPC Adver. Litig.*, 282 F.R.D. at 458-59.  Indeed, Plaintiffs' experts acknowledged that none exist.  (*See* Defendant's Opposition to Plaintiffs' Motion for Class Certification at pp. 25-26.)  No amount of discovery from Facebook would remedy this defect.  *See Hartman*, 291 F.R.D. at 597 (denying request to file a renewed class certification motion because "the court fails to see how its concerns [raised on the first motion for class certification] would be alleviated").

***Third***, Plaintiffs' proposal to amend or narrow its proposed class definition in an undefined way is not a "changed circumstance" that warrants a renewed class certification process.  Courts routinely reject renewed class certification motions that are based on an amended class definition

6
JOINT CASE MANAGEMENT CONFERENCE STATEMENT
Master File No. C 09-03043 PJH

1  because "[t]he fact that Plaintiff's counsel's tactical decisions did not work out as planned . . . does
2  not constitute changed circumstances." *Washington*, 158 F.R.D. at 692. *See also In re Fed. Home*
3  *Loan Mortg. Corp.*, 2012 U.S. Dist. LEXIS 138638, at *3-4 (holding that a "proposed new class
4  definition is not an adequate basis for re-opening a question that has been exhaustively litigated.");
5  *Hartman*, 291 F.R.D. at 597 (revised class definition not a "changed circumstance" warranting
6  renewal of class certification); *Mogel*, 677 F. Supp. 2d at 366 (denying request to file renewed class
7  certification motion because "the Court declines to allow plaintiffs to revisit their prior (unsuccessful)
8  tactical decision or delay the case any further").

9  Here, Plaintiffs could have sought certification of a narrowed class in their motion, but made a
10 strategic decision not to. Plaintiffs' desire to re-think their legal strategy at this late stage is not an
11 appropriate basis to revisit this Court's class certification determination. Moreover, it is not clear
12 how any proposed narrowing of the class could solve the fundamental obstacles that preclude
13 certification, as identified in this Court's order, including Plaintiffs' failure to (1) establish the
14 existence of a uniform contract (even among self-service advertisers), and (2) present a workable
15 methodology for distinguishing among invalid, fraudulent and valid clicks on a classwide basis. *In re*
16 *Facebook, Inc.*, *PPC Adver. Litig.*, 282 F.R.D. 446, 456 (N.D. Cal. 2012).

17 *Last*, Plaintiffs are not entitled to reopen class discovery to seek additional click data because
18 there is no justification for their failure to seek this discovery previously.

19 In *Hartman*, 291 F.R.D. 591, plaintiffs sought to reopen class discovery to obtain additional
20 documents and witness testimony after their class certification motion was denied. *Id.* at 594. The
21 court denied this request, explaining that plaintiffs "must show excusable neglect for failing to
22 conduct the necessary class discovery during the time allotted by the court." *Id.* at 595. This requires
23 the court to consider the factors under Fed. R. Civ. P. 6(b)(1)(B), including: (1) the danger of
24 prejudice to the non-moving party; (2) the length of delay and its potential impact on proceedings; (3)
25 the reason for delay; and (4) whether the moving party's conduct was in good faith. *Id.* Weighing
26 these factors, the court concluded that: (1) plaintiffs were not justified in failing to collect the
27 requested evidence in the first instance, given its "centrality" in their original motion; (2) the belated
28

7

1  timing of plaintiffs' request would needlessly delay proceedings; and (3) the "added expense caused
2  by Plaintiffs' repeated attempts to revisit the same class-related issues" would prejudice the
3  defendant. *Id.* at 596. Accordingly, the court denied the request to reopen class discovery and further
4  denied leave to file a renewed class certification motion.

5  As in *Hartman*, the additional class discovery that Plaintiffs seek relates to highly contested
6  issues "central" to Plaintiffs' class certification motion—the ability to use available data to identify
7  invalid clicks on a classwide basis. *Hartman*, 291 F.R.D at 595. Moreover, in the parties' prior
8  discovery agreement, Plaintiffs identified the discovery needed for their motion, and Facebook
9  produced this material prior to Plaintiffs' motion. Plaintiffs could have requested additional click
10 data in this process but opted not to. In fact, Plaintiffs' experts made no effort to conduct basic
11 analyses of the click data that Facebook had produced. (*See* Deposition of Markus Jakobsson, Ph.D.,
12 Sept. 21, 2011, 99:12-104:9; 147:06-153:16; Defendant's Opposition to Plaintiffs' Motion for Class
13 Certification at pp. 23.) They cannot reopen discovery now to rectify "a tactical decision . . . based
14 on twenty-twenty hindsight." *Id.*

15 As in *Hartman*, Plaintiffs' demand for additional class discovery would substantially
16 prejudice Facebook, particularly in light of the tremendous amount of class discovery that Facebook
17 has already provided. For these reasons, no further class discovery should be permitted.

