1  Jonathan Shub (SBN 237708)
   jshub@seegerweiss.com
2  **SEEGER WEISS LLP**
   1515 Market Street, Suite 1380
3  Philadelphia, PA 19102
   Telephone: (215) 564-2300
4  Facsimile: (215) 851-8029

5
   Rosemary M. Rivas (SBN 209147)        J. Paul Gignac (SBN 125676)
6  rrivas@finkelsteinthompson.com        j.paul@aogllp.com
   **FINKELSTEIN THOMPSON LLP**          **ARIAS OZZELLO & GIGNAC LLP**
7  One California Street, Suite 900      4050 Calle Real, Suite 130
   San Francisco, California 94111       Santa Barbara, California 93110
8  Telephone: (415) 398-8700             Telephone: (805) 683-7400
   Facsimile: (415) 398-8704             Facsimile: (805) 683-7401
9
10   *Interim Co-Lead Class Counsel*       *Interim Liaison Class Counsel*

11 **COOLEY LLP**
   MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
12 WHITTY SOMVICHIAN (194463) (wsomvichian@cooley.com)
   101 California Street, 5th Floor
13 San Francisco, CA 94111-5800
   Telephone: (415) 693-2000
14 Facsimile: (415) 693-2222
15
16 Attorneys for Facebook, Inc.

17                    **UNITED STATES DISTRICT COURT**
                      **NORTHERN DISTRICT OF CALIFORNIA**
18                          **OAKLAND DIVISION**

19                                         Master File No. C 09-03043 PJH
20 **IN RE FACEBOOK PPC ADVERTISING**     **AMENDED JOINT CASE**
   **LITIGATION**                          **MANAGEMENT**
21                                          **CONFERENCE STATEMENT**

   **This Document Relates To:**
22 **All Actions.**                        Date: March 26, 2015
                                           Time: 2:00 p.m.
23                                         Courtroom: 3, 3rd Floor
                                           Judge: Honorable Phyllis J. Hamilton
24
25
26
27
28

                 AMENDED JOINT CASE MANAGEMENT CONFERENCE STATEMENT
                             Master File No. C 09-03043 PJH
   115107630 v1

1    Plaintiffs and Defendant Facebook, Inc. ("Defendant" or "Facebook") respectfully submit this

2    Joint Case Management Conference Statement in response to the Court's February 6, 2015 request

3    that the parties submit "a joint case management statement setting forth a proposal for the scheduling

4    and resolution of the remaining issues," Dkt 292, now that the appeal in this matter has been resolved

5    by the Ninth Circuit Court of Appeals.

6    **I.    SUMMARY OF PROCEEDINGS TO DATE**

7    Plaintiffs filed their initial Consolidated Class Action Complaint ("CCAC") on November 20,

8    2009, in which they asserted statutory and common law claims for relief and sought a variety of legal

9    remedies.  Defendant denied any wrongdoing.  On April 22, 2010, the Court entered an Order

10   Granting In Part And Denying In Part Defendant's Motion To Dismiss And Denying Motion to

11   Strike.  On May 21, 2010, Plaintiffs filed a Consolidated Amended Complaint, which Defendant

12   moved to dismiss on June 14, 2010.  On August 25, 2010, the Court issued an order granting in part

13   and denying in part Defendant's motion to dismiss.  Plaintiffs filed a Consolidated Second Amended

14   Complaint on September 24, 2010, and Defendant moved for partial dismissal on October 22, 2010.

15   This motion was granted and Plaintiffs opted not to amend.

16   Following extensive fact and expert discovery, Plaintiffs filed their motion for class

17   certification on August 29, 2011.  The Court denied class certification on April 13, 2012.  Plaintiffs

18   filed a petition for permission to appeal pursuant to Fed. R. Civ. P. 23(f), which was granted on July

19   17, 2012.  On December 26, 2014, the Ninth Circuit Court of Appeals issued an order affirming this

20   Court's denial of Plaintiffs' motion for class certification.  The matter was then remanded to this

21   Court for further proceedings.

22   **II.   THE PARTIES' PROPOSALS**

23   **A.    Plaintiffs' Proposal & Facebook's Response.**

24   **<u>Plaintiffs' Proposal</u>:**

25   Plaintiffs brought this class action suit against Facebook for improper charges that they and

26   members of the Class incurred in connection with advertising placed on Defendant's website at