18       **B.**     **FACEBOOK'S PROPOSAL & PLAINTIFF'S RESPONSE**

19 **Facebook's Proposal:**

20 Facebook proposes that the parties resolve the remaining individual claims in this case by
21 focusing first on whether Plaintiffs have sufficient evidence to show that they suffered damages from
22 alleged "invalid clicks." Absent such evidence, Facebook intends to move for summary judgment on
23 the ground that Plaintiffs cannot establish an essential element of their claims.

24 As background, Facebook first served discovery on Plaintiffs' alleged damages on September
25 16, 2010. This discovery included interrogatories asking Plaintiffs (1) to "[d]escribe the nature and
26 amount" of their alleged damages (Interrogatory No. 10), (2) to identify the specific clicks on their
27 ads for which they contend they were "improperly charged" (Interrogatory No. 11), and (3) to explain

28

8
JOINT CASE MANAGEMENT CONFERENCE STATEMENT
Master File No. C 09-03043 PJH

their contention as to why those clicks are allegedly "fraudulent improper, invalid, or otherwise should not have been charged" (Interrogatory No. 12). Plaintiffs objected to these discovery requests on November 15, 2010, refusing to provide substantive responses on various grounds. Among other objections, Plaintiffs claimed the interrogatories were "premature[]" and they did not yet have sufficient information from Facebook to answer. On September 29, 2010 and November 15, 2010, Facebook produced information on Plaintiffs' advertising accounts with Facebook, including all of the available data on all of the clicks generated on Plaintiffs' advertisements. Following meet and confer discussions among the parties, Plaintiffs supplemented their responses on May 6, 2011. These responses still failed to identify any specific clicks on Plaintiffs' advertisements that they claim to be invalid. Instead, Plaintiffs (1) continued to assert that the interrogatories were "premature," (2) claimed they did not need to perform a "click by click analysis" to prove their damages, (3) reiterated their position Facebook's overall "click detection system" does not conform with industry standards, and (4) identified certain categories of alleged nonconformity (for example "Lack of Compliance with IAB Click Measurement Protocol") but without offering evidence that these issues actually resulted in any alleged invalid clicks being billed for their own advertisements.

Given Plaintiffs' longstanding failure (now spanning well over four years) to provide any evidence that they were charged for alleged invalid clicks, Facebook proposes that Plaintiffs have an additional 30 days to provide their final supplemental responses to Facebook's pending interrogatories. Depending on Plaintiffs' responses, Facebook will evaluate whether to file a motion for summary judgment on the damages issues. If Plaintiffs stand on their current responses or otherwise fail to provide sufficient evidence to show they have suffered damages from alleged invalid clicks, Facebook believes summary judgment should be granted to dismiss Plaintiffs' individual claims as a matter of law.

Facebook further proposes that any further discovery directed at Facebook be stayed pending the resolution of this process. As indicated above, Facebook has already provided a massive amount of discovery to date as a result of the wide-ranging nature of Plaintiffs' requests since this lawsuit

9

was commenced in July 2009, which has imposed a substantial and disproportionate burden on Facebook in this case.

**Plaintiffs' Response:**

Facebook's proposal puts the cart before the horse. It argues that Plaintiffs have failed to tender evidence of damages but ignores the fact that the parties have been focusing their efforts on the class certification stage where proving the ultimate merits issues, such as liability and damages, are premature. Moreover, Facebook neglects to inform the Court that the parties voluntarily agreed to a stay of discovery during class certification, and thereafter the case has been on appeal for over two years. In any event, Plaintiffs did put forth such evidence in their class certification papers.

Plaintiffs' damage claims arise from the breach of the contract to charge for only valid or legitimate clicks. Because that term is undefined in the contract, the parties will need to conduct additional discovery in the post class certification stage to aid the Court in evaluating the proper standard for interpreting the meaning of a valid click. Plaintiffs propose a 90 day period for such discovery prior to the filing of any summary judgment motion.

DATED:  March 19, 2015                     Respectfully submitted,

**SEEGER WEISS LLP**


By:                   */s/ Jonathan Shub*
                        JONATHAN SHUB

**FINKELSTEIN THOMPSON LLP**


By:                   */s/ Rosemary M. Rivas*
                        ROSEMARY M. RIVAS

*Attorneys for Plaintiffs*

DATED: March 19, 2015         **COOLEY LLP**
                              MICHAEL G. RHODES (116127)
                              WHITTY SOMVICHIAN (194463)


                              By:          */s/ Whitty Somvichian*
                                     WHITTY SOMVICHIAN

                                 Counsel for Defendant, FACEBOOK, INC.


### FILER'S ATTESTATION:

Pursuant to Civil Local Rule 5-1(i)(3) regarding signatures, I attest under penalty of perjury that the concurrence in the filing of this document has been obtained from its signatory.


Dated: March 19, 2015                    By: /s/ Whitty Somvichian
                                              Whitty Somvichian