27   www.facebook.com during the period of January 1, 2006 to the present. Plaintiffs contracted with

1

AMENDED JOINT CASE MANAGEMENT CONFERENCE STATEMENT
Master File No. C 09-03043 PJH

28

115107630 v1

1    Facebook to pay Facebook a fee each time a person "clicked" on Plaintiffs' advertisements on

2    the Facebook website in a conscious attempt to view the advertisement.  Plaintiffs and Facebook

3    regarded such action (by a Facebook user) as a valid, or billable, "click" for which advertisers were

4    contractually obligated to pay Facebook a fee in accordance with their contract. Plaintiffs allege that

5    Facebook systematically fails to limit charges to valid clicks.  Instead, Plaintiffs allege that advertisers

6    have been and continue to be unlawfully charged for and presently pay for a range of various types of

7    invalid clicks.

8    The Ninth Circuit affirmed this Court's order denying class certification but did so on grounds

9    different from this Court. The Ninth Circuit ruled that Plaintiffs' expert had failed to perform the

10   methodology that he testified was a feasible way to determine valid and invalid clicks. The Court

11   declined to rule on the basis for which this Court denied certification. Plaintiffs intend on refilling their

12   class certification motion within 120 days, after limited discovery focused on the data logs maintained

13   by Facebook, and will demonstrate in their expert's declaration the feasibility of their methodology by

14   implementing it with actual data from Facebook.  Plaintiffs will also propose a narrower class that is

15   focused on only particular filter that they claim is violative of the contract. Plaintiff will also seek

16   certification of a declaratory and/or injunctive relief class under Rule 23(b)(2) and in the alternative,

17   certification of issue classes under Rule 23(c)(4).  The Federal Rules of Civil Procedure expressly

18   permit motions to amend class certification orders. *See* Fed. R. Civ. P. 23 (c) ("*Altering or Amending*

19   *the Order.* An order that grants or denies class certification may be altered or amended before final

20   judgment."). In fact, the Honorable Margaret Morrow recently granted an amended motion for class

21   certification in *In re ConAgra Foods, Inc.*, 2015 U.S. Dist. LEXIS 24971, at *4 (C.D. Cal. 2015). In

22   any event, Plaintiffs do not believe a case management conference statement is the proper place to

23   make legal arguments.

24   **Facebook's Response:**

25   Plaintiffs' attempt to have a second bite at the apple, after nearly six years of hard-fought

26   litigation, should be denied.  By their own admission, Plaintiffs conducted extensive discovery (both

27   fact and expert) prior to filing their class certification motion.  Plaintiffs had ample opportunity to

28

2

AMENDED JOINT CASE MANAGEMENT CONFERENCE STATEMENT
Master File No. C 09-03043 PJH

115107630 v1

1   request the additional material they now seek, to conduct the additional expert work they now

2   propose, and to narrow the scope of the proposed class.  But they made the tactical decision to not do

3   any of this.  In any case, Plaintiffs' belated proposals would make no difference at this point, because

4   they would not cure the various defects that this Court and the Ninth Circuit identified in denying

5   certification and affirming that denial.  Granting Plaintiffs' request would serve only to impose unfair

6   costs and burdens on Facebook to re-litigate an issue that has already been resolved.

7            For these and the other reasons discussed below, Plaintiffs' proposal should be denied and the

8   case should proceed only as to Plaintiffs' individual claims.[1]

9            *First*, there are no new facts or circumstances to warrant reconsideration of this Court's

10   denial.  As a general rule, "courts should not condone a series of rearguments on the class issues"

11   absent a showing of "'materially changed or clarified circumstances."  Newberg on Class Actions §

12   7:47.  Numerous courts have applied this rule to reject efforts to file a renewed class certification

13   motion after an initial motion is denied.  *See, e.g., Hartman v. United Bank Card, Inc*., 291 F.R.D.

14   591, 596 (W.D. Wash. 2013) (quoting and applying Newberg); *Washington v. Vogel*, 158 F.R.D. 689,

15   692-93 (M.D. Fla. 1994) (explaining that renewed motions require "materially changed or clarified

16   circumstances, or the occurrence of a condition on which the initial class ruling was expressly

17   contingent") (citation omitted); *Zapata v. IBP, Inc*., 175 F.R.D. 578, 581 (D. Kan. 1997) (plaintiff

18   was not entitled to "rehash and recast old arguments already considered by the court in its original

19   _____

20   [1] Plaintiffs are simply wrong when they claim that the Ninth Circuit ruled on different grounds than
     this Court in denying certification.  The opinion makes clear that the court *agreed* with this Court that
21   Plaintiffs failed to satisfy their burden to meet the requirements of Rule 23(b)(3).  *See Fox Test Prep
     v. Facebook*, No. 4:09 CV-3043 PJH, slip op. at 3-4 (9th Cir. Dec. 26, 2014).  Like the district court,
22   the Ninth Circuit specifically cited Plaintiffs' expert's failure to provide any workable method to
     distinguish between valid and invalid clicks and the expert's admission that he knew of "no sources"
23   that provide any specific parameters for evaluating clicks.  *Id.* at 4 ("Because Plaintiffs failed to meet
     their burden of demonstrating a workable class-wide methodology to determine what constitutes a
24   "valid click," the district court did not abuse its discretion in denying class certification because
     common issues do not predominate . . . as required by Rule 23(b)(3)") (internal quotation marks and
25   citation omitted); *In re Facebook, Inc.*, *PPC Adver. Litig.*, 282 F.R.D. 446, 456 (N.D. Cal. 2012)
     ("The court finds that the proposed class cannot be certified under 23(b)(3) because . . . plaintiffs
26   have . . . failed to establish that there is any uniform method for distinguishing, on a classwide basis,
27   between 'invalid' clicks (at issue in the case) and 'fraudulent clicks' (not at issue in the case)").

28
AMENDED JOINT CASE MANAGEMENT CONFERENCE STATEMENT
Master File No. C 09-03043 PJH

115107630 v1

1  ruling" denying class certification); *In re Fed. Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig.*,

2  No. 09 MD 2072 (MGC), 2012 U.S. Dist. LEXIS 138638, at *3 (S.D.N.Y. Sept. 25, 2012) (renewed

3  class certification motion unwarranted because plaintiff did not present "evidence of changed

4  circumstances"); *Mogel v. UNUM Life Ins. Co. of Am.*, 677 F. Supp. 2d 362, 366 (D. Mass. 2009)

5  (declining request to file a renewed motion that would merely "allow plaintiffs to revisit their prior

6  (unsuccessful) tactical decision" in their initial class certification motion).

7  This rule reflects a recognition among courts that the class certification process imposes

8  tremendous burdens on the parties and the judicial system, and allowing plaintiffs to file multiple

9  class certification motions would unduly prejudice a defendant by forcing it to bear this burden

10  multiple times.  *Hartman v. United Bank Card, Inc.*, 291 F.R.D. 591, 596 (W.D. Wash. 2013)

11  (plaintiffs' request to reopen class discovery and file a second class certification motion was

12  "prejudicial" to defendants because of "the financial burden of revisiting the same issues

13  repeatedly").

14  Here, Plaintiffs offer no "materially changed or clarified circumstances" to justify dragging

15  the parties and the Court through the class certification process again.  Instead, they seek to rehash

16  the same issues that they had ample opportunity to address before, in the two years of active litigation

17  that preceded the completion of class certification briefing on November 21, 2011.  This included a

18  massive discovery process involving depositions of 17 fact witnesses, 4 expert reports, and 5

19  additional expert depositions, and production of tens of thousands of documents and voluminous

20  data, including logs reflecting the very data that Plaintiffs now claim to need.  Significantly, this

21  discovery was conducted under an agreement in which Plaintiffs identified the specific discovery

22  they claimed they needed for class certification, and the parties agreed to postpone Plaintiffs' filing

23  date to complete the specified discovery and give Plaintiffs additional time to prepare their class

24  certification motion.  (*See* Dkt 209 (stipulation entered by the Court); Dkt 223 (describing parties'

25  discovery agreement).)  Indeed, Plaintiffs' counsel acknowledged at the hearing that "this case was

26  fairly heavily discovered, frankly, for a class certification, in my experience."  (Tr. at 8:11-12.)

27  Under these circumstances, Facebook would be unfairly prejudiced if Plaintiffs were allowed to

4

28

AMENDED JOINT CASE MANAGEMENT CONFERENCE STATEMENT
Master File No. C 09-03043 PJH

115107630 v1

1   impose another round of additional cost and burden on Facebook by forcing it to re-litigate class

2   certification a second time.

3       ***Second,*** Plaintiffs' proposal to provide a supplemental expert report does not justify a

4   renewed class certification process.  The district court's analysis in *In re Fed. Home Loan Mortg.*

5   *Corp.*, 2012 U.S. Dist. LEXIS 138638, is illustrative.  The court denied class certification in that

6   case, finding that the plaintiff had failed to prove the existence of an efficient market for the

7   securities at issue because plaintiff's expert on market efficiency "was unreliable and unpersuasive."

8   *Id.* at *1-2.  Plaintiff then sought leave to file a renewed class certification motion and submitted a

9   declaration from a new proposed expert in support of the request.  *Id.* at *2.  The court denied

10  plaintiff's request, explaining that "the circumstances here do not warrant re-argument or additional

11  expert testimony about the efficiency of the market…."  *Id.* at *3.  The court further explained:

12      Since that hearing, the facts pertinent to the efficiency have not materially changed,
        and plaintiff has not made a showing of changed circumstances.  Without evidence of
13      changed circumstances, plaintiff effectively seeks a new opportunity to engage in a
        battle of the experts.  Plaintiff was free to choose his most persuasive expert in
14      support of certification.  A plaintiff who wants to lead a class action should be
        prepared to put his best foot forward on the initial application.
15

16  *Id*; *see also Hartman*, 291 F.R.D. at 597 (plaintiffs' desire to adduce new expert testimony did not

17  constitute a "change in circumstances" warranting a renewed motion for class certification).

18      The same result applies here.  As noted above, Plaintiffs propose to (1) seek additional

19  samples of Facebook's click data, and (2) submit new expert reports that would purportedly use this

20  data to demonstrate a proposed classwide method for identifying alleged invalid clicks.  But

21  Facebook has *already* produced[2] all of the available click data for Plaintiffs' own advertisements and

22  did so well *before* Plaintiffs' class certification motion, as Plaintiffs and their data expert both

23  acknowledged.  *See* FBCPC000065, FBCPC0000202; Shub Decl. In Support Of Plaintiffs' Motion

24  for Class Certification ¶¶ 37-38 (certifying these documents as "true and correct copies"); Ex. 4 to

25  Plaintiffs' Motion for Class Certification at 13 (Expert Report of Dr. Marcus Jakobsson).  This

26  _____

27  [2] Plaintiffs' account information and data were produced on September 29, 2010 and November 15, 2010.  Facebook also produced unhashed versions of the click data on August 29, 2011.

28
AMENDED JOINT CASE MANAGEMENT CONFERENCE STATEMENT
Master File No. C 09-03043 PJH

115107630 v1

1  production shows the specific type of click data that Facebook maintains for advertisements and how

2  that data is organized in Facebook's systems.  Plaintiffs also deposed a Facebook employee at length

3  about this click data, and cited that information in their class certification motion.  (Deposition of

4  Thomas Carriero, November 18, 2010, at 189:22-191:4;   289:5-314:10; Deposition of Thomas

5  Carriero, June 23, 2011 at 180:9-188:7; Plaintiffs' Motion for Class Certification at 16.)

6  Plaintiffs and their three experts could have used that data to show how they proposed to

7  identify alleged invalid clicks—but they chose not to, as this Court and the Ninth Circuit recognized.

8  *In re Facebook, Inc.*, *PPC Adver. Litig.*, 282 F.R.D. at 458-59; *Fox Test Prep*, No. 4:09 CV-3043

9  PJH, slip op. at 3-4.  Plaintiffs are not entitled to "a new opportunity to engage in a battle of the

10  experts" simply because they now wish to belatedly fix the defects in their prior expert reports.

11  Moreover, allowing Plaintiffs to submit new expert reports based on additional click data

12  *from Facebook* would do nothing to address the other problems that prevented class certification. For

13  example, Facebook's expert showed that server data *from each advertiser* is also needed to determine

14  whether any given click is allegedly fraudulent, invalid, or valid.   Unlike Plaintiffs' experts,

15  Facebook's expert reviewed the available click data and prepared a detailed report showing that (1)

16  individual analysis of each click, using both Facebook click data *and* advertiser server data, was

17  needed to evaluate Plaintiffs' claims and, (2) Facebook correctly billed Plaintiff Fox Test Prep for

18  clicks based on that analysis (Fox Test Prep was the only Plaintiff that had produced its server data

19  and thus the only Plaintiff for whom this analysis could be performed).  *See* Ex. L to Brown Decl. in

20  Support of Defendant's Opposition to Plaintiffs' Motion for Class Certification (Stroz Friedberg

21  Expert Report) at pp. 16-20.

22  Plaintiffs' proposal also ignores this Court's and the Ninth Circuit's additional finding that

23  Plaintiffs' expert could not identify any sources that "provide[] specific parameters for determining

24  what constitutes a valid click."  *See Fox Test Prep*, No. 4:09 CV-3043 PJH, slip op. at 4; *In re*

25  *Facebook, Inc.*, *PPC Adver. Litig.*, 282 F.R.D. at 458-59.  Indeed, Plaintiffs' experts acknowledged

26  that none exist.  (*See* Defendant's Opposition to Plaintiffs' Motion for Class Certification at pp. 25-

27  26.)  No amount of discovery from Facebook would remedy this defect.  *See Hartman*, 291 F.R.D. at

28

6

AMENDED JOINT CASE MANAGEMENT CONFERENCE STATEMENT
Master File No. C 09-03043 PJH

115107630 v1

1    597 (denying request to file a renewed class certification motion because "the court fails to see how

2    its concerns [raised on the first motion for class certification] would be alleviated").

3          *Third*, Plaintiffs' proposal to amend or narrow its proposed class definition in an undefined

4    way is not a "changed circumstance" that warrants a renewed class certification process.   Courts

5    routinely reject renewed class certification motions that are based on an amended class definition

6    because "[t]he fact that Plaintiff's counsel's tactical decisions did not work out as planned . . . does

7    not constitute changed circumstances." *Washington*, 158 F.R.D. at 692.  *See also In re Fed. Home*

8    *Loan Mortg. Corp.*, 2012 U.S. Dist. LEXIS 138638, at *3-4 (holding that a "proposed new class

9    definition is not an adequate basis for re-opening a question that has been exhaustively litigated.");

10   *Hartman*, 291 F.R.D. at 597 (revised class definition not a "changed circumstance" warranting

11   renewal of class certification); *Mogel*, 677 F. Supp. 2d at 366 (denying request to file renewed class

12   certification motion because "the Court declines to allow plaintiffs to revisit their prior (unsuccessful)

13   tactical decision or delay the case any further").

14         Here, Plaintiffs could have sought certification of a narrowed class in their motion, but made a

15   strategic decision not to.  Plaintiffs' desire to re-think their legal strategy at this late stage is not an

16   appropriate basis to revisit this Court's class certification determination.  Moreover, it is not clear

17   how any proposed narrowing of the class could solve the fundamental obstacles that preclude

18   certification, as identified in this Court's order, including Plaintiffs' failure to (1) establish the

19   existence of a uniform contract (even among self-service advertisers), and (2) present a workable

20   methodology for distinguishing among invalid, fraudulent and valid clicks on a classwide basis. *In re*

21   *Facebook, Inc.*, *PPC Adver. Litig.*, 282 F.R.D. 446, 456 (N.D. Cal. 2012).

22         *Last*, Plaintiffs are not entitled to reopen class discovery to seek additional click data because

23   there is no justification for their failure to seek this discovery previously.

24         In *Hartman*, 291 F.R.D. 591, plaintiffs sought to reopen class discovery to obtain additional

25   documents and witness testimony after their class certification motion was denied. *Id.* at 594.  The

26   court denied this request, explaining that plaintiffs "must show excusable neglect for failing to

27   conduct the necessary class discovery during the time allotted by the court." *Id.* at 595.  This requires

28

7

AMENDED JOINT CASE MANAGEMENT CONFERENCE STATEMENT
Master File No. C 09-03043 PJH

115107630 v1

1  the court to consider the factors under Fed. R. Civ. P. 6(b)(1)(B), including: (1) the danger of

2  prejudice to the non-moving party; (2) the length of delay and its potential impact on proceedings; (3)

3  the reason for delay; and (4) whether the moving party's conduct was in good faith. *Id.* Weighing

4  these factors, the court concluded that: (1) plaintiffs were not justified in failing to collect the

5  requested evidence in the first instance, given its "centrality" in their original motion; (2) the belated

6  timing of plaintiffs' request would needlessly delay proceedings; and (3) the "added expense caused

7  by Plaintiffs' repeated attempts to revisit the same class-related issues" would prejudice the

8  defendant. *Id.* at 596. Accordingly, the court denied the request to reopen class discovery and further

9  denied leave to file a renewed class certification motion.

10  As in *Hartman*, the additional class discovery that Plaintiffs seek relates to highly contested

11  issues "central" to Plaintiffs' class certification motion—the ability to use available data to identify

12  invalid clicks on a classwide basis. *Hartman*, 291 F.R.D at 595. Moreover, in the parties' prior

13  discovery agreement, Plaintiffs identified the discovery needed for their motion, and Facebook

14  produced this material prior to Plaintiffs' motion. Plaintiffs could have requested additional click

15  data in this process but opted not to. In fact, Plaintiffs' experts made no effort to conduct basic

16  analyses of the click data that Facebook had produced. (*See* Deposition of Markus Jakobsson, Ph.D.,

17  Sept. 21, 2011, 99:12-104:9; 147:06-153:16; Defendant's Opposition to Plaintiffs' Motion for Class

18  Certification at pp. 23.) They cannot reopen discovery now to rectify "a tactical decision . . . based

19  on twenty-twenty hindsight." *Id.*

20  As in *Hartman*, Plaintiffs' demand for additional class discovery would substantially

21  prejudice Facebook, particularly in light of the tremendous amount of class discovery that Facebook

22  has already provided. For these reasons, no further class discovery should be permitted.

23  **B.    FACEBOOK'S PROPOSAL & PLAINTIFF'S RESPONSE**

24  **Facebook's Proposal:**

25  Facebook proposes that the parties resolve the remaining individual claims in this case by

26  focusing first on whether Plaintiffs have sufficient evidence to show that they suffered damages from

27

28

8

AMENDED JOINT CASE MANAGEMENT CONFERENCE STATEMENT
Master File No. C 09-03043 PJH

115107630 v1

1   alleged "invalid clicks."  Absent such evidence, Facebook intends to move for summary judgment on

2   the ground that Plaintiffs cannot establish an essential element of their claims.

3         As background, Facebook first served discovery on Plaintiffs' alleged damages on September

4   16, 2010.   This discovery included interrogatories asking Plaintiffs (1) to "[d]escribe the nature and

5   amount" of their alleged damages (Interrogatory No. 10), (2) to identify the specific clicks on their

6   ads for which they contend they were "improperly charged" (Interrogatory No. 11), and (3) to explain

7   their contention as to why those clicks are allegedly "fraudulent improper, invalid, or otherwise

8   should not have been charged" (Interrogatory No. 12).  Plaintiffs objected to these discovery requests

9   on November 15, 2010, refusing to provide substantive responses on various grounds.  Among other

10  objections, Plaintiffs claimed the interrogatories were "premature[]" and they did not yet have

11  sufficient information from Facebook to answer.  On September 29, 2010 and November 15, 2010,

12  Facebook produced information on Plaintiffs' advertising accounts with Facebook, including all of

13  the available data on all of the clicks generated on Plaintiffs' advertisements.  Following meet and

14  confer discussions among the parties, Plaintiffs supplemented their responses on May 6, 2011.  These

15  responses still failed to identify any specific clicks on Plaintiffs' advertisements that they claim to be

16  invalid.   Instead, Plaintiffs (1) continued to assert that the interrogatories were "premature," (2)

17  claimed they did not need to perform a "click by click analysis" to prove their damages, (3) reiterated

18  their position Facebook's overall "click detection system" does not conform with industry standards,

19  and (4) identified certain categories of alleged nonconformity (for example "Lack of Compliance with

20  IAB Click Measurement Protocol") but without offering evidence that these issues actually resulted

21  in any alleged invalid clicks being billed for their own advertisements.

22        Given Plaintiffs' longstanding failure (now spanning well over four years) to provide any

23  evidence that they were charged for alleged invalid clicks, Facebook proposes that Plaintiffs have an

24  additional 30 days to provide their final supplemental responses to Facebook's pending

25  interrogatories. Depending on Plaintiffs' responses, Facebook will evaluate whether to file a motion

26  for summary judgment on the damages issues.  If Plaintiffs stand on their current responses or

27  otherwise fail to provide sufficient evidence to show they have suffered damages from alleged invalid

28

9

AMENDED JOINT CASE MANAGEMENT CONFERENCE STATEMENT
Master File No. C 09-03043 PJH

115107630 v1

1  clicks, Facebook believes summary judgment should be granted to dismiss Plaintiffs' individual

2  claims as a matter of law.

3      Facebook further proposes that any further discovery directed at Facebook be stayed pending

4  the resolution of this process.  As indicated above, Facebook has already provided a massive amount

5  of discovery to date as a result of the wide-ranging nature of Plaintiffs' requests since this lawsuit

6  was commenced in July 2009, which has imposed a substantial and disproportionate burden on

7  Facebook in this case.

8      **Plaintiffs' Response:**

9      Facebook's proposal puts the cart before the horse. It argues that Plaintiffs have failed to

10  tender evidence of damages but ignores the fact that the parties have been focusing their efforts on

11  the class certification stage where proving the ultimate merits issues, such as liability and damages,

12  are premature. Moreover, Facebook neglects to inform the Court that the parties voluntarily agreed to

13  a stay of discovery during class certification, and thereafter the case has been on appeal for over two

14  years. In any event, Plaintiffs did put forth such evidence in their class certification papers.

15      Plaintiffs' damage claims arise from the breach of the contract to charge for only valid or

16  legitimate clicks. Because that term is undefined in the contract, the parties will need to conduct

17  additional discovery in the post class certification stage to aid the Court in evaluating the proper

18  standard for interpreting the meaning of a valid click. Plaintiffs propose a 90 day period for such

19  discovery prior to the filing of any summary judgment motion.

20

21

22

23

24

25

26

27

28

AMENDED JOINT CASE MANAGEMENT CONFERENCE STATEMENT
Master File No. C 09-03043 PJH

115107630 v1

1   DATED:  March 19, 2015          Respectfully submitted,

2                                   **SEEGER WEISS LLP**

3

4                                   By:_____*/s/ Jonathan Shub*_____
                                                 JONATHAN SHUB
5
                                    **FINKELSTEIN THOMPSON LLP**
6

7
                                    By:_____*/s/ Rosemary M. Rivas*_____
8                                                ROSEMARY M. RIVAS

9                                   *Attorneys for Plaintiffs*

10  DATED: March 19, 2015           **COOLEY LLP**
                                    MICHAEL G. RHODES (116127)
11                                  WHITTY SOMVICHIAN (194463)

12

13

14                                  By:_____*/s/ Whitty Somvichian*_____
                                                 WHITTY SOMVICHIAN
15
                                    Counsel for Defendant, FACEBOOK, INC.
16

17

18                          **FILER'S ATTESTATION:**

19       Pursuant to Civil Local Rule 5-1(i)(3) regarding signatures, I attest under penalty of perjury

20  that the concurrence in the filing of this document has been obtained from its signatory.

21

22  Dated: March 19, 2015                          By: /s/ Whitty Somvichian_____
                                                        Whitty Somvichian
23

24

25

26

27
                                        11
28              AMENDED JOINT CASE MANAGEMENT CONFERENCE STATEMENT
                         Master File No. C 09-03043 PJH
    115107630 v1